%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

06 - 747

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Joel Gerber

**DEFENDANTS**
C. Harry Knowles, et al.

**(b)** County of Residence of First Listed Plaintiff   QUEENS COUNTY, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Seth D. Rigrodsky, Esquire
Rigrodsky & Long, P.A., 919 N. Market Street, Suite 980
Wilmington, DE 19801

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 78n(a)
Brief description of cause:
Class action for Violation of Section 14(a) of Fed Exch. Act

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE   12-8-06
SIGNATURE OF ATTORNEY OF RECORD
Brian D. Long   (#4347)

**FOR OFFICE USE ONLY**
RECEIPT # 145604   AMOUNT $350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FILED
LERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 6 - 7 4 7

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 10 _____ COPIES OF AO FORM 85.

12/8/06
(Date forms issued)

(Signature of Party or their Representative)

Dustin Frohlich
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

## RIGRODSKY & LONG, P.A.
### ATTORNEYS AT LAW

919 NORTH MARKET STREET, SUITE 980
WILMINGTON, DELAWARE 19801

SETH D. RIGRODSKY*
BRIAN D. LONG**
*ALSO ADMITTED IN NY
**ALSO ADMITTED IN PA

TELEPHONE (302) 295-5310
FACSIMILE (302) 654-7530
WWW.RIGRODSKYLONG.COM

December 8, 2006

**VIA HAND DELIVERY**

**06 - 747**

Dr. Peter T. Dalleo, Clerk
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

> **Re:    Emergency Relief: Joel Gerber v. C. Harry Knowles, et al.**

Dear Dr. Dalleo:

I write on behalf of Plaintiff Joel Gerber ("Gerber" or "Plaintiff") in the above-captioned class action. For the Court's convenience, I have enclosed copies of the Verified Complaint ("Complaint"), Motion for Temporary Restraining Order ("Motion"), Brief and Declaration in support of the Motion and Proposed Scheduling Order in this matter. Because of the urgency of these claims, Plaintiff respectfully requests that this matter be assigned promptly to the first available Judge so that Plaintiff's Motion for a Temporary Restraining Order may be heard expeditiously.

As set forth in more detail in Plaintiff's submissions, the defendants have scheduled a vote on a "going-private" merger between Metrologic Instruments, Inc. ("Metrologic") and entities controlled by private investors for December 20, 2006. The Complaint alleges the defendants have violated Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 because, among other things, the Proxy Statement defendants are using to solicit the shareholder vote contains material omissions and misstatements.

Dr. Peter T. Dalleo
December 8, 2006
Page 2


     Plaintiff asserts that the solicitation of a shareholder vote by means of the materially misleading Proxy Statement will confuse and mislead the company's stockholders and may allow defendants to impermissibly procure the stockholders' support for a corporate transaction that is financially and procedurally unfair. As Plaintiff's submissions indicate, Plaintiff has set forth claims sufficient to warrant a temporary restraining order. Accordingly, Plaintiff respectfully requests the prompt assignment of this case, so that Plaintiff can present his motion at the Court's earliest convenience.

     If you have any questions regarding this matter, counsel are available at your convenience.

                          Very truly yours,

                          Brian D. Long
                          (DSBA #4347)


BDL/lak
Encl.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOEL GERBER, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No. _____ |
| C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., METROLOGIC INSTRUMENTS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

### VERIFIED CLASS ACTION COMPLAINT

Plaintiff Joel Gerber ("Plaintiff"), by his attorneys, for his Class Action Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This is a class action complaint on behalf of Plaintiff and the other holders of Metrologic Instruments, Inc. ("Metrologic" or the "Company"), common stock against certain officers and/or directors of Metrologic, as well as certain other persons and entities described herein, alleging violations of Section 14(a) of the Securities Exchange Act (the "Exchange Act") and Rule 14a-9 promulgated thereunder.

2.    This action arises out of the proposed sale (the "Proposed Transaction") of Metrologic to entities owned and affiliated with Francisco Partners II, L.P. ("Francisco"), C. Harry Knowles ("Harry Knowles"), the Company's Founder and Chairman of its Board of Directors, and Elliott Associates, L.P., and Elliott International, L.P (hereinafter collectively "Elliott"). Knowles and Elliott (collectively the "Knowles Group") are together controlling shareholders of Metrologic.

3.    Metrologic has announced that its Board of Directors has unanimously approved a definitive agreement pursuant to which Francisco, working with the Knowles Group, will acquire all of the Company's outstanding common stock for $18.50 per share in the Proposed Transaction. The Proposed Transaction is scheduled for a shareholder approval vote on December 20, 2006.

4.    Because of the Knowles Group's controlling equity position in the Company, the Proposed Transaction is subject to heightened scrutiny concerning the fairness of the price and the process by which the definitive agreement (the "Merger Agreement") was reached. As described herein, the Company has agreed to the Proposed Transaction at an entirely unfair price achieved through an unfair process designed to benefit the Knowles Group to the detriment of Plaintiff and the Class. Among other things, the so-called "Special Committee" formed to consider the Proposed Transaction (the "Special Committee") retained the Company's regular counsel to advise it on the deal. Moreover, no member of the Special Committee could impartially consider the Proposed Transaction because all of the Company's directors have a disabling financial conflict in that each stands to receive hundreds of thousands of dollars if the Proposed Transaction is consummated.

5.    In addition, the Proposed Transaction lacks many of the fundamental hallmarks of financial fairness. For example, the Proposed Transaction lacks a "majority-of-the-minority" provision and instead can be approved by a mere majority vote present at the special meeting of shareholders then entitled to vote. To that end, the Knowles Group has entered into agreements to

vote its shares in favor of the Proposed Transaction, thus insuring that at least 49% of Metrologic shares will be voted to approve the deal.  Moreover, an undisclosed group of Metrologic directors and executive officers has also agreed to vote their shares in favor of the Proposed Transaction. These directors own approximately 1.1% of Metrologic's outstanding shares.  As such, there can be no doubt that the "the fix is in" because 49% – nearly the requisite majority – are already contractually committed to approve the Proposed Transaction.  Without this Court's timely intervention, Plaintiff and the Class will have no ability to use their votes to reject the deal. Defendants' decision to structure the Proposed the Transaction in this manner is entirely unfair and is violative of their fiduciary duties of loyalty and good faith.

6.    On October 5, 2006, Metrologic filed a Schedule 14A Preliminary Proxy Statement with the Securities Exchange Commission to solicit the shareholder vote on the Proposed Transaction, which was later supplemented on November 29, 2006 and labeled the Definitive Proxy Statement (collectively referred to as "the Proxy").  As alleged in detail herein, the Proxy is materially misleading and omits material facts.  Among many other things, the Proxy fails to disclose that even though the Knowles Group will receive the same $18.50 per share consideration as the public shareholders, Knowles and Elliott will receive consideration worth an additional $3.66 for each of the Metrologic shares they plan to exchange for equity in the entity surviving the Proposed Transaction (the "Rollover Shares").

