IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOEL GERBER, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. |
| C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., METROLOGIC INSTRUMENTS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky, Esquire (ID # 3147)
Brian D. Long, Esquire (ID # 4347)
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel: (302) 295-5310

OF COUNSEL:

KIRBY, MCINERNEY & SQUIRE, LLP
Ira M. Press, Esquire
830 Third Avenue
New York, NY 10022
Tel: (212) 317-2300

*Attorneys for Plaintiff*

Dated: December 8, 2006

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE ................................. 3

    A.    The Parties ........................................................................................... 3

    B.    The Proposed Transaction Is Financially and Procedureally
        Unfair to Plaintiff and the Class.................................................................. 4

    C.    The Proxy Is Misleading And Omits Material Facts ...................................... 7

    D.    Other Actions ....................................................................................... 10

II.     ARGUMENT ....................................................................................... 10

    A.    Plaintiff Is Likely To Prevail On The Merits of His Section 14(a) Claim ............... 11

    B.    Plaintiff Will Suffer Irreparable Injury If The Court Does Not Issue The
        Temporary Restraining Order ................................................................... 13

    C.    The Balancing Of Hardships Weighs In Plaintiff's Favor .......................................... 16

    D.    The Public Interest Favors Entry Of The Temporary Restraining Order....................... 17

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

<u>Page</u>

*AT&T v. Winback & Conserve Program, Inc.,*
   42 F.3d 1421 ................................................................................................................ 17

*Arnold v. Soc'y for Sav. Bancorp., Inc.,*
   650 A.2d 1270 (Del. 1994) ......................................................................................... 13

*Constructors Ass'n of W. Pa. v Kreps,*
   573 F.2d 811 (3d Cir. 1978) ............................................................................. 10, 11, 16

*Edelman v. Salomon,*
   559 F. Supp. 1178 (D. Del. 1983) ............................................................................... 14

*Elliott v. Kiesewetter,*
   98 F.3d 47 (3d Cir. 1996) ........................................................................................... 17

*Gould v. Am. Hawaiian Steamship Co.,*
   535 F.2d 761 (3d Cir. 1976) ....................................................................................... 13

*Herskowitz v. Nutri/System, Inc.,*
   857 F.2d 179 (3d Cir. 1988) ....................................................................................... 13

*In re LNR Prop. Corp. S'holders Litig.,*
   896 A.2d 169, 176 (Del. Ch. 2005) ........................................................................... 2, 4

*In re Reliance Sec. Litig.,*
   91 F. Supp. 2d 706 (D. Del. 2000) .............................................................................. 13

*Int'l Controls Corp. v. Vesco,*
   490 F.2d 1334 (2d Cir. 1974) ..................................................................................... 17

*J.I. Case Co. v. Barak,*
   377 U.S. 42 (1964) .......................................................................................... 11, 14, 17

*Kahn v. Lynch Comm'n Sys., Inc.,*
   638 A.2d 1110 (Del. 1994) ...................................................................................... 4, 17

*Kos Pharm., Inc. v. Andrx Corp.,*
   369 F.3d 700 (3d Cir. 2004) ....................................................................................... 17

*Krauth v. Executive Telecard, Ltd.,*
   890 F. Supp. 269 (S.D.N.Y. 1995) ................................................................................14, 21

*Lawson Mardon Weaton, Inc. v. Smith,*
   734 A.2d 738 (N.J. 1999) ............................................................................................... 2

*Lichtenberg v. Besicorp Group Inc.,*
   43 F. Supp. 2d 376 (S.D.N.Y. 1999) ........................................................................... 14

*Mendell v. Greenberg,*
   927 F.2d 667 (2d Cir. 1991) .....................................................................................12, 17

*Mills v. Electric Auto-Lite Co.*
   396 U.S. 375 (1970) ......................................................................................... 12, 14, 17

*Paramount Comm., Inc. v. QVC Network Inc.,*
   637 A.2d 34, 43 (Del. 1994) ........................................................................................ 15

*Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.,*
   532 A.2d 1324 (Del. Ch. 1987) .................................................................................... 15

*Temple Univ. v. Write,*
   941 F.2d 201 (3d Cir. 1991) ........................................................................................ 17