7.    In other words, the Knowles Group will receive $22.16 (including the $3.66 per share in hidden consideration) for their Rollover Shares – or a 19.8% per share premium to what Plaintiff and the Class will be entitled to receive.  The Knowles Group and the other Defendants acting at their behest have violated their fiduciary duties of loyalty, good faith, due care and full and fair disclosure in negotiating and approving the Proposed Transaction and soliciting a shareholder vote

on the basis of a materially inaccurate and misleading Proxy. Indeed, the materially false and misleading Proxy is designed, in material part, to dissuade shareholders from exercising their right to seek an appraisal for their shares.

8.    Plaintiff seeks to recover damages caused by Defendants' breaches of fiduciary duty and an injunction ordering Defendants to comply with their fiduciary obligations and correct the materially false and misleading Proxy.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under state law for breach of fiduciary duty and unjust enrichment. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market. Plaintiff is, and was at all relevant times, a shareholder of Metrologic. This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C §1367.

## THE PARTIES

10.    Plaintiff is a Metrologic shareholder and has held shares in the Company since prior to the wrongs complained of herein. Plaintiff has certified this Complaint which is attached hereto and incorporated herein by reference.

11.    Defendant Metrologic is a corporation duly organized and existing under the laws of the State of New Jersey. The Company maintains its principal office in New Jersey at 90 Coles Road, Blackwood, New Jersey, 08012. Metrologic designs, manufactures, markets barcode scanning, and high-speed automated data capture solutions using laser, holographic and vision-based technologies. The Company offers an expertise in 1D and 2D barcode reading, portable data

4

collection, optical character recognition, image lift, and parcel dimensioning and singulation detection for customers in retail, commercial, manufacturing, transportation and logistics, and postal and parcel delivery industries. Additionally, through its wholly owned subsidiary, Adaptive Optics Associates, Inc., Metrologic develops, manufactures, markets, and distributes custom optical systems for the aerospace and defense industries. Metrologic shares trade on the NASDAQ under the symbol "MTLG." As of July 31, 2006, the Company had 22,687,000 shares of Common Stock outstanding.

12.    Defendant Francisco Partners, II, L.P. is a Delaware limited liability company.

13.    Defendant FP-Metrologic, LLC is a Delaware limited liability company, affiliated with Francisco Partners, II, L.P. (Francisco Partners, II, L.P. and FP-Metrologic are hereinafter collectively referred to as "Francisco").

14.    Defendant Meteor Holding Corporation is a Delaware corporation formed for purposes of effectuating the Proposed Transaction. FP-Metrologic, LLC is currently the sole shareholder of Meteor Holding Corporation.

15.    Defendant Meteor Merger Corporation is a New Jersey corporation formed by Meteor Holding Corporation to effect the Proposed Transaction.

16.    Defendant Elliott Associates, L.P. is a Delaware limited partnership. Elliott Associates, L.P. currently owns approximately 1,022,332 shares of Metrologic.

17.    Defendant Elliott International, L.P. is a Caymans Islands limited partnership. Elliott International, L.P. currently owns approximately 681,553 shares of Metrologic.

18.    Defendant Harry Knowles is, and at all relevant times has been, a director of the Company. According to the Company's most recent annual proxy statement on Form DEF 14A filed with the Securities and Exchange Commission on May 1, 2006 (the "2006 Proxy"), Knowles founded Metrologic and served as the Company's Chief Executive Officer from 1985 through June

5

2004. In addition, Harry Knowles served as Chief Technical Officer with responsibility for all of the Company's research from 1982 through 1985. Harry Knowles also has served as President of Metrologic from its inception through 1982 and again from 1985 through February 2000. Harry Knowles currently serves as Chairman of Metrologic's Board of Directors and its Interim Chief Executive Officer. Harry Knowles is married to Janet H. Knowles, the Vice President, Administration, Treasurer, Secretary and a director of the Company. Harry Knowles also holds or controls 9,675,412 million shares of Company common stock according to the 2006 Proxy - an amount equal to approximately 42.3 % of the Company's outstanding equity.

19.    Defendant Janet H. Knowles ("J. Knowles") is, and at all relevant times has been, a director of the Company, a position J. Knowles has held since 1986. As well as being a director, J. Knowles currently serves as Vice President, Administration, Treasurer, and Secretary of the Company. According to the 2006 Proxy, J. Knowles first served as a director of the Company from 1972 through 1984. J. Knowles served as Vice President, Administration, from 1976 through 1983 and again from 1984 through the present. J. Knowles has served as Treasurer since 1994 and as Secretary since March 2006. J. Knowles is married to Knowles. According to the 2006 Proxy, because J. Knowles is married to Harry Knowles, she possesses shared voting and investment power with respect to the 9,675,412 million shares of Company common stock owned or controlled by Knowles – an amount equal to approximately 42.3% of the Company's outstanding equity.

20.    Defendants Richard C. Close ("Close"), John H. Mathias ("Mathias"), Stanton L. Meltzer ("Meltzer"), Hsu Jau Nan ("Nan"), and William Rulon-Miller ("Rulon-Miller") (collectively with Harry Knowles and J. Knowles, the "Individual Defendants") are, and at all relevant times have been, directors of the Company.

6

21.    By virtue of their positions as directors and/or officers of the Company, the Individual Defendants owed and owe Plaintiff and the Company's other public shareholders fiduciary obligations of due care, loyalty, good faith, and full and fair disclosure and were and are required to: (a) act in furtherance of the best interests of Plaintiff and the class as shareholders of Metrologic; (b) maximize value on a sale of the Company; and (c) refrain from abusing their positions of control.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23, on behalf of himself and all holders of Metrologic common stock (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants. This action is properly maintainable as a class action.

23.    The Class is so numerous that joinder of all members is impracticable. As of July 31, 2006, there were over 22.6 million shares of Metrologic common stock outstanding, owned by hundreds if not thousands of beneficial holders scattered throughout the United States.

24.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class members. The common questions include, inter alia, the following:

(a)    Whether the Proxies filed on October 5, 2006 and November 29, 2006 contained false and misleading statements regarding the Proposed Transaction;

(b)    Whether Defendants, by agreeing to the Proposed Transaction, have breached fiduciary duties owed by them to Plaintiff and the other members of the Class;

(c)    Whether the Proposed Transaction is grossly unfair to the Class;

(d)    Whether certain Defendants are favoring their own interests over those of Plaintiff and the Class; and

(e)    Whether Plaintiff and the other members of the Class would be irreparably damaged, were the transactions complained of herein consummated.