*Tootsie Roll Indus., Inc. v. Sathers, Inc.,*
   666 F. Supp. 655 (D. Del. 1987) ..............................................................................10, 11

*TSC Indus., Inc. v. Northway, Inc.,*
   426 U.S. 438 (1976) .................................................................................................... 13

## STATUTES

Fed. R. Civ. P. 65(c) ......................................................................................................... 17

15 U.S.C. § 78n(a) ............................................................................................................ 12

17 C.F.R. § 240.14a-9 ....................................................................................................... 12

## INTRODUCTION

This Brief is submitted in support of plaintiff's Motion for a Temporary Restraining Order to prevent defendants from soliciting shareholder approval of a locked-up, "going private" merger whereby a private equity firm and the controlling shareholders of Metrologic Instruments, Inc. ("Metrologic" or the "Company"), will purchase the Company from its public shareholders for inadequate consideration and through coercive means.

As discussed herein and in plaintiff's Verified Class Action Complaint filed herewith ("Complaint") (cited "¶ _"),[1] Metrologic's directors have violated Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)") in connection with the acquisition of Metrologic by entities owned and affiliated with defendants Francisco Partners II, L.P. ("Francisco"), C. Harry Knowles and his family related entities ("H. Knowles") (the Company's Founder and Chairman of its Board of Directors), and Elliott Associates, L.P. and Elliott International, L.P. (hereinafter collectively "Elliott"). H. Knowles and Elliott (the "Knowles Group") are together controlling shareholders of Metrologic. Defendants approved a definitive agreement pursuant to which Francisco, working with the Knowles Group, will acquire all of the Company's outstanding common stock for $18.50 per share (the "Proposed Transaction").

Defendants have scheduled a special meeting for *December 20, 2006*, at which time the Company's shareholders will vote to approve the Proposed Transaction. Defendants intend to close the Proposed Transaction shortly after the shareholder vote.

---

[1] Plaintiff's Verified Class Action Complaint is attached as Exhibit A to the Affidavit of Seth D. Rigrodsky, Esq. ("Rigrodsky Affidavit") filed herewith.

The Proposed Transaction is a "poster child" of the kind of financially abusive treatment public shareholders have recently been subjected to in so-called "going private" transactions. The Knowles Group controls the Company and they stand on both sides of the Proposed Transaction because they will sell shares to Francisco like the public holders, but will also buy shares of the new entity and enjoy its continued financial success.[2]   The Knowles Group is also receiving financial benefits not available to public shareholders in the Proposed Transaction.

The Knowles Group has entered into agreements with Francisco to vote their shares in favor of the Proposed Transaction at a substantial benefit to the Knowles Group.  Certain undisclosed directors and officers of the Company have also agreed to approve the deal in return for substantial financial benefits.  Thus, at least 49% of Metrologic's shares are committed to approve the Proposed Transaction. ***Because only a majority of shares are required to secure approval, the affirmative vote of only 1.1% of the remaining 51% of Metrologic's public shareholders are necessary.***  To make matters worse, the Knowles Group struck a private side deal with Francisco to vote their shares *against* even a higher priced offer a third party would make for the Company.  ¶32.[3]

---

[2] The Proposed Transaction is subject to an exacting "entire fairness" form of judicial review under state law to assess whether the Proposed Transaction is both procedurally and financially fair to the public minority shareholders.  *See In re LNR Prop. Corp. S'holders Litig.,* 896 A.2d 169, 176 (Del. Ch. 2005).  Metrologic is incorporated in New Jersey and thus New Jersey law applies to assess plaintiff's state supplemental law claims.  New Jersey courts, however, routinely reference Delaware court decisions on issues of corporate law.  *Lawson Mardon Weaton, Inc. v. Smith,* 734 A.2d 738, 746-47 (N.J. 1999).  As discussed herein, a consolidated class action is currently pending in New Jersey State court challenging the Proposed Transaction under New Jersey law.

[3] To make the deal more fair to the public, which gets no added benefit other than the consideration offered in the Merger (itself unfair), defendants should have insisted upon the inclusion of a "majority-of-the-minority" provision in the Merger Agreement. ¶¶36-37.