25.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

27.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

28.    On September 12, 2006, Metrologic announced a definitive agreement to be acquired for cash by Francisco with the participation of the Knowles Group. Pursuant to the proposed Merger Agreement, Meteor Merger Corporation will merge with and into Metrologic. Upon the completion of the Proposed Transaction, Metrologic will be the surviving corporation and a wholly owned subsidiary of Meteor Holding Corporation. Meteor Holding Corporation is currently indirectly owned by Francisco. If the Proposed Transaction is permitted to go forward as described below, the

8

Knowles Group will also own approximately 30.2% of Meteor Holding Corporation, and thus participate in Metrologic's future business and success.

**The Knowles Group Will**
**Receive a Secret Imbedded Deal Premium**

29.    The Proposed Transaction financially favors the Knowles Group to the detriment of Plaintiff and the Class. Under the terms of the Merger Agreement, Metrologic's public shareholders will receive $18.50 cash for each share of their Metrologic common stock. Unlike Plaintiff and the Class, however, the members of the Knowles Group are also buyers in the deal, and thus stand on both sides of the Proposed Transaction. The Proxy fails to disclose this material information.

30.    The Knowles Group has agreed to sell a portion of their Metrologic common shares to Meteor Holding Corporation immediately prior to the completion of the Proposed Transaction in exchange for shares of junior preferred stock and common stock of Meteor Holding Corporation. As a result of these contributions, immediately following the closing of the Proposed Transaction, Harry Knowles will own 15% of the junior preferred stock and 15% of the common stock of Meteor Holding Corporation, and Elliott will own approximately 15.2% of the junior preferred stock and approximately 15.2% of the common stock of Meteor Holding Corporation.

31.    The Proxy discloses that Harry Knowles and Elliott, respectively, own approximately 41.5% and 7.5% of Metrologic's outstanding shares of common stock. Of that amount, Harry Knowles will sell approximately 7,551,800 shares for $18.50 in the Proposed Transaction. Unlike Plaintiff and the Class, however, Harry Knowles will also buy approximately 15% of Meteor Holding Corporation in return for his ownership of approximately 1,680,578 Metrologic Rollover Shares.

32.    Similarly, Elliott will buy approximately 15.2% of Meteor Holding Corporation in return for its ownership of approximately 1,703,885 Rollover Shares. In addition, pursuant to the

terms of a letter agreement dated September 12, 2006, Elliott (or its affiliates) will also receive a portion of a $12 million payment Francisco will receive from Meteor Holding Corporation if the Proposed Transaction is consummated. Elliott will also receive quarterly payments from Francisco in connection with services it renders to Metrologic. In addition, as described below, Francisco will also share in any termination payment the Company is obligated to pay Meteor Holding Corporation in the event the Company accepts a superior acquisition offer from another potential acquirer.

33.    The Proxy does not disclose the fact that the Knowles Group will receive Meteor Holding Corporation shares worth $22.16 per share in exchange for their Rollover Shares. This additional $3.66 per share represents a 19.8% premium over the $18.50 being offered to the Company's public shareholders. This imbedded premium is calculated by subtracting expected post-transaction debt from the aggregate value of Metrologic pursuant to the terms of the Proposed Transaction. Accordingly, at the expense of Plaintiff and the Class, and in violation of their fiduciary duties of loyalty and good faith, the Knowles Group secretly diverted approximately $12.4 million of value to itself.

34.    Harry Knowles is also receiving substantial other benefits in the Proposed Transaction not to be shared by Plaintiff or the Class. Harry Knowles will become the CEO of the new Metrologic and will be paid an undisclosed salary. Knowles will also receive undisclosed new stock options and other financial benefits after the Proposed Transaction closes. Knowles (and Elliott) will receive the right to participate in future sales of Meteor Holding Corporation and future issuances of shares.

**The Proposed Transaction Is Unfair**

35.    Because Knowles and Elliott stand on both sides of the Proposed Transaction, the deal is subject to the requirements of entire fairness. The Proposed Transaction, however, fails to meet those rigorous standards because it is coercive, provides significant additional benefits to the

Knowles Group, and provides inadequate consideration to the Company's public shareholders – that is, the Proposed Transaction is fair neither in price nor in process. As discussed herein, the Knowles Group stands to gain at least $12 million more than Plaintiff and the Class, plus a significant opportunity to participate in the surviving entity going forward. The terms of the Proposed Transaction also reflect a preference for Knowles and Elliott and their participation in that the deal actually tilts the playing field in favor of Francisco.

**Defendants Have Assured Approval of the**
**Proposed Transaction by Locking up a Majority in its Favor**

36.     The Proposed Transaction lacks several critical indicia of fairness, considering that the entity taking the Company private includes the Company's controlling shareholders. The Proposed Transaction is patently unfair because it lacks an opportunity for the Company's public shareholders to have a meaningful voice in approving the deal. To be sure, the Proposed Transaction is a *fait accompli*, considering that the Knowles Group and Metrologic's directors and senior officers exercise dominion over a near majority of the Company, and that they stand on both sides of the deal. Nonetheless, the Merger Agreement fails to include a provision requiring separate approval by a majority of the Company's public shareholders – a so-called "majority-of-the-minority" approval provision.

37.     The Proposed Transaction is subject to a shareholder vote at a special shareholder meeting. According to the Proxy, an affirmative vote of a mere majority of the shares present and entitled to vote at that special shareholder meeting is necessary to secure approval of the Proposed Transaction. The Knowles Group already controls 49% of the vote. In addition, to further secure approval of the Proposed Transaction, it also has entered into agreements with Meteor Holding Corporation to vote their shares in favor of the Proposed Transaction. Moreover, according to the Proxy, an undisclosed group of Metrologic's board members and executive officers also has agreed

to vote their shares in favor of the Proposed Transaction. According to the Proxy, many of Metrologic's senior officers will continue with the Company after consummation of the Proposed Transaction and can expect to receive additional benefits including new stock option agreements. Metrologic's Board, as described below, are also financially interested in the deal. Accordingly, by failing to include a "majority-of-the-minority" provision, Defendants have assured themselves that this unfair transaction will be approved by those who unfairly stand to be enriched regardless of whether every single unaffiliated shareholder votes against the Proposed Transaction.