2

On November 29, 2006, the Company filed a Schedule 14A Proxy Statement with the

Securities Exchange Commission to solicit the shareholder vote on the Proposed Transaction (the

"Proxy").[4]  As alleged in detail herein and in the Complaint, the Proxy is materially misleading

and omits material facts in violation of Section 14(a).  ¶¶6, 72-74.  Among many other things, the

Proxy fails to disclose that, even though the Knowles Group will receive the same $18.50 per

share consideration as the public shareholders, Knowles and Elliott will each receive consideration

worth an additional $3.66 for each of the Metrologic shares they plan to exchange for equity in the

entity surviving the Proposed Transaction (the "Rollover Shares").  ¶¶6-7, 31-33.  Accordingly,

the Knowles Group will receive $22.16 (including the $3.66 per share in hidden consideration)

for their Rollover Shares - - or a 19.8% per share premium to what plaintiff and the Class will

receive.  ¶33.

Congress enacted Section 14(a) of the Securities Exchange Act of 1934 to preclude the

making of material misstatements and omissions in proxy solicitations.  The Proposed

Transaction is illegal and defendants' solicitation by means of the materially misleading Proxy

prevents the shareholders from properly evaluating it.  Thus, plaintiff seeks a temporary

restraining order to preclude defendants from soliciting proxies and stockholder support for the

Proposed Transaction until after his complaint is resolved.

I.     **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

   A.     **The Parties**

Plaintiff Joel Gerber ("plaintiff") is the owner of Metrologic common stock and has

been the owner of such shares since prior to the announcement of the Proposed Transaction.  ¶10.

---

[4] A true and correct copy of the Proxy (without attachments) is attached as Exhibit "B" to the
Rigrodsky Affidavit.

Defendant Metrologic is a corporation duly organized and existing under the laws of the State of New Jersey. The Company maintains its principal office in New Jersey at 90 Coles Road, Blackwood, New Jersey, 08012. ¶11.

The individual defendants are the members of the Company's Board of Directors and have been directors since prior to the announcement of the Proposed Transaction. ¶20.

**B.    The Proposed Transaction Is Financially and Procedurally Unfair to Plaintiff and the Class**

The Proposed Transaction will result in a merger between entities controlled by Francisco and Metrologic whereby Metrologic will be the surviving entity.[5] In the Proposed Transaction, the Company's public shareholders will receive $18.50 in cash for each share of Metrologic stock. ¶3.

As alleged in the Complaint, the $18.50 offering price is wholly inadequate and unfair. The offering price represents a meager premium of just 4.7 % over the Company's stock price on the last full day of trading before defendants announced the Proposed Transaction and constitutes a 1.5% premium over the average trading price of the Company's stock over the last

---

[5] The Knowles Group and the other individual defendants are financially interested in the Proposed Transaction because they all will "receive a personal benefit" from the deal "that is not shared equally by the Company's stockholders." *LNR Prop.*, 896 A.2d at 175. Where a controlling shareholder like the Knowles Group stands on both sides of a transaction, as here, it must "demonstrate [its] utmost good faith and most scrupulous inherent fairness of the bargain." *Id.* (Quotation omitted); *see Kahn v. Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1116 (Del. 1994).

4

year. ¶55. In fact, just over five months before defendants agreed to the Proposed Transaction, the Company's shares traded as high as $23.10 per share. ¶58. Market analysts have condemned the $18.50 offering price, opining that it is worth at least $23 per share.

A comparison of Metrologic to other similar public companies shows that price multiples of EBITDA (earnings before interest, taxes, depreciation, and amortization) and EBIT (earnings before interest and taxes) are lower for the Company that for its peer group. This reflects that the consideration in the Proposed Transaction is inadequate. ¶¶59-61. According to Needham & Company, LLC ("Needham") -- the investment banker for a so-called "special committee" of certain defendant directors retained in connection with the Proposed Transaction -- the $18.50 merger price is an 11.4 multiple to the Company's last twelve month EBITDA, compared with a 13.3 multiple for peer groups. ¶59. According to plaintiff's analysis, Metrologic's EBITDA multiple is 10.85 compared to 17.06 for the peer group. Metrologic's EBIT multiple is 13.23 compared to 19.67 for the Company's peer group.