**The Proposed Transaction Is Locked-Up**

38.     The Proposed Transaction is unfair because the Individual Defendants took steps to ensure that no other bidder could possibly attempt to offer a superior priced transaction. The Individual Defendants impermissibly tilted the playing field in favor of the Knowles Group by implementing Draconian deal protection devices to ensure that no competing bids would arise. The Individual Defendants had a fiduciary obligation to: (a) undertake an appropriate evaluation of Metrologic's net worth as a merger/acquisition candidate; (b) act independently to protect the interests of the Company's public shareholders; (c) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Metrologic's public shareholders; and (d) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Metrologic.

39.     The Individual Defendants have breached their fiduciary duties because of the acts and transactions complained of herein, including their decision to enter into the Proposed Transaction without making the requisite effort to obtain the best transaction reasonably available.

40.     Before approving the Proposed Transaction, the Individual Defendants failed to contact other potential acquirers, despite having previously identified some. During the late summer

of 2005, the entire Metrologic Board (including Knowles) hired UBS Securities LLC ("UBS") to, among other things, canvass the market to assess whether other entities were interested in purchasing Metrologic. According to the Proxy, UBS contacted 94 potential buyers and only three parties, including defendant Francisco, emerged as potential bidders. Ultimately, by mid-January 2006, the Company decided not enter into a transaction with any of the three potential bidders.

41.    Then, in June 2006, at the behest of a representative of Elliott, defendant Harry Knowles began negotiations with Francisco. During the next month, the Individual Defendants allowed Harry Knowles to negotiate exclusively with Elliott and Francisco. The Individual Defendants further acquiesced to the wishes of the Knowles Group, the Company's controlling shareholders, by failing to contact any of the parties UBS previously identified or either of the other two previous potential bidders.

42.    In the Proxy, the Special Committee's unidentified members recite that they used the prior "market check" as a basis for their purported conclusion that the Proposed Transaction was fair to Plaintiff and the Class. Even if true, this flimsy excuse wholly fails to remedy the Individual Defendants' breaches of fiduciary duties to maximize shareholder value and not to unfairly favor a bidder aligned with Metrologic's majority shareholder and management.

43.    The Proxy offers no reason why the Special Committee or any of the Individual Defendants did not conduct another market check before approving the Proposed Transaction. The Proxy does not disclose why the Individual Defendants allowed Harry Knowles to enter into negotiations with Elliott and Francisco to the exclusion of any other potential buyers. The market check itself was fundamentally flawed because it was conducted by UBS. UBS could not have been expected to act in the best interests of the public Metrologic shareholders because it had been hired by the Company, which itself was dominated and controlled by the Knowles Group. The Proxy also

13

does not disclose whether UBS, in contacting other potential bidders, was offering the same or similar terms as those in the Proposed Transaction.

44.     In addition to the lack of a market check, the Individual Defendants approved certain terms of the Proposed Transaction that completely freezes out other bidders. For instance, while the Merger Agreement contains a so-called "fiduciary out" allowing the Board to enter into a superior priced deal under certain circumstances, the economics, and structure of the Proposed Transaction ensure that the "fiduciary out" is mere window-dressing.

45.     As described in the Proxy, Metrologic agreed that if it receives a superior proposal or an inquiry for non-public information in connection with such a proposal, it must provide Meteor Holding Company oral and written notice within 24 hours. Metrologic is obligated to disclose to Meteor Holding Company the material terms and conditions of any request or proposal, the identity of that party, and to keep Meteor informed on a current basis of the status of the request or proposal including providing Meteor with an actual copy of the request or proposal. This provision of the Merger Agreement will ensure that no alternative bidder will come forward as the material terms of its offer or inquiry will immediately be disclosed to its competition.

46.     According to the Merger Agreement, if among other things, Metrologic exercises the fiduciary out, the Company has to pay Francisco a "termination fee" $18.25 million. This amount, in excess of 4% of the deal price, is designed to discourage other bidders who will have to pay this huge sum in addition to offering a price in excess of $18.50.

47.     In violation of their fiduciary duties of loyalty and good faith, the Knowles Group has entered into agreements with Meteor Holding Corporation that practically render the "fiduciary out" provisions of the Merger Agreement meaningless. Knowles has agreed that even if the Company agrees to a superior offer, he will not vote a bloc of his stock representing 35% of Metrologic's

14

outstanding shares in favor of any such transaction for a period of ten months following termination of the Proposed Transaction. Moreover, Knowles has agreed not to vote his shares in favor of any amendment to the corporate charter or any other proposal or transaction that "would in any manner delay, impede, frustrate, prevent or nullify" the Proposed Transaction. Meteor Holding Corporation has agreed to pay Knowles all of his out-of-pocket expenses in connection with entering into this agreement.

48.    Elliott entered into a similar agreement without any restriction as to the amount it can vote shares against the Proposed Transaction or any charter amendment. Meteor Holding Corporation has also agreed to pay Elliott's out-of-pocket expenses in connection with entering into that agreement. Incredibly, and in violation of its fiduciary duties of loyalty, Elliott Associates, L.P., entered into a "letter agreement" with Meteor Holding Corporation dated September 12, 2006, in which, among other things, Meteor Holding Corporation has agreed to share an undisclosed portion of the termination payment with Elliott in the event that the Company accepts a superior offer. This payment is conditioned on Elliott voting against any other deal for at least three months following termination of the Merger Agreement.

49.    By allowing Knowles and Elliott to enter into agreements that bar approval of a superior transaction even in the exercise of the Board's so-called "fiduciary out," all of the Individual Defendants have stripped the Board of its non-delegable authority to manage the business and affairs of Metrologic. Such conduct, constituting violations of the Individual Defendants' duties of loyalty and good faith, is *ultra vires* and impermissible.

**The "Special Committee" Acted Unfairly**

50.    The conduct of the Special Committee provides glaring examples of the unfair process undertaken to approve the Proposed Transaction. According to the Proxy, the Individual Defendants purportedly created a Special Committee of directors, which unanimously approved the

Proposed Transaction. The Special Committee subsequently recommended approval of the Proposed Transaction.

51.     Regardless of the exact identity of the Committee members, their lack of independence and care is evident, thus invalidating their decision making process. The Special Committee's members each had a strong financial incentive to approve the Proposed Transaction because each member received a cash payment of $35,000, and its Chairman received $40,000, in addition to $1,500 for regular meeting fees and out-of-pocket expenses. According to the Proxy, the Special Committee met at least 32 times since August 15, 2005, garnering each member approximately $48,000. The Board approved these cash awards only after the Special Committee had recommended Board approval of the Proposed Transaction. The highly suspicious timing of the cash award to the Special Committee raises a reasonable inference that the Board, dominated by the Knowles Group, paid the Committee members an incentive fee to approve the Proposed Transaction.