The Knowles Group stands to reap a huge windfall if the shareholders approve the Proposed Transaction. Unlike the public, Knowles and Elliott will each receive approximately 15% of the equity in the new post-merger entity. ¶30. Plaintiff has estimated, based on publicly-available information, that this stake is worth an additional $3.66 per share representing an undisclosed 19.8% premium above the $18.50 price offered to the public. ¶33. In addition, the Knowles Group will receive the following benefits in the Proposed Transaction:

- H. Knowles will remain as CEO at an agreed to salary of $350,000 per year and other undisclosed benefits (Proxy at 49). If the new post-merger company removes H. Knowles as CEO or director against his will, it will be required to purchase H. Knowles' entire equity investment in the new post-merger company (Proxy at 47-48). Further, regardless of whether the new post-merger company ever removes him, H. Knowles and his wife will receive health insurance for life. (Proxy at 48);

5

- H. Knowles and Elliott will receive a portion of quarterly fees the new Company has agreed to pay Francisco. ¶32;

- Elliott will receive a portion of a $12 million fee the Company has agreed to pay Francisco in connection with the consummation of the Merger or a part of the $18.25 million fee the Company has agreed to pay Francisco if it does not consummate the Proposed Transaction. *Id.*

The stock options of the other directors and officers of Metrologic (including those who have agreed to approve the Proposed Transaction) will vest immediately. ¶52. The individual defendants, excluding Knowles, will collectively earn over $1 million as a result of their options vesting. Proxy at 51-52. Members of senior management will continue working for the new company and have opportunities to cash in on its future financial performance through additional grants of options and other forms of remuneration. The individual defendants also will be entitled to continued indemnification and directors' and officers' liability insurance after the deal closes. Proxy at 52.

The Complaint also pleads that the Proposed Transaction is procedurally unfair because it lacks any of the well-recognized indicia of procedural fairness including that fact that the Knowles Group actively participated in the negotiations concerning deal terms highly relevant to the Proposed Transaction. ¶¶35-49. In addition, among many other things:

- Francisco is paying the Knowles Group, the other individual defendants, and the Company's management millions of dollars to vote their shares (representing 49% of all shares entitled to vote) in favor of the Proposed Transaction (¶¶3, 28, 32);

- The Proposed Transaction has no majority of the minority provision meaning that an affirmative vote of only 1.1% of the remaining 51% of non-affiliated shares is necessary to secure approval (¶¶5, 37);

6

- The Company's so-called "Special Committee" of directors is financially interested in the success of the Proposed Transaction, failed to consider material information about the Knowles Group's equity participation in the deal, and lacked sufficient authority (¶¶4, 50-54);

- The Proposed Transaction is locked up in favor of the Knowles Group because (1) the Merger Agreement contains a huge termination fee; (2) the Merger Agreement mandates that the Company disclose a potential bidder's identity and financial terms to the Knowles Group and (3) the Knowles Group, in return for millions of dollars, has agreed to vote against any other deal (even another deal that offers a better price to the Company's shareholders) (¶¶38-49);

- The special committee's financial and legal advisors are financially conflicted having previously provided significant services to the Company (¶¶4,53); and

- The individual defendants failed to auction the Company or do anything to get the best price reasonably available for Metrologic's shareholders in this change of control transaction. ¶¶38-39, 42, 56.

## C.    The Proxy Is Misleading And Omits Material Facts

Plaintiff alleges in his Complaint that the Proxy fails to disclose highly significant and material information necessary for Metrologic's public shareholders to make an informed decision regarding the Proposed Transaction. ¶¶72-74. This decision is the most important in the life of the Company because Metrologic's shareholders will not have a right to seek a post-transaction appraisal to obtain fair value for their shares. ¶72.