52.     In addition, if the Proposed Transaction is consummated, all members of the Special Committee are financially interested because all of the Company' directors (except Harry and J. Knowles) will received hundreds of thousands of dollars in cash as a result of the buyout of options granted to them under the Company's 1994 and 2004 Equity Incentive Plans (the "Plans"). According to the Proxy, all options the Company granted to the Individual Defendants under the Plans with exercise prices below $18.50 will be cashed out in amounts calculated by the number of shares they would have been entitled to receive if they had exercised their options multiplied by the difference between the option exercise price and $18.50. In addition, holders of options with an exercise price above $18.50 will receive $1 per share. The buyout formulas were determined by the Administrator of the Plans, which in 2006, was the Board's Incentive Compensation Committee, consisting of Knowles, J. Knowles, Close, Rulon-Miller, and Meltzer. According to the Proxy,

defendant Close will receive $417,886, defendant Nan will receive $906,822, defendant Mathias will receive $340,402, defendant Meltzer will receive $102,122, and defendant Rulon-Miller will receive $146,392. Accordingly, the Board set its own compensation and incentive fee in the Proposed Transaction with the affirmative participation of Harry and J. Knowles.

53.    The Special Committee also used an unfair process in approving the Proposed Transaction by failing to employ outside advisors that were sufficiently independent of the Company, which is controlled and dominated by the Knowles Group. The Special Committee failed to hire independent counsel but instead utilized the services of the Company's regular outside counsel, Ballard Spahr. In 2004, as discussed, the Special Committee used the services of UBS, which the Company retained. Needham & Company, LLC ("Needham"), which the Special Committee hired to render a fairness opinion, had previously participated with UBS in the failed sale process that ended in January 2006. Furthermore, before hiring both Ballard Spahr and Needham, the Special Committee did not contact or interview any other firms.

54.    Further, the Special Committee acted unfairly because it made no effort to value the Meteor Holding Company shares Knowles and Elliott are to receive in the deal. The Proxy is entirely silent with regard to whether the Special Committee knew about the 19.8% premium both Knowles and Elliott will receive for their Rollover Shares. There is no indication from the public filings that the Special Committee ever asked Needham or any other entity to value the Rollover Shares.

**The Deal Price Is Financially Unfair**

55.    The failure of the Individual Defendants to secure an adequate merger price and their betrayal of the interests of the Company's public shareholders also is apparent from the $18.50 per share consideration agreed to by the Individual Defendants. This proposed consideration is inadequate and unfair to Plaintiff and the Class because, in reality, it offers a very meager premium,

if any, and thereby deprives Plaintiff and the Class of the true and full value of their shares. In fact, the price unanimously agreed to by the Individual Defendants represents a premium of just 4.7 % over the Company's stock price on the last full day of trading before the Proposed Transaction was announced. Moreover, the consideration represents a mere 1.5% premium over the average trading price of the Company's stock over the last year.

56.    The consideration to be paid to Plaintiff and the Class in the Proposed Transaction also is unfair and grossly inadequate because, among other things: (a) the intrinsic value of Metrologic is materially in excess of the amount offered in the Proposed Transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability and established markets; and (b) the consideration is not the result of an appropriate evaluation of the value of Metrologic because the Individual Defendants approved the Proposed Transaction without undertaking steps to accurately ascertain Metrologic's transactional value through open bidding or at least a market check mechanism.

57.    The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of Company's valuable and profitable business, and future growth in profits and earnings, at a time when the Company is poised to increase its profitability.

58.    The Proposed Transaction also is suspect because of its timing. A review of the Company's stock price trading history reveals that it had been trading as high as $23.10 per share – significantly above the consideration in the Proposed Transaction – on April 13, 2006, just more than five months before the announcement of the Proposed Transaction. Moreover, within the last twelve months, the Company's stock has actually traded as high as $24.49 per share. Based on that figure,

the Proposed Transaction actually represents a 25% discount to be received by Plaintiff and the Class.

59.     A comparison of Metrologic to other similar public companies shows that price multiples of EBITDA and EBIT are lower for the Company that for its peer group. According to Needham's September 11, 2006 presentation to the Board, the $18.50 price represents an 11.4 multiple to the last twelve month EBITDA compared to a 13.3 multiple for peer groups. The same presentation shows that the $18.50 price represents a 14.4 multiple compared to a 16.1 multiple for the peer group.

60.     An independent analysis using market information as of October 26, 2006, shows an even more dramatic shortfall. Since August, Metrologic's peer group has performed well in the market. The market price of Metrologic, however, has lagged because it is capped at $18.50 because the offering price and approval of the Proposed Transaction is a *fait accompli*. This updated analysis shows that Metrologic's EBITDA multiple is 10.85 compared to 17.06 for the peer group. Metrologic's EBIT multiple is 13.23 compared to 19.67 for the Company's peer group.

61.     The discounted cash flow valuation Needham presented to the Board on September 11, 2006, similarly demonstrates the inadequacy of the $18.50 offering price. According to Needham, using management projections Metrologic provided to Needham on July 31, 2006, a cash flow analysis in which the terminal value is calculated estimating 2010 EBITDA of $124,390,000 shows a per share range of $27.74 - $44.56. Needham also presented to the Board a "sensitivity case" cash flow analysis that was not based on any management projections but instead assumed a 10% growth rate. That analysis, based on dramatically lower financial projections resulting in 2010 estimated EBITDA of only $46,200,000 yielded a per share range of $12.09-$18.18.

62.    The Proxy makes clear, however, that Metrologic's management prepared two additional projections on August 16 and August 23, 2006. Those projections, buried away from the Needham analysis in the Proxy, show 2010 terminal EBITDA projections of $122,955,000 and $86,179,000 respectively. The Proxy discloses that only "some" of the management projections were provided to Needham, but that the projections were made available to Francisco during its due diligence of the Company. The Proxy gives no explanation why management's projections decreased so dramatically during the three weeks it modified the projections from a high 2010 EBITDA estimate of $124,390,000 (July 31, 2006) to a low of $86,179,000 (August 23, 2006).

63.    Moreover, the Proxy fails to disclose why Needham did not use the lower projections in its cash flow analysis included in the Board presentations, but instead decided to create a guesswork "sensitivity case." Based on Plaintiff's independent cash flow calculations, a fair price range using management's worst-case August 23, 2006, estimate of 2010 EBITDA, still yields a fair price range of $19.97-$31.55. Accordingly, it can be more than reasonably assumed that the Individual Defendants did not provide Needham with the more pessimistic updated management projections, as they would show that the $18.50 deal price was inadequate. These Individual Defendants did provide these more "real world" projections to Francisco and thereby gave it reasonable assurance that, even in a worst-case scenario, the buyers were still getting a bargain price for Metrologic. The Individual Defendant's failure to disclose the truth about the management projections, and their failure to disclose the true facts about the projection distribution and use, constitute violations of the Individual Defendants' fiduciary duties of care and full and fair disclosure.