The Complaint alleges that the Proxy fails to disclose the amount that the Knowles Group will receive for their investment in the post-Merger company and its value in comparison to that which the Company's public shareholders will get. ¶¶6, 29-34. The Proxy fails to disclose that,

unlike plaintiff and the Class, Knowles and Elliott are receiving an extra $3.66 imbedded in the

offering price for their Rollover Shares, representing a 19.8% premium over the $18.50 being

offered to plaintiff and the Class. ¶¶3, 33.  Plaintiff alleges that the Proxy violated Section 14(a)

because it asserts that the so-called special committee determined that the Proposed Transaction

was fair to the minority public shareholders, but failed to disclose that the total consideration the

Knowles Group are to receive in the Proposed Transaction is significantly greater than what the

public shareholders will receive. ¶¶29, 33, 73.

     In addition, the Complaint further alleges that the Proxy is materially misleading

and omits material facts about the following:

- The Proxy fails to disclose whether the special committee or the Board, before they approved the Proposed Transaction, were aware of the September 12, 2006, letter agreement between Elliott and an entity Francisco controls giving Elliott a portion of any consulting and merger termination fees;

- The Proxy fails to disclose the identity of the special committee members engaged when the Company first determined to explore a sale of the Company in 2004;

- The Proxy fails to disclose that the special committee's members were paid an incentive fee to approve the Proposed Transaction, or that they had handsomely awarded themselves additional compensation in connection with the decision to pay out options granted them under the Company's 1994 and 2004 employee stock option plans;

- The Proxy does not disclose that the special committee failed to consider hiring any advisors other than Ballard Spahr Andrews & Ingersoll, LLP ("Ballard Spahr") (the special committee's legal advisor) and Needham;

- The Proxy fails to disclose the amounts that Ballard Spahr and Needham, respectively, were paid by either Knowles, Elliott, or any of the other defendants in connection with services rendered during the past five years, or any amounts promised to be paid in the future;

- The Proxy fails to disclose that the $18.50 offering price is a mere 1.47% premium over the 52-week average market price for Metrologic's shares;

- The Proxy fails to disclose why management's projections so dramatically decreased between July 31 and August 23, 2006, and fails to disclose why the projections prepared on August 16 and August 23, 2006 were given to Francisco but not Needham;

- The Proxy fails to disclose that Needham's cash flow analysis was fundamentally flawed and that Needham incorrectly neglected to deduct amortization expense when calculating taxable income. This resulted in an overstatement of tax expense and a corresponding understatement of net income and free cash flow, which in turn understated the Company's equity value. In addition, Needham's discounting calculations reflect end-of-period discounting rather than mid-period discounting;

- In its analyses presented to the Board, Needham used an unusually broad range of discount rates, ranging from 10% to 20%. The Proxy, however, fails to give any indication of the methodology or assumptions Needham relied on to arrive at its range of discount rates;

- The Proxy fails to disclose whether any of the other potential bidders contacted by a previous investment bank during an auction process in 2004-05, were willing to consider deal terms similar to those contained in the Proposed Transaction, including provisions providing for Knowles and Elliott to have a continuing equity participation;

- The Proxy fails to disclose exactly what Elliott will be paid in the event the Company accepts a higher proposal and terminates the Proposed Transaction -- the Proxy also fails to disclose how much Knowles and Elliott will receive from Francisco in connection with payments it will receive for providing services to Metrologic; and

- The Proxy fails to disclose the sources of the options Metrologic is buying out from the Board and the extent to which those options are in or out "of the money" and by how much.

¶73.

9

### D.    Other Actions

Plaintiff originally filed a class action against defendants in the Chancery Division of the New Jersey Superior Court, Gloucester County, on September 15, 2006. By Order dated December 1, 2006, the Chancery Division of the Camden, New Jersey Superior Court consolidated plaintiff's action with three class action cases other Company shareholders previously filed in Camden County. Those cases all challenge the Proposed Merger under New Jersey law.

Plaintiffs in the New Jersey class cases sought expedited discovery and requested the Court to schedule a hearing on their motion for a preliminary injunction in advance of the December 20, 2006, shareholder meeting. On December 1, 2006, the New Jersey Court denied plaintiff's motion to expedite. As of today, the Camden Chancery Court has not decided whether it will schedule a hearing on plaintiff's motion for a preliminary injunction. Plaintiff is voluntarily dismissing his New Jersey lawsuit. Document discovery is ongoing in the consolidated New Jersey actions.