64.    Recent analyst remarks also indicate that the Company is worth significantly more than the consideration being offered in the Proposed Transaction. As recently as July 26, 2006,

Raymond James set a $23 price target for the Company. On September 12, 2006, Raymond James issued a report on the Buyout Transaction calling the buyout premium "light." Specifically the report states: "Valuation on the transaction appears softer than expected, reflecting a P/E multiple of 17.5x our 2007 EPS estimate of $1.06 including options expense (group trading at 20.2x). On an MEV/EBITDAS basis (note – "S" indicates non-cash stock options expense), the transaction comes in at 7.2x our 2007 estimates (2007 estimated EBITDAS $12.2 million). On a more traditional MEV/EBITDA analysis (includes gross impact of options expense), the transaction values Metrologic at 7.9x our 2007 estimates vs. the current group mean valuation of 9.4x." Raymond James called the transaction premium "light" given Metrologic's projected growth trajectory (top-line growth of 19% and 14% in 2006 and 2007, respectively, with EPS growth of 8% and 20% over the same periods).

65. Weeden & Co. set the same price on that date. In addition, analyst reaction to the Proposed Transaction has been negative. Ivan Feinseth, director of research at Matrix U.S.A. LLC ("Matrix"), a New York research house and investment bank, was quoted as stating, "We think it is kind of cheap." He went on to note that the Company's business has been improving. Not unlike Raymond James and Weeden & Co., Matrix values the Company's stock in the "mid-twenties," also having set a target of $23.

66. For instance, in February of 2006, Metrologic announced that it was expanding its wireless barcode scanner offering:

> Metrologic Instruments, Inc. today introduces the MS1633 FocusBT hand held area imager, a wireless 2 dimensional (2D) bar code scanning solution, at the HIMSS healthcare tradeshow taking place in San Diego, CA. Worldwide availability of FocusBT is expected in the second half of 2006.
>
> Combining the performance of Metrologic's successful MS1690 Focus hand held area imager, which incorporates Omniplanar, Inc.'s SwiftDecoder software, with the flexibility of Bluetooth® wireless technology, FocusBT delivers aggressive decoding of 1D and 2D bar code symbologies omnidirectionally with wireless mobility. The

lightweight FocusBT, with its ergonomic form factor that fits comfortably in a user's hand, includes a rechargeable battery that delivers thousands of scans per charge, allowing for hours of uninterrupted operation.

"The use of 2D bar codes is increasing in many markets, including retail, supply chain, and healthcare. With the introduction of MS1690 Focus in 2005, Metrologic raised the bar on 2D bar code scanning performance. Customer feedback, coupled with Metrologic's commitment to develop products that meet the market's current needs and future expectations, indicated that the mobility offered by Bluetooth® technology was an important factor in addressing new opportunities in both existing markets and a number of new, developing markets", stated Nicholas Ciarlante, Hand Held Product Marketing Manager for Metrologic.

Greg DiNoia, Vice President, Metrologic The Americas, commented, "We are committed to innovation and leadership in image based scanners to satisfy the growing number of 2D scanning applications and a market trend toward aggressive image based scanners. We are pleased to introduce FocusBT at HIMSS and recognize the contribution we can make toward reducing medical errors and improving patient safety. FocusBT is a prime example of how we will continue to address our customers' needs for feature rich, cost effective, visionary scanning solutions."

67.     Furthermore, in May of 2006, the Company announced its acquisition of all of the

assets of Visible RF, LLC, a privately held start up company located in Needham, MA:

Metrologic Instruments, Inc., today announced the acquisition of all of the assets of Visible RF, LLC, a privately held start up company located in Needham, MA, whose advanced technology combines Radio Frequency communications with bi stable display materials.

"As part of our growth strategy, this transaction expands our market presence in RFID with unique differentiation," said C. Harry Knowles, Metrologic's Chairman. "This acquisition, coupled with our solid organic growth, will assist us in continuing to build our position as a leader in the Automatic Identification Data Capture Industry."

Mark Schmidt, Metrologic's Executive Vice President Strategic Initiatives, commented, "The acquisition of Visible RF, LLC, represents a significant addition to our technology portfolio. This technology combines the benefits of a paper label with the advantages of RFID to display visible information that is updated via a wireless signal. Thus, the technology provides users all the benefits of barcoding and RFID. There are applications for this acquired technology in several markets where Metrologic already has a presence, including Retail, Healthcare, Manufacturing, Logistics, and Public Transportation, just to name a few."

"Metrologic intends to utilize its extensive established world wide sales and distribution network to expand this new technology through its existing customer base. We also believe future generations of this technology potentially are applicable outside our traditional, addressable markets," continued Mr. Schmidt.

68.    Also in May of 2006, Metrologic announced the introduction of its new Radio

Frequency ID Readers:

Metrologic Instruments, Inc. (NASDAQNMS:MTLG) announced today it will introduce its initial line of Radio Frequency ID (RFID) Readers engineered to execute supply chain applications at the Fourth Annual RFID Journal LIVE conference and exhibition (Booth 200) hosted by the MGM Grand in Las Vegas (NV), May 1 3.

The SP5800 Series MAXIMUS is a rugged CE.NET mobile computer incorporating multifrequency RFID, a high-resolution imager, and an integrated fingerprint reader for state of the art flexibility and security for multiple supply chain solutions. The MR600 Series IMPULSE is an affordable, multi protocol, Gen 2 EPCglobal certified, fixed RFID solution for applications requiring only one set of antennas.

Both systems will be distributed commercially throughout North America during the second half of 2006.

"MAXIMUS is the first RFID mobile computer to contain such advanced, flexible features at a competitive price," said Andrew D'Amelio, senior director of industrial products and systems for Metrologic. "The power of the unit combined with its security features opens up a whole new set of supply chain applications.

"Our second product line, the IMPULSE, has advanced digital filtering technology and separate, configurable antennas to make it the ideal reader for fixed RFID applications such as truck mounted reading, certain conveyor applications and targeted work station interrogation zones. The streamlined and cost effective IMPULSE provides a great alternative to mobile units for compliance with RFID mandates and regulations without adding additional complexity."

The MAXIMUS RFID reader supports all common UHF (915 MHz) RFID applications and has the flexibility to handle emerging HF (13.56 MHz) RFID applications, including item level tagging or smart card reading. Its two megapixel digital imager employs Omniplanar's SwiftDecoder to decipher all 1D, 2D and Postal bar codes. The imager also captures, stores and transmits high resolution images for data collection, identification and verification. The integrated fingerprint reader's login security increases both supply chain protection and productivity. The mobile computer's wireless connectivity (Bluetooth & 802.11b) allows unfettered short and long range communication with nearby peripherals and the host system. IMPULSE's multi protocol RFID reader supports EPC and ISO compliant UHF

RFID tags. Metrologic also makes IMPULSE available in an evaluation kit complete with all the essential materials needed to set up and test a full RFID system.