## II.    ARGUMENT

A temporary restraining order is an emergency remedy issued "to preserve the *status quo* until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.,* 666 F. Supp. 655, 658 (D. Del. 1987). In granting a temporary restraining order, the Court "must attempt to minimize the probable harm to legally protected interests between the time that the motion for a preliminary injunction is filed and the time of the final hearing." *Constructors Ass'n of W. Pa. v. Kreps,* 573 F.2d 811, 815 (3d Cir. 1978).

10

In this Circuit, "[g]enerally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll,* 666 F. Supp. at 658. In determining whether the entry of a temporary restraining order is warranted the Court must consider whether: "(1) the movant has shown that there is a reasonable likelihood that it will succeed on the merits; (2) the movant has demonstrated that it will suffer irreparable harm absent the relief sought; (3) other parties will be substantially injured by the relief; and (4) where the public interest lies." *Id.* No one factor will determine whether the Court will enter a temporary restraining order and rather, all of these elements must be balanced. *Constructors Ass'n,* 573 F.2d at 815. Under this sliding scale, the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor. *See id.*

As set forth below, plaintiff has established that it he is entitled to a temporary restraining order, restraining Defendants from soliciting proxies and shareholder support for the Proposed Transaction. *See infra* at 18 (listing in detail the relief requested).

### A.    Plaintiff Is Likely To Prevail On The Merits of His Section 14(a) Claim

Section 14(a) "stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *J.I. Case Co. v. Borak,* 377 U.S. 426, 431 (1964). [6] The "provision was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited

---

[6] All emphasis is added and all internal quotations are omitted throughout this Brief unless otherwise noted.

with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 381 (1970); *see also Mendell v. Greenberg,* 927 F.2d 667, 670 (2d Cir. 1991) ("A proxy statement should honestly, openly and candidly state all the material facts, making no concealment of the purposes for the proposals it advocates. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up.").

To address these broad remedial purposes, Section 14(a) and Rule 14a-9 prohibit making misstatements or omissions of material facts in proxy solicitations. Section 14(a) states:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 12 [§ 78l] of this title.

15 U.S.C. § 78n(a).

Rule 14a-9 generally prohibits fraud in the solicitation of proxies, and provides as follows:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9.

12

Negligence is the standard of culpability under Section 14(a). *Herskowitz v. Nutri/System, Inc.,* 857 F.2d 179, 189-90 (3d Cir. *1988), cert. denied,* 489 U.S. 1054 (1989); *Gould v. Am. Hawaiian Steamship Co.,* 535 F.2d 761, 777-78 (3d Cir. 1976); *In re Reliance Sec. Litig.,* 91 F. Supp. 2d 706, 729 (D. Del. 2000). [7]

An omission or misleading statement of fact is material "if there is a substantial likelihood that a responsible shareholder would consider it important in deciding how to vote." *TSC Indus. Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976). A plaintiff need not prove "a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote." *Id.* Rather, plaintiff must show "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

In this case, as described *supra,* the Proxy is materially false and misleading because it fails to disclose critical material facts about the Knowles Group's unfair and disloyal conduct and the defendants' failure to protect the public shareholders.

### B.    Plaintiff Will Suffer Irreparable Injury If The Court Does Not Issue The Temporary Restraining Order

Plaintiff and the proposed class will suffer immediate, irreparable injury if deprived of the opportunity to make a fully informed decision regarding the Proposed Transaction.

---

[7] The heightened pleading standards imposed by the Private Securities Litigation Reform Act do not apply to Section 14(a) claims. *See In re Reliance,* 91 F. Supp. 2d at 729 (D. Del. 2000).