69.    Further, in July of 2006, Metrologic's scanners were ranked number one in a Vertical Systems Reseller ("VSR") Survey:

> In a recent survey of nearly 300 value added resellers published in the July issue of VSR, Metrologic Instruments, Inc. received the top cumulative score for point of sale bar code scanning products. Metrologic finished first overall in the survey's scanner category – ahead of Symbol, Hand Held Products and PSC. Metrologic scored 22.5 out of a possible 25 points.

> \*        \*        \*

> VSR stated, "Metrologic was the clear scanner category winner." It also added, "Those [companies] that ranked demonstrate a superior ability to deliver on the litmus test of customer satisfaction and are members of a very elite group of technology pioneers." Metrologic tied Touch Dynamic (category: integrated POS units) for the highest overall score by any vendor in any product category. The company also finished as the top ranked vendor overall for pricing. The average vendor cumulative score was 19 points.

70.    Metrologic's financial performance has been strong. For example, the Company's most recent Form 10-Q for the quarter ended June 30, 2006, Metrologic reported, "[s]ales increased 28.7% to $62.6 million in the three months ended June 30, 2006 from $48.6 million in the three months ended June 30, 2005."

71.    Metrologic's investment policies and acquisition growth strategy suggest that revenues will continue to increase in the future. Indeed, in May 2006, the Company publicly proclaimed that it had "solid organic growth." In addition, the Company has recently launched a series of new products expected to increase Metrologic's profitability in the future.

## THE PROXY IS MATERIALLY FALSE AND MISLEADING

72.    On November 29, 2006, Metrologic filed the Proxy in connection with seeking shareholder approval of the Proposed Transaction. As alleged herein, the Proxy fails to disclose highly significant and material information necessary for Metrologic's public shareholders to make

an informed decision regarding the Proposed Transaction. This decision is the most important in the life of this Company because under New Jersey law, which applies here, the shareholders will not have a right to seek a post-transaction appraisal to obtain fair value for their shares. The Individual Defendants' failure accurately to make material and non-misleading disclosures in the Proxy further renders the Proposed Transaction unfair and coercive.

73.    The Proxy, which contains the following materially misleading statements and omissions, is materially deficient and in the following respects:

(a)    The Proxy fails to disclose that, unlike the Plaintiff and the Class, the Knowles Group is receiving an extra $3.66 per share imbedded in the offering price for its Rollover Shares, representing a 19.8% premium over the $18.50 being offered to Plaintiff and the Class;

(b)    The Proxy fails to disclose whether the Special Committee or the Board, before they approved the Proposed Transaction, were aware of the September 12, 2006, letter agreement between Elliott and Meteor Holding Company giving Elliott a portion of any consulting and merger termination fees;

(c)    The Proxy fails to disclose the identity of the Special Committee members engaged when the Board sought to explore the sale of the Company in 2004;

(d)    The Proxy fails to describe what the authority, if any, the Special Committee had to negotiate or reject the Proposed Transaction;

(e)    The Proxy fails to disclose that the Special Committee members were paid an incentive fee to approve the Proposed Transaction or that they had handsomely awarded themselves additional compensation in connection with the decision to pay out options granted them under the 1994 and 2004 Plans;

(f)     The Proxy does not disclose that the Special Committee failed to consider hiring any advisors other than Ballard Spahr and Needham;

(g)     The Proxy fails to disclose the amounts that Ballard Spahr was paid by either the Company, Knowles, Elliott or any of the other Defendants in connection with services rendered during the past five years, or any amounts promised to be paid in the future and further fails to disclose if Needham was paid for past or future services by either Knowles, Elliott, or any of the other Defendants other than Metrologic;

(h)     The Proxy fails to disclose that the $18.50 offering price is only a 1.47% premium over the 52-week average market price for Metrologic's shares;

(i)     The Proxy fails to disclose why management's projections so dramatically decreased between July 31 and August 23, 2006, and fails to disclose why the projections prepared on August 16 and August 23, 2006 were given to Francisco but not to Needham;

(j)     The Proxy fails to disclose that Needham's cash flow analysis was fundamentally flawed. Needham incorrectly neglected to deduct amortization expense when calculating taxable income. This resulted in an overstatement of tax expense and a corresponding understatement of net income and free cash flow, which in turn understated the Company's equity value. In addition, Needham's discounting calculations reflect end-of-period discounting rather than mid-period discounting. End-of-period discounting, which reflects the implicit assumption that the business generates no cash flow during the year but receives it all in a year-end lump sum, understates the present value of future cash flows and thus Metrologic's equity value. Mid-period discounting, which accurately results in a higher present value relative to end-of-period discounting, appropriately reflects the implicit assumption that the business generates cash throughout the year such that, on average, the business' cash flow is received at the mid-point of the year;

(k)     In its analyses presented to the Board, Needham used an unusually broad range of discount rates, ranging from 10% to 20%. The Proxy, however, fails to give any indication of the methodology or assumptions Needham relied on to arrive at its range of discount rates;

(l)     The Proxy fails to disclose whether any of the other potential bidders contacted by UBS were willing to consider deal terms similar to those contained in the Proposed Transaction, including provisions providing for Knowles and Elliott to have a continuing equity participation;

(m)     The Proxy fails to disclose exactly what Elliott will be paid by Meteor Holding Corporation in the event the Company accepts a higher proposal and terminates the Proposed Transaction -- the Proxy also fails to disclose how much Elliott will receive from Francisco in connection with one-time and quarterly payments it will receive for providing services to Meteor Holding Corporation; and

(n)     The Proxy fails to disclose the sources of the options Metrologic is buying out from the Board, the extent to which those options are in or out "of the money," and by what amount.

74.     The Individual Defendants' agreement to the unfair terms of the Proposed Transaction, its timing, their failure to auction the Company and make any auction demonstrate a clear breach of fiduciary duties owed to Plaintiff and the Class. The Proposed Transaction is an attempt by the Knowles Group to benefit themselves at the expense of Plaintiff and the Class. The Proposed Transaction will, for inadequate consideration, deny Plaintiff and the other members of the Class the opportunity to share proportionately in the future success of the Company and its valuable assets, while wrongfully benefiting the Knowles Group.

## COUNT I

### Violations of § 14(a) of the Exchange Act Against All Defendants

75.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.  Specifically, the Proxy statements during the relevant period violated §14(a) and Rule 14a-9 because they omitted material facts, including those referenced in paragraph 73 above.