*Krauth v. Executive Telecard, Ltd.,* 890 F. Supp. 269, 287 (S.D.N.Y. 1995) ("Irreparable

injury results from the use of false and misleading proxies when the free exercise of

shareholders' voting rights will be frustrated."); S*ee also Lichtenberg v. Besicorp Group, Inc.,*

43 F. Supp. 2d 376 390 (S.D.N.Y. 1999*).*  As this Court held in *Edelman v. Salomon,* 559 F.

Supp. 1178, 1189 (D. Del. 1983):

> In *Mills v. Electric Auto-Lite,* 396 U.S. 375, 383, 90 S.Ct. 616,
> 621, 24 L.Ed.2d 593 (1970), the Supreme Court recognized that
> use of a solicitation which is materially misleading poses the kind
> of irreparable injury to stockholders which can justify injunctive
> relief prior to a shareholders' meeting. Where the violations of
> Section 14(a) are as clear as they are in this case, I believe that it is
> in the best interest of the stockholders and the public to allow a
> time for clearing the air and disseminating the information
> necessary to eradicate false impressions.  While I do not rest my
> decision upon it, I also believe it is preferable for the stockholders
> to make a decision on how to cast their votes in the election of
> directors at a time when the confusion regarding cumulative voting
> has been cleared up.

Because Plaintiff has shown that the deficiencies in the Proxy are material, he has established

the threat of irreparable harm. *See Krauth,* 890 F. Supp. at 287.

Moreover, the irreparable injury caused by defendants' misleading proxy solicitations

cannot by rectified by an action at law.  Congress believed in enacting Section 14(a) that "[fair

corporate suffrage is an important right that should attach to every equity security bought on a

public exchange." *Borak,* 377 U.S. at 431.  The Company's shareholders have no adequate

remedy at law because they "would have been deprived of their statutory right to be free from

deceptive proxy solicitations and their corresponding right to an informed vote" in the absence

of injunctive relief. *Lichtenberg,* 43 F. Supp. 2d at 391.  Money damages cannot adequately

14

compensate them for the loss of this fundamental right. *Id.* at 392 (money damages for violation of Section 14(a) "would be less accurate, prompt, complete and efficient [than an injunction] - and thus inadequate"). Indeed, this Court has not hesitated to issue a temporary restraining order in such circumstances.

Further, defendants, in blatant breach of their fiduciary duties of loyalty, good faith and disclosure, have stranded the Company's shareholders without the procedural protections to which they are entitled and without information material to a full understanding of the Proposed Transaction. Where the process of review of a proposed transaction by a board is uninformed, tainted, and indeed completely ineffectual, courts have recognized the necessity for injunctive relief. *See Paramount Comm., Inc. v. QVC Network, Inc.,* 637 A.2d 34, 51; *see also Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.,* 532 A.2d 1324, 1335 (Del. Ch. 1987).

Defendants' violations alone establish the requisite irreparable injury. Moreover, where, as here, a board of directors has agreed to a sale of control in breach of its fiduciary duties to explore alternatives and obtain the best transaction reasonably available, injunctive relief is appropriate. *See Paramount,* 637 A.2d at 51. In addition, courts have held that injunctive relief is appropriate where, as here, the process leading to approval of a sale of control has been flawed by the directors' breach of their obligation to obtain the highest value reasonably available. *See Paramount,* 637 A.2d at 43-47.

15

C.    **The Balancing Of Hardships Weighs In Plaintiff's Favor**

Because plaintiff has shown that he is likely to succeed on the merits, he need not show

that the balance of hardships tips decidedly in his favor. *See Constructors Ass'n,* 573 F.2d at

815.  However, an examination of the facts shows that the balance of hardships clearly weighs

in favor of plaintiff in any event.

The special shareholder vote is less than two weeks away.  If the Court does not grant

the temporary restraining order, any shareholder vote will be tainted with misrepresentations

and misleading information.

The defendants will face little to no hardship from this Court's entry of a temporary

restraining order.  As an initial matter, defendants cannot claim that plaintiff waited too long.

Defendants filed the Proxy just a few days ago.  Before that time, defendants were aware of

the New Jersey class actions filed against them.  Further, the consolidated New Jersey action

seeks injunctive relief and plaintiffs have asked the New Jersey court to enjoin the Proposed

Transaction before December 20, 2006.