77.    In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

78.    The misrepresentations and omissions in the Proxy Statements were material to Plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

79.    The Company was damaged because of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Breach of the Fiduciary Duty of Disclosure

80.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81.    The Defendants have already caused materially misleading and incomplete information to be disseminated to the Company's public shareholders.    Having chosen to communicate publicly concerning the Proposed Transaction, Defendants had an obligation to be complete and accurate in their disclosures.

82.    The Proxy fails to disclose material financial information, including financial information and information necessary to prevent the statements contained therein from being misleading.

83.    The misleading omissions and disclosures by Defendants concerning information and analyses presented to and considered by the Special Committee, including the consideration to be received by the Knowles Group in connection with the Proposed Transaction, among other things, affirm the inadequacy of disclosures to the Company's shareholders.  Because of Defendants' failure to provide full and fair disclosures, Plaintiff and the Class will be stripped of their ability to make an informed decision on whether to vote in favor of the Proposed Transaction, and thus damaged thereby.

## COUNT III

### Breach of Fiduciary Duty – Entire Fairness

84.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

85.    In unanimously approving the Proposed Transaction on behalf of Metrologic, the Individual Defendants and Elliott have not taken any steps to protect the interests of the Company's minority shareholders.  Instead of utilizing procedural safeguards such as providing for approval of the Proposed Transaction by a majority of the Company's minority shareholders, the Individual Defendants and Elliott simply have agreed to seek approval from a simple majority of the Company's shareholders all financially interested in the Proposed Transaction thus assuring its approval.

86.     Because the Knowles Group stands on both sides of the Proposed Transaction, it is subject to the requirements of entire fairness. The deal, however, fails to meet that standard's rigorous requirements. To that end, Defendants are required to, but cannot, demonstrate the entire fairness of the Proposed Transaction because, among other things: (a) the Knowles Group is on both sides of the transaction; (b) the Knowles Group will receive enormous personal benefit as a result of the transaction significantly in excess of that to be received by the Company's public shareholders; (c) the Proposed Transaction calls for the payment of a price that is less than supported; and (e) the Proposed Transaction does not provide for any sort of meaningful procedural protections for the Company's public shareholders.

87.     Further, the Proposed Transaction is coercive. The Proposed Transaction is not conditioned on a "majority-of-the-minority" shares voting in its favor. The Company's public shareholders thus are left with no meaningful choice whatsoever.

88.     The unfairness of the terms of the Proposed Transaction is compounded by the gross disparity between the knowledge and information possessed by Defendants by virtue of their positions of control of Metrologic and the Knowles Group and that possessed by the Company's public shareholders.

89.     The inherent unfairness in the Proposed Transaction's consideration thus also is manifest in the uncertainty and inadequacy of the purchase price. The financial pressures that led the Special Committee to accept a structure that extends the right to equity participation and other benefits to the Knowles Group is evident. There was no urgency for selling the Company in a deal with a financial sponsor that does not offer any meaningful premium to minority shareholders.

90.     Because entire fairness applies to the Proposed Transaction, the Individual Defendants are obligated to explore all alternatives to maximize shareholder value. To accomplish this obligation, the Individual Defendants had a duty to:

(a)     Fully inform themselves of Metrologic's market value before taking, or agreeing to refrain from taking, action;

(b)     Act in the interests of the equity owners;

(c)     Maximize shareholder value;

(d)     Obtain the best financial and other terms when the Company's independent existence will be materially altered by the transaction; and

(e)     Act in accordance with the fundamental duties of loyalty, care, and good faith.

91.     Because of their respective positions with the Company, the Individual Defendants are also required to:

(a)     Independently to ensure that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholders;

(b)     Ensure that if there are conflicts of interest between the Defendants interests and their fiduciary obligations of loyalty, that they are resolved in the best interest of the Metrologic's public shareholders; and

(c)     Ensure that the Proposed Transaction is entirely fair to Metrologic's public shareholders.

92.     Because of the foregoing, Defendants have breached, and will continue to breach, their fiduciary duties owed to the public shareholders of Metrologic, and are engaging in, or

facilitating the accomplishment of, an unfair and self-interested transaction that is not entirely fair to the public shareholders of Metrologic.

93.     Plaintiff and the Class will suffer irreparable harm unless Defendants are enjoined from breaching their fiduciary duties and carrying out the aforesaid wrongful transaction.

94.     Plaintiff and the Class have been and will be damaged in that they not and will not receive a fair proportion of the value of Metrologic's assets and business and will be prevented from benefiting from a value-maximizing transaction.

95.     Plaintiff and the other Class members are immediately threatened by the acts and transactions complained of herein.

96.     Plaintiff lacks an adequate remedy at law.

**COUNT IV**

**Aiding and Abetting Breaches of Fiduciary Duty**

**(Against Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, Meteor Merger Corporation, Elliott Associates, L.P., and Elliot International, L.P.)**

97.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

98.     Because they were fiduciaries of the Corporation, the Individual Defendants and Elliott owed duties of due care, undivided loyalty, good faith, and truthful disclosure. The Individual Defendants and the Knowles Group violated and breached these duties.

99.     With the knowledge, approval, and participation of each of the Individual Defendants, as alleged herein, defendants Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, and Meteor Merger Corporation, were able to, and in fact did, knowingly render aid and assistance to the Individual Defendants in their breach of fiduciary duty. Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, and Meteor Merger Corporation, did so

knowingly, or but for their gross negligence would have known, of the Individual Defendants' and Elliott's fiduciary breaches.

100.    As a direct and proximate result of the aiding and abetting the Individual Defendants' and Elliott's breaches of fiduciary duty, Plaintiff and the Class have sustained, and will continue to sustain, substantial harm.

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action, and certifying Plaintiff as a class representative;

B.    Declaring that the Defendants and each of them have committed or participated in a breach of their fiduciary duty to Plaintiff and other members of the Class;

C.    Enjoining the Proposed Transaction and, if the transaction is consummated, rescinding the Proposed Transaction (or award damages);

D.    Awarding Plaintiff the costs and disbursements of this action, including a reasonable allowance for Plaintiff's attorneys and experts' fees; and

E.    Granting such other and further relief as may be just and proper.

Dated:  December 8, 2006

RIGRODSKY & LONG, P.A.

Seth D. Rigrodsky, Esquire (ID # 3147)
Brian D. Long, Esquire (ID # 4347)
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel: (302) 295-5310

*Attorneys for Plaintiff*

OF COUNSEL:

KIRBY, MCINERNEY & SQUIRE, LLP
Ira M. Press, Esquire
830 Third Avenue
New York, NY 10022
Tel: (212) 317-2300