Plaintiff alleges here that the defendants are engaging in illegal and misleading activities

to pursue their own interests.  But even so, there is no harm to defendants in maintaining the *status*

*quo* while plaintiff's complaints are resolved.  Defendants will not face any monetary loss or

hardship from a postponement in pursuing the Proposed Transaction.  Indeed, the Proxy states that

it will be business as usual at Metrologic if the shareholders rejected the Proposed Transaction.  At

worst, they will be delayed.  This minimal hardship does not rise to the level of hardship plaintiff

16

will face if it is not given time to protect its shareholders from the defendants' misrepresentations.[8]

**D.    The Public Interest Favors Entry Of The Temporary Restraining Order**

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 427, 428 (3d Cir. 1994); *see also Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 730 (3d Cir. 2004).

Here, the public interest favors entry of the temporary restraining order, because plaintiff's goal and the public interest are one in the same: to fully apprise Metrologic's shareholders and "honestly, openly and candidly state all the material facts." *Mendell, 927* F.2d at 670; *See also Barak,* 377 U.S. at 431 (Section 14(a) "stemmed from the congressional belief that 'fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange'"); *Mills,* 396 U.S. at 381 ("[Section 14(a)] was intended to promote "the free

---

[8] Although a security bond may be required as a condition to a court entering a temporary restraining order, there are instances when a court has the discretion to waive the bond requirement. *See* Fed. R. Civ. P. 65(c) ("in such amounts as the court deems proper"). Courts in other circuits have found that a court may "dispense with security where there has been no proof of likelihood of harm to the party enjoined." *Int'l Controls Corp. v. Vesco,* 490 F.2d 1334, 1356 (2d Cir. 1974). As plaintiff has shown, the defendants face no harm monetary or otherwise if this Court issues a temporary restraining order. Defendants will not be harmed by the Court's delaying their pursuit of the Proposed Transaction, and requiring a bond from plaintiff will only result in additional hardship to plaintiff due to defendants' actions. This Circuit has found that when a court considers whether to require a bond, it should balance the "equities of the potential hardships that each party would suffer as a result of a preliminary injunction." *Elliott v. Kiesewetter,* 98 F.3d 47, 60 (3d Cir. 1996). Particularly, the court should consider "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Temple Univ. v. Write,* 941 F.2d 201, 219 (3d Cir. 1991). Due to the absence of any harm - - much less monetary harm -- to the defendants, and the further hardships, which the Court would impose on plaintiff if it required a bond, this Court should use its discretion to waive security for this temporary restraining order.

17

exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.").

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court enter a temporary restraining order, restraining defendants from (i) soliciting proxies and shareholder support for the Proposed Transaction; and (ii) distributing false and misleading information to Metrologic's shareholders through the Proxy Proposal; and (iii) requiring defendants to issue corrective disclosures.

Dated:  December 8, 2006                    RIGRODSKY & LONG, P.A.

_____
Seth D. Rigrodsky, Esquire (ID # 3147)
Brian D. Long, Esquire (ID # 4347)
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel:    (302) 295-5310

*Attorneys for Plaintiff*

OF COUNSEL:

KIRBY, MCINERNEY & SQUIRE, LLP
Ira M. Press, Esquire
830 Third Avenue
New York, NY  10022
Tel:  (212) 317-2300

Dated:  December 8, 2006

## CERTIFICATE OF SERVICE

I, Brian D. Long , hereby certify that on this 8th day of December, 2006, I caused

a true and correct copy of Plaintiff's Opening Brief in Support of Plaintiff's Motion for a

Temporary Restraining Order to be conventionally filed with the Clerk of the Court with

copies be served upon the following via e-mail and first class mail:

Louis R. Moffa, Jr., Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

Kenneth M. Murray, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

Geoffrey A. Kahn, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Angelo A. Stio, III, Esquire
Pepper Hamilton, LLP
300 Alexander Park
Princeton, NJ 08543

Robert L. Hickok, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

David J. Berger, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

Elizabeth M. Saunders, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
One Market, Spear Tower, Suite 3300
San Francisco, CA 94105

Wolfgang Heimerl, Esquire
Heimerl Law Firm
1 Anderson Road, Suite 105
Bernardsville, NJ 07924

David Parker, Esquire
Marc Rosen, Esquire
Kleinberg, Kaplan, Wolff & Cohen, P.C.
551 Fifth Avenue
New York, NY 10176

Gregory B. Reilly, Esquire
John D. Schupper, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068-1791

Brian D. Long (ID #4347)