LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

919 NORTH MARKET STREET, 12TH FLOOR
WILMINGTON, DELAWARE 19801-3034
(302) 252-4465
FAX: (302) 252-4466
WWW.BALLARDSPAHR.COM

PHILADELPHIA, PA
BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

WILLIAM M. KELLEHER
DIRECT DIAL: 302-252-4460
PERSONAL FAX: 302-355-0723
KELLEHERW@BALLARDSPAHR.COM

December 11, 2006

## BY HAND DELIVERY

Dr. Peter T. Dalleo
Clerk of Court
U.S. District Court for the District
  of Delaware
844 North King Street, Room 4209
Lock Box 18
Wilmington, DE  19801

      Re:    Joel Gerber, et al. v. C. Harry Knowles, et al., No. 6-747 (D. Del.)

Dear Dr. Dalleo:

        We understand that this matter has not yet been assigned to a judge and, therefore, are directing this correspondence to you in accordance with the instructions of your office.

        This firm represents defendants Metrologic Instruments, Inc. ("Metrologic"), Richard C. Close, John H. Mathias, Stanton L. Meltzer, Hsu Jau Nan and William Rulon-Miller in the above-referenced action. Per our agreement with all other defense counsel, please accept this letter on behalf of counsel for all defendants in this action. We write in response to Plaintiff's Class Action Complaint and Motion for a Temporary Restraining Order, both filed in this Court on December 8, 2006. In addition, we write to inform the Court of developments in a prior pending, related litigation in the Superior Court of New Jersey entitled In re: Metrologic Instruments, Inc. Shareholders' Litigation, No. 6430-06 (Hon. M. Allan Vogelson) (the "New Jersey Action"). For the reasons set forth below, we respectfully request this action be dismissed or stayed pending resolution of the New Jersey Action, and further request the opportunity to file a motion for sanctions against Plaintiff and his counsel for their bad faith in filing this action in light of their blatant and improper forum shopping.

        The transaction at issue was publicly announced on September 12, 2006. *See Exhibit A to Declaration of Seth Rigrodsky at ¶ 28.* Pursuant to this transaction, Metrologic, which is a New Jersey corporation with its principal place of business in New Jersey, is to be acquired by entities affiliated with Francisco Partners for a cash price of $18.50 per share. A meeting of Metrologic's shareholders to vote on this transaction is scheduled for December 20, 2006.

Dr. Peter T. Dalleo
December 11, 2006
Page 2

Within a three-day span beginning on September 13, 2006, four lawsuits were filed in New Jersey state court, including one filed by Plaintiff's counsel and another by Plaintiff himself, Joel Gerber.[1] All four actions challenged the same transaction at issue in this case.

From approximately mid-September through mid-November, plaintiffs in the New Jersey Action made virtually no attempt to move the New Jersey Action forward. Indeed, not until November 16, 2006 did the parties enter into a stipulation regarding consolidation of the cases. Pursuant to that Stipulation, defendants also agreed to produce certain documents, and have now produced nearly 100,000 pages of documents to plaintiffs. On November 28, 2-1/2 months after plaintiffs filed their first case in New Jersey and only after the Metrologic shareholder meeting date was set for December 20, plaintiffs finally decided to seek expedited relief, in the form of an order to show cause for a hearing on a preliminary injunction before Judge Vogelson in New Jersey. That application sought essentially the identical relief Plaintiff seeks in the papers filed with this Court: expedited discovery and a hearing on a motion for a preliminary injunction prior to the December 20, 2006 shareholder vote.

A hearing on plaintiffs' motion for expedited discovery was held before Judge Vogelson on December 1. At that hearing, Judge Vogelson ruled that he would "retain jurisdiction [in the case] until I review the documents that Counsel's referred to with respect to the injunction." *See Transcript at 42: 19-21, attached at Exhibit A hereto.* Judge Vogelson also entered the Consolidation and Pre-Trial Order (*Exhibit B, attached hereto*), which had been signed by counsel for all parties, including Mr. Gerber's counsel in that case and his counsel in this case. That Order consolidated all lawsuits challenging the proposed transaction, including the lawsuit brought by Mr. Gerber. The Order signed by Judge Vogelson also named Mr. Gerber's counsel in this case to be lead counsel in the New Jersey Action, and made his Amended Complaint (*Exhibit C, attached hereto*) the operative complaint in the New Jersey Action.

---

[1]     Among the defects in Mr. Gerber's complaint in this action is his failure to file the lead plaintiff certification, along with his transactions in Metrologic securities and his service as a class representative during the last three years. See 15 U.S.C. 77z-1(a). One reason Mr. Gerber may have omitted this information is that he has a long history of serving as a plaintiffs' representative in shareholder litigations, and for this reason too may not be an appropriate representative. A quick review of various reported cases shows that Mr. Gerber has sought to be a class representative in a number of federal securities lawsuits over the last several years. *See, e.g., Eisenstadt v. Allen, 113 F.3d 1240 (9th Cir. 1997) (Mr. Gerber was one of the Plaintiff-Appellants); Gerber v. Delta Airlines, Inc. 1996 WL 557853 (N.D. Ga. 1996); Gerber v. Computer Associates Intern., Inc., 1995 WL 228388 (E.D.N.Y., 1995); Colaprico v. Sun Microsystems, Inc., 1994 WL 514029 (N.D.Cal. 1994).* Mr. Gerber has also regularly sought to be the class representative in merger litigation cases, such as the one he filed in New Jersey challenging this case, as well as a recent litigation challenging the acquisition of Freescale Semiconductor Corp. *See Gerber v. Freescale Semiconductor, Inc., No. D-1-GN-06003501 (98th Judicial Dist., Travis County, Tx, 2006).*

Dr. Peter T. Dalleo
December 11, 2006
Page 3

Even the most cursory review of the New Jersey Amended Complaint makes clear that it is indistinguishable from this case. Both actions purport to be brought on behalf of the identical class, are brought by the same plaintiffs' counsel, are against the identical group of defendants and challenge the same transaction. *Compare Exhibit A to Declaration of Seth Rigrodsky at p. 33 and ¶¶ 2, 3, 11-20, and 22 with Exhibit C at p. 34 and ¶¶ 1, 7-16, and 18.* Additionally, the complaints raise identical issues: both complaints challenge the purported fairness of the transaction, claim that one of the defendants (Mr. Knowles, the 78-year old founder, CEO and largest shareholder of Metrologic) allegedly improperly used his position to obtain benefits not available to other shareholders, and make the same disclosure allegations. *Compare Exhibit A to Declaration of Seth Rigrodsky at ¶¶ 29-34, 35-71, and 72-74 with Exhibit C at ¶¶ 26-31, 32-68, and 69-71.* The only difference between the two complaints is that the complaint in this action purports to add a claim for violation of the federal proxy rules, while the New Jersey complaint—which includes the same disclosure allegations—makes the claim that these disclosure violations violate the directors' fiduciary duty of candor—a claim brought as a pendent state law claim in this action. *Compare Exhibit A to Declaration of Seth Rigrodsky at ¶¶ 75-79, and 80-83 with Exhibit C at 72-75.*

Plaintiff's tactics here constitute forum shopping at its worst. As described above, there is no substantive difference between the instant complaint and the operative complaint in the prior pending New Jersey Action. Plaintiff has filed this action for one reason, and one reason only: he does not like the results he is achieving in the New Jersey Action. There simply is no other plausible explanation for the filing of this complaint, less than two weeks before the Metrologic shareholder meeting is scheduled, and nearly three months after the transaction was announced and this same plaintiff and his counsel filed an identical action in New Jersey state court.[2]

In addition, venue in Delaware is improper, and personal jurisdiction is lacking in Delaware over all of the individual defendants. All of the key parties, witnesses and documents are outside of Delaware, and none of the events with respect to the transaction at issue occurred in Delaware. For example, it is undisputed that Metrologic is a New Jersey corporation with its principal place of business in New Jersey. *See Exhibit A to Declaration of Seth Rigrodsky at ¶ 11.* This is presumably why plaintiffs filed the New Jersey Action. Similarly, all of the directors, advisors and other key participants live outside of Delaware, and none went to Delaware in connection with this transaction. The fact that Delaware is not an appropriate venue

---

[2] Courts have issued sanctions in situations far less egregious than those present here. *See, e.g., Washington v. Williams,* 696 F. Supp. 237, 239 (S.D. Miss. 1988) (dismissing case and ordering sanctions where second action was "duplicative" of an "identical suit pending" in a different state); *Hapaniewski v. City of Chicago Heights,* 883 F.2d 576, 581 (7th Cir. 1989) (finding that it was improper for attorneys "to persist in the federal litigation while the state action was still in progress...").

Dr. Peter T. Dalleo
December 11, 2006
Page 4

for this case is apparently also recognized by Plaintiff; not only did he file his first action in New Jersey, but while his complaint in this case includes a section titled "Jurisdiction and Venue," there is no allegation concerning venue. *See Exhibit A to Declaration of Seth Rigrodsky at ¶ 9.*

Moreover, there is no urgent need to conduct a hearing in this case because all of Plaintiff's alleged claims —and they are merely alleged, as Plaintiff's substantive claims are completely frivolous—can be fully compensated by money damages.[3] When the transaction was publicly announced on September 12, 2006, Metrologic stated that the transaction would close before the end of the year. While Plaintiff and Plaintiff's counsel filed separate complaints in New Jersey challenging the proposed transaction within 72 hours of its announcement, they took no action until December 8, 2006 to request injunctive relief from this Court. Further, the only reason for even seeking action in this Court at this late date is that Plaintiff's effort to obtain the same relief he is seeking here has thus far been wholly unsuccessful.

Finally, Plaintiff's claims are, at their core, specious, and the requested injunctive relief would cause significant harm to all of the shareholders of Metrologic. The reality here is that the transaction at issue, as well as the disclosures concerning that transaction, are proper in every respect. The $18.50 per share price to be paid in the transaction is a significant premium over the recent trading price of Metrologic's stock. The transaction was negotiated and approved by a Special Committee of Metrologic's Board of Directors, consisting entirely of independent directors. The Special Committee was advised by Needham & Company, a nationally recognized independent financial advisor with particular expertise, who opined that the transaction is fair to Metrologic's shareholders. Further, although the proposed transaction has been public knowledge for almost three months, no alternative bidder has approached Metrologic concerning an alternative transaction. This is not surprising since Metrologic had not received any other offer above $18 per share even though it had shopped itself to nearly 100 potential buyers since late 2005. *See Exhibit B to Declaration of Seth Rigrodsky.* If the shareholders of Metrologic are deprived of the opportunity to participate in this transaction, there is no plausible alternative transaction available (nor does plaintiff allege that there is), and the price of Metrologic shares is likely to drop significantly.

Accordingly, for all of these reasons Defendants respectfully submit that Plaintiff's complaint is patently defective and should be dismissed and that his rank forum shopping is sanctionable. Defendants stand ready to file an appropriate motion and are also available to discuss this matter should the Court desire.

---

[3] The frivolous nature of Plaintiff's claims can be seen by his allegation that Metrologic's directors did not adequately "shop" the company. In fact, as made clear in the proxy, it is undisputed that since 2004 Metrologic's board has engaged in an exhaustive process to try and sell the company, including contacting almost 100 potential buyers. Despite this extensive effort, the only firm offer the Company received was in this transaction.

Dr. Peter T. Dalleo
December 11, 2006
Page 5

Respectfully yours,

William M. Kelleher

WMK:sdh
Enclosures

cc:   Seth D. Rigrodsky, Esquire (by Hand Delivery and Electronic Mail)
     Robert L. Hickok, Esquire (by Electronic Mail)
     Angelo A. Stio, III, Esquire (by Electronic Mail)
     David J. Berger, Esquire (by Electronic Mail)
     Elizabeth M. Saunders, Esquire (by Electronic Mail)
     Wolfgang Heimerl, Esquire (by Electronic Mail)
     Marc Rosen, Esquire (by Electronic Mail)
     Gregory B. Reilly, Esquire (by Electronic Mail)
     John B. Schupper, Esquire (by Electronic Mail)
     Geoffrey A. Kahn, Esquire (by Electronic Mail)
     Louis R. Moffa, Jr., Esquire (by Electronic Mail)

# Exhibit A

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
CAMDEN COUNTY
DOCKET NO. C-166-06
A.D. #_____

DAVID WILKENFELD, et al,   )
                            )
        Plaintiffs,    )   TRANSCRIPT
                            )     OF
        vs.         )   MOTION
                            )
C. HARRY KNOWLES, et al,  )
                            )
        Defendants.    )

               Place:   Camden County Hall of Justice
                      101 S. 5th Street
                      Camden, New Jersey   08103

               Date:  December 1, 2006

BEFORE:

    HONORABLE M. ALLAN VOGELSON, J.S.C.


TRANSCRIPT ORDERED BY:

    GREGORY B. REILLY, ESQUIRE  (Lowenstein Sandler)

APPEARANCES:

    EVAN JASON SMITH, ESQUIRE  (Brodsky & Smith, LLC)
    BRIAN D. LONG, ESQUIRE
    SETH D. RIGRODSKY, ESQUIRE
    (Rigrodsky & Long, PA)
    Attorneys for the Plaintiffs.

    LOUIS R. MOFFA, JR., ESQUIRE
    (Ballard, Spahr, Andrews & Ingersoll, LLP)
    GREGORY B. REILLY, ESQUIRE  (Lowenstein Sandler, PC)
    DAVID M. BERGER, ESQUIRE
    (Wilson, Sonsini, Goodrich & Rosati)
    JEFFREY A. CARR, ESQUIRE  (Pepper Hamilton, LLP)
    Attorneys for the Defendants.

                     Transcriber Rita F. Carelli
                     DIANA DOMAN TRANSCRIBING AND
                     RECORDING SERVICES
                     P.O. Box 129
                     Gibbsboro, NJ   08026
                     PHONE:  (856)435-7172
                     FAX:  (856)435-7124
                     Email:  dianadoman@comcast.net

                     Audio Recorded
                     Recording Operator, VMD

```
 1              MR. RIGRODSKY:  The independent directors --
 2     well, if you can call them that.  Then you have -- then
 3     you have Needham.  And it wasn't until after we filed
 4     the complaint that they finally amend their proxy
 5     materials to say, oh, by the way, Needham did some work
 6     for the company too.  They were retained by management
 7     of the company and were paid three to $400,000.
 8              THE COURT:  All right, gentlemen, thank you.
 9              The order is dated and signed today,
10     gentlemen.  I'll consider the papers that you have
11     filed, or find them and consider them.  And then we'll
12     see where we go from there.
13              MR. MOFFA:  Thank you, Your Honor.
14              MR. RIGRODSKY:  Your Honor, there's a couple
15     other matters.
16              THE COURT:  Yes.
17              MR. RIGRODSKY:  The --
18              THE COURT:  I'll note that the lead case is a
19     Law Division matter.  I'll retain jurisdiction until I
20     review the documents that Counsel's referred to with
21     respect to the injunction.
22              MR. MOFFA:  Thank you, Your Honor.
23              MR. RIGRODSKY:  We have a motion for the
24     issuance of a -- a commission to issue a subpoena
25     that's obviously unopposed due to the stipulation being
```

```
 1     signed.  Will we get an order --
 2              THE COURT:  You -- Mr. Moffa?
 3              MR. MOFFA:  We didn't oppose it by agreement.
 4     We agreed not to oppose it.
 5              THE COURT:  Present the order; I'll sign it.
 6              MR. RIGRODSKY:  I have a copy.  And would you
 7     like another copy of the preliminary restraint?  I have
 8     a copy for you so you don't have to find it.
 9              THE COURT:  You can -- Yes.  Lou, have you
10     filed any paperwork in opposition to the preliminary
11     restraint request?
12              MR. MOFFA:  No.  It's a typical order to show
13     cause that -- that would direct us to file a response
14     because it's not temporary restraints, Your Honor.
15     It's a preliminary injunction -- it's a preliminary
16     injunction request.  It's not a TRO.
17              THE COURT:  Got you.  Okay.
18              MR. RIGRODSKY:  Your Honor, not to press my
19     luck because I think I've done that already today, can
20     -- can Counsel -- because of the December 20th date is
21     coming, can Counsel expect a decision on those papers,
22     or at least a hearing --
23              THE COURT:  I'll -- I'll look at them today.
24              MR. RIGRODSKY:  -- the entry of a hearing
25     date?  That's what we're really looking for, is just
```

# Exhibit B

DEC 1 - 2006

ROBERT SAVARESE, On Behalf of Himself
and All Others Similarly Situated,

           Plaintiff,

v.

RICHARD C. CLOSE, C. HARRY
KNOWLES, STANTON L. MELTZER, JOHN
H. MATHIAS, HSU JAU NAN, WILLIAM
RULON-MILLER, and METROLOGIC
INSTRUMENTS, INC.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CAMDEN COUNTY

DOCKET NO. L-6430-06

---

DAVID WILKENFELD,

           Plaintiff,

v.

C. HARRY KNOWLES, RICHARD C. CLOSE,
JANET H. KNOWLES, JOHN H. MATHIAS,
STANTON L. MELTZER, HSU JAU NAN,
WILLIAM RULON-MILLER, and
METROLOGIC INSTRUMENTS, INC.,

           Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
CAMDEN COUNTY

DOCKET NO. C-166-06

---

THOMAS MARCIN,

           Plaintiff,

v.

METROLOGIC INSTRUMENTS, INC., C.
HARRY KNOWLES, RICHARD C. CLOSE,
WILLIAM L. RULON-MILLER, JOHN H.
MATHIAS, JANET H. KNOWLES, JOHN HSU
JAU NAN, STANTON L. MELTZER,
FRANCISCO PARTNERS and ELLIOTT
ASSOCIATES, L.P.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION:
GLOUCESTER COUNTY

DOCKET NO. C-62-06

| | |
|---|---|
| JOEL GERBER, | ) SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | ) LAW DIVISION: CAMDEN COUNTY |
| .v. | ) |
| | ) DOCKET NO: L-6503-06 |
| METROLOGIC INSTRUMENTS, INC., C. | ) |
| HARRY KNOWLES, JANET H. KNOWLES, | ) |
| ELLIOTT ASSOCIATES, LP, RICHARD C. | ) |
| CLOSE, WILLIAM L. RULON-MILLER, | ) |
| JOHN H. MATHIAS, HSU IAU NAN, AND | ) |
| STANTON L. MELTZER, | ) |
| | ) |
| Defendants. | ) |

## CONSENT CONSOLIDATION AND PRE-TRIAL ORDER

THIS MATTER having been opened to the Court by Rigrodsky & Long, P.A., as Chair

of the Committee of counsel for plaintiffs in the above actions; and counsel for defendants

having consented to entry of this Order and provisions outlined therein; and it appearing that the

above actions involve identical issues and questions of fact and law, and that consolidation of

these actions is necessary for the expeditious handling of this litigation, and for good cause

shown, pursuant to Rule 4:38-1, it is on this _11_ day of _Dec_____, 2006, hereby

AGREED, CONSENTED TO, AND ORDERED as follows:

### A.

### CONSOLIDATION

1.     The above-captioned actions and any other shareholder class or derivative action

involving Metrologic Instruments, Inc. filed in the Superior Court of New Jersey (Chancery or

Law Division) that involves questions of law or fact similar to those contained in the above-

captioned actions are consolidated for all purposes under the following caption (the

"Consolidated Action");

IN RE: METROLOGIC INSTRUMENTS )
INC., SHAREHOLDERS' LITIGATION )          No.

## B.

### PENDING, SUBSEQUENTLY FILED, AND TRANSFERRED RELATED ACTIONS

2.     Each and every putative action filed in, or transferred to, the Superior Court of New Jersey (Chancery or Law Division) that involves questions of law or fact similar to those contained in the Consolidated Action shall constitute a case related to the Consolidated Action ("Related Action" or the "Related Actions").

3,     Each Related Action shall be governed by the terms of this Pretrial Order No. 1 and shall be consolidated for all purposes with the Consolidated Action. Upon the filing of a Related Action, Defendants' counsel shall mail a copy of this Order to counsel for the Plaintiff in each Related Action.

4.     A party to any Related Action may, for good cause shown, move for relief from the terms of this Pretrial Order No. 1 only if such motion is filed with the Court and served upon Plaintiffs Lead Counsel (as defined herein) and counsel for the defendants within thirty (30) days of the mailing of this Pretrial Order No. 1 to counsel for such party.

## C.

### PREVIOUSLY FILED PAPERS

5.     All papers previously filed and served to date, if any, in the cases consolidated herein are deemed to be and are hereby adopted as part of the record in the Consolidated Action.

## D.

### FILING OF THE ORDER

6.    This Order shall be filed and docketed under the Consolidated Caption, No. L-6430-06 and the entry of the Order shall be docketed in each of the consolidated actions. All papers filed by Plaintiffs and Defendants under the above-consolidated caption shall be filed only under Docket No. L-6430-06.

## E.

### COORDINATION OF PLEADINGS AND OTHER PAPERS

7.    Service by Defendants on Plaintiffs of any papers relating to the Consolidated Action shall be deemed to be complete when copies are served on the Chair of the Executive Committee of Plaintiffs' counsel as defined below and Liaison Counsel by hand delivery, facsimile, or overnight mail. Except when otherwise agreed, Plaintiffs' Lead Counsel shall serve Defendants' counsel by hand delivery, facsimile, or overnight mail.

8.    Plaintiffs shall file and serve joint discovery requests, briefs, motions, and other papers unless the Court orders otherwise. Defendants, to the extent practicable, shall file and serve joint discovery requests, briefs, motions, and other papers unless the Court orders otherwise.

9.    a)    The Amended Complaint filed in the case captioned *Wilkenfeld v. Knowles*, Docket No. L 06445-06 (the "Complaint") shall be the operative for all purposes in the consolidated action. All defendants shall accept service of the Complaint. Nothing in this Order shall prejudice Plaintiffs from seeking expedited discovery and other relief. Defendants shall not be required to respond to any other complaints.

4

b)    The document requests served on the Metrologic defendants by plaintiff in the *Wilkenfeld* Action shall remain in effect.

c)    Plaintiff's Motion For Expedited Discovery And To Shorten Time filed in the *Wilkenfeld* Action (the "Motion") is withdrawn, without prejudice, in consideration of all defendants' agreements to: (1) produce documents responsive to plaintiff's document requests served in the *Wilkenfeld* Action commencing on November 24, 2006, and completing by December 4, 2006 or, in the case of Francisco Partners, FP-Metrologic, LLC, Meteor Holding Corporation and Meteor Merger Corporation, commencing on December 11, 2006, and completing at a reasonable time before any deposition of any of the foregoing subject to paragraph 9(c)(2) below; (2) produce witnesses for deposition identified in the Motion at mutually agreed to locations, dates and times after December 4, 2006, and completing at a reasonable time before plaintiffs are required to file any briefs or other papers in support of a motion for injunctive relief; and (3) not to oppose any motion for a commission to facilitate subpoenas of non-party witnesses. By such agreements defendants do not waive but expressly reserve any and all objections to such discovery permitted by Rule 4:10-2, including but not limited to any right to seek a protective order as provided for under the applicable rules.

F.

## ORGANIZATION OF PLAINTIFFS' COUNSEL

10.    Plaintiffs' counsel shall be organized into a Committee consisting of: Rigrodsky & Long, P.A., Kirby McInerney & Squire, LLP, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP and Wolf Popper, LLP. Prosecution of the Consolidated Action and each Related Action consolidated therewith on behalf of Plaintiffs shall be managed and directed by, Rigrodsky & Long, P.A., which firm shall be the Chair of the Committee. All specific

Case 1:06-cv-00747-JJF Document 6-3 Filed 12/11/2006 Page 7 of 8

assignments to perform tasks in the Consolidated Action shall be appointed by the Committee Chair in such a manner as to lead to the orderly and efficient prosecution of the Consolidated Action and each Related Action and to avoid duplicative or unproductive effort and unnecessary burdens on the parties.

11.     The Committee Chair shall have the following responsibilities and duties, to be carried out by counsel as designated by the Chairman:

        A.     to brief and argue motions and file appropriate papers in response to proceedings initiated by other parties;

        B.     to initiate and conduct discovery proceedings including, but not limited to, the preparation of discovery materials and discussions or negotiations with counsel for Defendants;

        C.     to direct and coordinate the examination of witnesses in depositions and oral interrogatories;

        D.     to speak for Plaintiffs at pretrial conferences;

        E.     to conduct settlement negotiations on behalf of Plaintiffs;

        F.     to delegate responsibilities for specific tasks to other Plaintiffs' counsel in manner to assure that pretrial preparation for Plaintiffs is conducted effectively, efficiently, and economically;

        G.     to coordinate the use and retention of experts and consult with experts;

        H.     to perform such other duties as may be expressly authorized or required by further Order of Court;

12.     The law firm of Brodsky & Smith, LLC will also serve as Liaison Counsel. Plaintiffs' Liaison Counsel shall be responsible for coordinating all appearances on behalf of Plaintiffs and for the dissemination of notices and orders of this Court. Plaintiffs' Liaison Counsel shall also be available and responsible for communications to and from this Court, including distributing orders and other directions from the Court to counsel. Plaintiffs' Liaison

Counsel shall be responsible for creating and maintaining a master service list of all parties and their respective counsel.

The parties agree and stipulate that nothing herein shall affect any of their substantive rights.

BY THE COURT:

J.S.C.

The undersigned consent to the form, content and entry of the within Consent Order.

BRODSKY & SMITH, LLC

Evan J. Smith, Esquire
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
(Telephone)     (856) 795-7250
(Facsimile)     (856) 795-1799
esmith@brodsky-smith.com

and

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
RIGRODSKY & LONG, P.A.
919 N. Market Street, Suite 980
Wilmington, DE 19801
(Telephone)     (302) 295-5310
(Facsimile)     (302) 654-7530
sdr@rigrodskylong.com

7

# Exhibit C

Evan J. Smith, Esquire
**BRODSKY & SMITH, LLC**
1040 Kings Highway North, Suite 601
Cherry Hill, NJ 08034
856-795-7250
856-795-1799 (facsimile)

*Attorneys for Plaintiff*

[Additional Counsel for Plaintiffs Appear on Signature Page]

| | |
|---|---|
| DAVID WILKENFELD, On Behalf of Himself and All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, and METROLOGIC INSTRUMENTS, INC.,<br><br>                          Defendants. | **SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY<br>LAW DIVISION**<br><br>Docket No. L 06445-06 |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, for his Amended Class Action Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    This is a class action complaint on behalf of plaintiff and the other holders of Metrologic Instruments, Inc. ("Metrologic" or the "Company"), common stock against certain officers and/or directors of Metrologic, as well as certain other persons and entities involved in a proposed transaction to cash out the Company's minority shareholders in a merger for inadequate consideration and through coercive means (the "Proposed Transaction"). The action seeks equitable relief relating to the Proposed Transaction, which is the contemplated acquisition

of Metrologic by entities owned and affiliated with Francisco Partners II, L.P. ("Francisco"), C. Harry Knowles ("Harry Knowles"), the Company's Founder and Chairman of its Board of Directors, Elliott Associates, L.P. and Elliott International, L.P (hereinafter collectively "Elliott"). Knowles and Elliott (the "Knowles Group") are together controlling shareholders of Metrologic. The Company has announced that its Board of Directors has unanimously approved a definitive agreement pursuant to which Francisco (as defined herein), working with the Knowles Group, will acquire all of the Company's outstanding common stock for $18.50 per share in the Proposed Transaction.  The Proposed Transaction is scheduled to close by the end of the year.

2.    Because of the Knowles Group's controlling equity position in the Company, the Proposed Transaction is subject to heightened scrutiny concerning the fairness of the price and the process by which the definitive agreement (the "Merger Agreement") was reached. As described below, the Company has agreed to the Proposed Transaction at an entirely unfair price achieved through an unfair process designed to benefit the Knowles Group to the detriment of plaintiff and the Class. Among other things, the so-called "Special Committee" formed to consider the Proposed Transaction retained *the Company's* regular counsel to advise it on the deal (the "Special Committee"). Notably it is impossible to assess the independence of the Special Committee's members because the Company has kept secret their identities. Regardless of their identity, no member of the Special Committee could impartially consider the Proposed Transaction because all of the Company's directors have a disabling financial conflict in that each stands to receive hundreds of thousands of dollars if the Proposed Transaction is consummated.

3.    In addition, the Proposed Transaction lacks many of the fundamental hallmarks of financial fairness. For example, the Proposed Transaction lacks a "majority-of-the-minority"

2

provision and instead can be approved by a mere majority vote present at the special meeting of shareholders then entitled to vote. To that end, the Knowles Group has entered into agreements to vote its shares in favor of the Proposed Transaction, thus insuring that at least 49% of Metrologic shares will be voted to approve the deal. Moreover, an undisclosed group of Metrologic directors and executive officers have also agreed to vote their shares in favor of the Proposed Transaction. These directors own approximately 1.1% of Metrologic's outstanding shares. As such, there can be no doubt that the "the fix is in" because 50.1% -- the requisite majority -- are contractually committed to approve the merger. Without this Court's timely intervention, plaintiff and the Class will have no ability to use their votes to reject the deal. Defendants' decision to structure the Proposed the Transaction in this manner is entirely unfair and violates their fiduciary duties of loyalty and good faith.

4.       On October 5, 2006, the Company filed a Schedule 14A Proxy Statement with the Securities Exchange Commission to solicit the shareholder vote on the Proposed Transaction (the "Proxy"). As alleged in detail herein, the Proxy is materially misleading and omits material facts. Among many other things, the Proxy fails to disclose that, even though the Knowles Group will receive the same $18.50 per share consideration as the public shareholders, Knowles and Elliott will receive consideration worth *an additional $3.66* for each of the Metrologic shares they plan to exchange for equity in the entity surviving the Proposed Transaction (the "Rollover Shares").

5.       In other words, the Knowles Group will receive $22.16 (including the $3.66 per share in hidden consideration) for their Rollover Shares -- or a 19.8% per share premium to what plaintiff and the Class will be entitled to receive. The Knowles Group and the other defendants acting at their behest have violated their fiduciary duties of loyalty, good faith, due care and full

3

and fair disclosure in negotiating and approving the Proposed Transaction and soliciting a shareholder vote on the basis of a materially inaccurate and misleading Proxy.

## THE PARTIES

6.    Plaintiff holds shares of common stock in the Company and has held shares since prior to the wrongs complained of herein.

7.    Defendant Metrologic is a corporation duly organized and existing under the laws of the State of New Jersey.  The Company maintains its principal office in New Jersey at 90 Coles Road, Blackwood, New Jersey, 08012.  Metrologic designs, manufactures and markets barcode scanning and high speed automated data capture solutions using laser, holographic and vision-based technologies.  The Company offers an expertise in 1D and 2D barcode reading, portable data collection, optical character recognition, image lift, and parcel dimensioning and singulation detection for customers in retail, commercial, manufacturing, transportation and logistics, and postal and parcel delivery industries.  Additionally, through its wholly owned subsidiary, Adaptive Optics Associates, Inc., Metrologic develops, manufactures, markets and distributes custom optical systems for the aerospace and defense industries.   Metrologic shares trade on the NASDAQ under the symbol "MTLG."  As of July 31, 2006, the Company had 22,687,000 shares of Common Stock outstanding.

8.    Defendant Francisco Partners, II, L.P. is a Delaware limited liability company.

9.    Defendant FP-Metrologic, LLC is a Delaware limited liability company, affiliated with Francisco Partners, II, L.P. (Francisco Partners, II, L.P. and FP-Metrologic are hereinafter collectively referred to as "Francisco").

4

10/31/2006  16:23    6106679029    BRODSKY & SMITH, LLC    PAGE  06/39

10.     Defendant Meteor Holding Corporation, is a Delaware corporation formed for purposes of effectuating the Proposed Transaction. FP-Metrologic, LLC is currently the sole shareholder of Meteor Holding Corporation.

11.     Defendant Meteor Merger Corporation is a New Jersey corporation formed by Meteor Holding Corporation for the purpose of effectuating the Proposed Transaction.

12.     Defendant Elliott Associates, L.P. is a Delaware limited partnership. Elliott Associates, L.P. currently owns approximately 1,022,332 shares of Metrologic.

13.     Defendant Elliott International, L.P. is a Caymans Islands limited partnership. Elliott International, L.P. currently owns approximately 681,553 shares of Metrologic.

14.     Defendant Harry Knowles is, and at all relevant times has been, a director of the Company. According to the Company's most recent annual proxy statement on Form DEF 14A filed with the Securities and Exchange Commission on May 1, 2006 (the "2006 Proxy"), Knowles founded Metrologic and served as the Company's Chief Executive Officer from 1985 through June 2004. In addition, Harry Knowles served as Chief Technical Officer with responsibility for all of the Company's research from 1982 through 1985. Harry Knowles also has served as President of Metrologic from its inception through 1982 and again from 1985 through February 2000. Harry Knowles currently serves as Chairman of Metrologic's Board of Directors and its Interim Chief Executive Officer. Harry Knowles is married to Janet H. Knowles, the Vice President, Administration, Treasurer, Secretary and a director of the Company. Harry Knowles also holds or controls 9,675,412 million shares of Company common stock according to the 2006 Proxy - an amount equal to approximately 42.3 % of the Company's outstanding equity.

15.    Defendant Janet H. Knowles ("J. Knowles") is, and at all relevant times has been, a director of the Company, a position J. Knowles has held since 1986. As well as being a director, J. Knowles currently serves as Vice President, Administration, Treasurer, and Secretary of the Company. According to the 2006 Proxy, J. Knowles first served as a director of the Company from 1972 through 1984. J. Knowles served as Vice President, Administration, from 1976 through 1983 and again from 1984 through the present. J. Knowles has served as Treasurer since 1994 and as Secretary since March 2006. J. Knowles is married to Knowles. According to the 2006 Proxy, because J. Knowles is married to Harry Knowles, she possesses shared voting and investment power with respect to the 9,675,412 million shares of Company common stock owned or controlled by Knowles – an amount equal to approximately 42.3% of the Company's outstanding equity.

16.    Defendants Richard C. Close ("Close"), John H. Mathias ("Mathias"), Stanton L. Meltzer ("Meltzer"), Hsu Jau Nan ("Nan"), and William Rulon-Miller ("Rulon-Miller") (collectively with Harry Knowles and J. Knowles, the "Individual Defendants") are, and at all relevant times have been, directors of the Company.

17.    By virtue of their positions as directors and/or officers of the Company, the Individual Defendants owed and owe plaintiff and the Company's other public shareholders fiduciary obligations of due care, loyalty, good faith, and full and fair disclosure and were and are required to: (a) act in furtherance of the best interests of plaintiff and the class as shareholders of Metrologic; (b) maximize value on a sale of the Company; and (c) refrain from abusing their positions of control.

6

10/31/2006  16:23    6106679029    BRODSKY & SMITH, LLC    PAGE  08/39

## CLASS ACTION ALLEGATIONS

18.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 4:32-1 of the New Jersey Court Rules, on behalf of himself and all holders of Metrologic common stock (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants.

19.    This action is properly maintainable as a class action.

20.    The Class is so numerous that joinder of all members is impracticable.  As of July 31, 2006, there were over 22.6 million shares of Metrologic common stock outstanding, owned by hundreds if not thousands of beneficial holders scattered throughout the United States.

21.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class members.  The common questions include, inter alia, the following:

      a.    whether the defendants, by agreeing to the Proposed Transaction, have breached fiduciary duties owed by them to plaintiff and the other members of the Class;

      b.    whether the Proposed Transaction is grossly unfair to the Class;

      c.    Whether certain defendants are favoring their own interests over those of plaintiff and the Class; and

      d.    whether plaintiff and the other members of the Class would be irreparably damaged were the transactions complained of herein consummated.

22.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the

7

Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

24.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

25.    On September 12, 2006, Metrologic announced a definitive agreement to be acquired for cash by Francisco with the participation of the Knowles Group. Pursuant to the proposed Merger Agreement, Meteor Merger Corporation will merge with and into Metrologic. Upon the completion of the Proposed Transaction, Metrologic will be the surviving corporation and a wholly owned subsidiary of Meteor Holding Corporation. Meteor Holding Corporation is currently indirectly owned by Francisco. If the Proposed Transaction is permitted to go forward as described below, the Knowles Group will also own approximately 30.2% of Meteor Holding Corporation, and thus participate in Metrologic's future business and success.

## I.    *THE KNOWLES GROUP WILL RECEIVE A SECRET IMBEDDED DEAL PREMIUM*

26.    Undisclosed in the Proxy, the Proposed Transaction financially favors the Knowles Group to the detriment of plaintiff and the Class. Under the terms of the Merger

8

Agreement, Metrologic's public shareholders will receive $18.50 cash for each share of their Metrologic common stock. Unlike plaintiff and the Class, however, the Knowles Group are also buyers in the deal, and thus stand on both sides of the Proposed Transaction.

27.     The Knowles Group has agreed to sell a portion of their Metrologic common shares to Meteor Holding Corporation immediately prior to the completion of the Proposed Transaction in exchange for shares of junior preferred stock and common stock of Meteor Holding Corporation. As a result of these contributions, immediately following the closing of the Proposed Transaction, Harry Knowles will own 15% of the junior preferred stock and 15% of the common stock of Meteor Holding Corporation, and Elliott will own approximately 15.2% of the junior preferred stock and approximately 15.2% of the common stock of Meteor Holding Corporation.

28.     The Proxy discloses that Harry Knowles and Elliott, respectively, own approximately 41.5% and 7.5% of Metrologic's outstanding shares of common stock. Of that amount, Harry Knowles will sell approximately 7,551,800 shares for $18.50 in the Proposed Transaction. Unlike plaintiff and the Class, however, Harry Knowles will also buy approximately 15% of Meteor Holding Corporation in return for his ownership of approximately 1,680,578 Metrologic Rollover Shares.

29.     Similarly, Elliott will buy approximately 15.2% of Meteor Holding Corporation in return for its ownership of approximately 1,703,885 Rollover Shares. In addition, pursuant to the terms of a letter agreement dated September 12, 2006, Elliott (or its affiliates) will also receive a portion of a $12 million payment Francisco will receive from Meteor Holding Corporation if the Proposed Transaction is consummated. Elliott will also receive quarterly payments from Francisco in connection with services it renders to Metrologic. In addition, as described below,

Francisco will also *share in any termination payment* the Company is obligated to pay Meteor Holding Corporation in the event the Company accepts a superior acquisition offer from another potential acquirer.

30.    Undisclosed in the Proxy is the fact that the Knowles Group will receive Meteor Holding Corporation shares worth $22.16 per share in exchange for their Rollover Shares. This additional $3.66 per share represents a 19.8% premium over the $18.50 being offered to the Company's public shareholders. This imbedded premium is calculated by subtracting expected post-transaction debt from the aggregate value of Metrologic pursuant to the terms of the Proposed Transaction. Accordingly, at the expense of plaintiff and the Class, and in violation of their fiduciary duties of loyalty and good faith, the Knowles Group secretly diverted approximately $12.4 million of value to itself.

31.    Harry Knowles is also receiving substantial other benefits in the Proposed Transaction not to be shared by plaintiff or the Class. Harry Knowles will become the CEO of the new Metrologic and will be paid an undisclosed salary. Knowles will also receive undisclosed new stock options and other financial benefits after the Proposed Transaction closes. Knowles (and Elliott) will receive the right to participate in future sales of Meteor Holding Corporation and future issuances of shares.

## II.    *THE PROPOSED TRANSACTION IS UNFAIR*

32.    Because Knowles and Elliott stand on both sides of the Proposed Transaction, the deal is subject to the requirements of entire fairness. The Proposed Transaction, however, fails to meet those rigorous standards because it is coercive, provides significant additional benefits to the Knowles Group, and provides inadequate consideration to the Company's public shareholders – that is, the Proposed Transaction is fair neither in price nor process. As discussed

herein, the Knowles Group stands to gain at least $12 million more than plaintiff and the Class, plus a significant opportunity to participate in the surviving entity going forward. The terms of the Proposed Transaction also reflect a preference for Knowles and Elliott and their participation in that the deal actually tilts the playing field in favor of Francisco.

### A.    *Defendants Have Assured Approval of the Proposed Transaction by Locking up a Majority in its Favor*

33.    The Proposed Transaction lacks several critical indicia of fairness, considering that the entity taking the Company private includes the Company's controlling shareholders. The Proposed Transaction is patently unfair because it lacks an opportunity for the Company's public shareholders to have a meaningful voice in approving the deal. To be sure, the Proposed Transaction is a *fait accompli*, considering that the Knowles Group and Metrologic's directors and senior officers exercise dominion over at least a majority of the Company, and that they stand on both sides of the deal. Nonetheless, the Merger Agreement fails to include a provision requiring separate approval by a majority of the Company's public shareholders – a so-called "majority-of-the-minority" approval provision.

34.    The Proposed Transaction is subject to a shareholder vote at a special shareholder meeting. According to the Proxy, an affirmative vote of a mere majority of the shares present and entitled to vote at that special shareholder meeting is necessary to secure approval of the Proposed Transaction. The Knowles Group already controls 49% of the vote. In addition, to further secure approval of the Proposed Transaction, it also has entered into agreements with Meteor Holding Corporation to vote their shares in favor of the Proposed Transaction. Moreover, according to the Proxy, an undisclosed group of Metrologic's board members and executive officers also have agreed to vote their shares in favor of the Proposed Transaction.

11

Such individuals hold approximately 1.1% of Metrologic's shares. According to the Proxy, many of Metrologic's senior officers will continue with the Company after consummation of the Proposed Transaction and can expect to receive additional benefits including new stock option agreements. Metrologic's Board, as described below, are also financially interested in the deal. Accordingly, by failing to include a "majority-of-the-minority" provision, defendants have assured themselves that this unfair transaction will be approved by those who unfairly stand to be enriched regardless of whether *every single* unaffiliated shareholder votes against the Proposed Transaction.

**B.    *The Proposed Transaction Is Locked-Up***

35.    The Proposed Transaction is unfair because the Individual Defendants took steps to ensure that no other bidder could possibly attempt to offer a superior priced transaction. The Individual Defendants impermissibly tilted the playing field in favor of the Knowles Group by implementing Draconian deal protection devices to ensure that no competing bids would arise. The Individual Defendants had a fiduciary obligation to: (a) undertake an appropriate evaluation of Metrologic's net worth as a merger/acquisition candidate; (b) act independently to protect the interests of the Company's public shareholders; (c) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Metrologic's public shareholders; and (d) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Metrologic.

36.    The Individual Defendants have breached their fiduciary duties because of the acts and transactions complained of herein, including their decision to enter into the Proposed

12

Transaction without making the requisite effort to obtain the best transaction reasonably available.

37.    Before approving the Proposed Transaction, the Individual Defendants failed to contact other potential acquirers, despite having previously identified some. During the late summer of 2005, the entire Metrologic Board (including Knowles) hired UBS Securities LLC ("UBS") to, among other things, canvass the market to assess whether other entities were interested in purchasing Metrologic. According to the Proxy, UBS contacted 94 potential buyers and only three parties, including defendant Francisco, emerged as potential bidders. Ultimately, by mid-January 2006, the Company decided not enter into a transaction with any of the three potential bidders.

38.    Then, in June 2006, at the behest of a representative of Elliott, defendant Harry Knowles began negotiations with Francisco. During the next month, the Individual Defendants allowed Harry Knowles to negotiate exclusively with Elliott and Francisco. The Individual Defendants further acquiesced to the wishes of the Knowles Group, the Company's controlling shareholders, by failing to contact any of the parties UBS previously identified or either of the other two previous potential bidders.

39.    In the Proxy, the Special Committee's unidentified members recite that they used the prior "market check" as a basis for their purported conclusion that the Proposed Transaction was fair to plaintiff and the Class. Even if true, this flimsy excuse wholly fails to remedy the Individual Defendants' breaches of fiduciary duties to maximize shareholder value and not to unfairly favor a bidder aligned with Metrologic's majority shareholder and management.

40.    The Proxy offers no reason why the Special Committee or any of the Individual Defendants did not conduct another market check before approving the Proposed Transaction.

13

The Proxy does not disclose why the Individual Defendants allowed Harry Knowles to enter into negotiations with Elliott and Francisco to the exclusion of any other potential buyers. The market check itself was fundamentally flawed because it was conducted by UBS. UBS could not have been expected to act in the best interests of the public Metrologic shareholders because it had been hired by the Company, which itself was dominated and controlled by the Knowles Group. The Proxy also does not disclose whether UBS, in contacting other potential bidders, was offering the same or similar terms as those in the Proposed Transaction.

41.    In addition to the lack of a market check, the Individual Defendants approved certain terms of the Proposed Transaction that completely freezes out other bidders. For instance, while the Merger Agreement contains a so-called "fiduciary out" allowing the Board to enter into a superior priced deal under certain circumstances, the economics and structure of the Proposed Transaction ensure that the "fiduciary out" is mere window-dressing.

42.    As described in the Proxy, Metrologic agreed that if it receives a superior proposal or an inquiry for non-public information in connection with such a proposal, it must provide Meteor Holding Company oral and written notice within 24 hours. Metrologic is obligated to disclose to Meteor Holding Company the material terms and conditions of any request or proposal, the identity of that party, and to keep Meteor informed on a current basis of the status of the request or proposal including providing Meteor with an actual copy of the request or proposal. This provision of the Merger Agreement will ensure that no alternative bidder will come forward as the material terms of its offer or inquiry will immediately be disclosed to its competition.

43.    According to the Merger Agreement, if among other things, Metrologic exercises the fiduciary out, the Company has to pay Francisco a "termination fee" $18.25 million. This

14

amount, in excess of 4% of the deal price, is designed to discourage other bidders who will have to pay this huge sum in addition to offering a price in excess of $18.50.

44.     In violation of their fiduciary duties of loyalty and good faith, the Knowles Group has entered into agreements with Meteor Holding Corporation which practically render the "fiduciary out" provisions of the Merger Agreement meaningless.  Knowles has agreed that even if the Company agrees to a superior offer, he will not vote a bloc of his stock representing 35% of Metrologic's outstanding shares in favor of any such transaction for a period of ten months following termination of the Proposed Transaction.  Moreover, Knowles has agreed not to vote his shares in favor of any amendment to the corporate charter or any other proposal or transaction that "would in any manner delay, impede, frustrate, prevent or nullify" the Proposed Transaction.  Meteor Holding Corporation has agreed to pay Knowles all of his out-of-pocket expenses in connection with entering into this agreement.

45.     Elliott entered into a similar agreement without any restriction as to the amount it can vote shares against the Proposed Transaction or any charter amendment.  Meteor Holding Corporation has also agreed to pay Elliott's out-of-pocket expenses in connection with entering into that agreement.  Incredibly, and in violation of its fiduciary duties of loyalty, Elliott Associates, L.P., entered into a "letter agreement" with Meteor Holding Corporation dated September 12, 2006, in which, among other things, *Meteor Holding Corporation has agreed to share an undisclosed portion of the termination payment with Elliott* in the event that the Company accepts a superior offer.  This payment is conditioned on Elliott voting against any other deal for at least three months following termination of the Merger Agreement.

46.     By allowing Knowles and Elliott to enter into agreements that bar approval of a superior transaction even in the exercise of the Board's so-called "fiduciary out," all of the

15

Individual Defendants have stripped the Board of its non-delegable authority to manage the business and affairs of Metrologic. Such conduct, constituting violations of the Individual Defendants' duties of loyalty and good faith, is *ultra vires* and impermissible.

### C.    The "Special Committee" Acted Unfairly

47.    The conduct of the Special Committee provides glaring examples of the unfair process undertaken to approve the Proposed Transaction. According to the Proxy, the Individual Defendants purportedly created a Special Committee of directors, which unanimously approved the Proposed Transaction. The Special Committee subsequently recommended approval of the Proposed Transaction.

48,    Regardless of the exact identity of the Committee members, their lack of independence and care is evident thus invalidating their decision making process. The Special Committee's members each had a strong financial incentive to approve the Proposed Transaction because each member received a cash payment of $35,000, and its undisclosed Chairman received $40,000, in addition to $1,500 for regular meeting fees and out-of-pocket expenses. According to the Proxy, the Special Committee met at least 32 times since August 15, 2005, garnering each member approximately $48,000. The Board approved these cash awards only *after* the Special Committee had recommended Board approval of the Proposed Transaction. The highly suspicious timing of the cash award to the Special Committee raises a reasonable inference that the Board, dominated by the Knowles Group, paid the Committee members an incentive fee to approve the Proposed Transaction.

49.    In addition, if the Proposed Transaction is consummated, all members of the Special Committee are financially interested because all of the Company' directors (except Harry and J. Knowles) will received hundreds of thousands of dollars in cash as a result of the buyout

16

of options granted to them under the Company's 1994 and 2004 Equity Incentive Plans (the "Plans"). According to the Proxy, all options the Company granted to the Individual Defendants under the Plans with exercise prices below $18.50 will be cashed out in amounts calculated by the number of shares they would have been entitled to receive if they had exercised their options multiplied by the difference between the option exercise price and $18.50. In addition, holders of options with an exercise price above $18.50 will receive $1 per share. The buyout formulas were determined by the Administrator of the Plans, which in 2006, was the Board's Incentive Compensation Committee, consisting of Knowles, J. Knowles, Close, Rulon-Miller and Meltzer. According to the Proxy, defendant Close will receive $417,886, defendant Nan will receive $906,822, defendant Mathias will receive $340,402, defendant Meltzer will receive $102,122, and defendant Rulon-Miller will receive $146,392. Accordingly, the Board set its own compensation and incentive fee in the Proposed Transaction with the affirmative participation of Harry and J. Knowles.

50.    The Special Committee also used an unfair process in approving the Proposed Transaction by failing to employ outside advisors that were sufficiently independent of the Company, which is controlled and dominated by the Knowles Group. The Special Committee failed to hire independent counsel but instead utilized the services of the Company's regular outside counsel, Ballard Spahr. In 2004, as discussed, the Special Committee used the services of UBS, which *the Company* retained. Needham & Company, LLC ("Needham"), which the Special Committee hired to render a fairness opinion, had previously participated with UBS in the failed sale process that ended in January, 2006. Furthermore, before hiring both Ballard Spahr and Needham, the Special Committee did not contact or interview any other firms.

17

51.    Further, the Special Committee acted unfairly because it made no effort to value the Meteor Holding Company shares Knowles and Elliott are to receive in the deal. The Proxy is entirely silent with regard to whether the Special Committee knew about the 19.8% premium both Knowles and Elliott will receive for their Rollover Shares. There is no indication from the public filings that the Special Committee ever asked Needham or any other entity to value the Rollover Shares.

### D.    The Deal Price Is Financially Unfair

52.    The failure of the Individual Defendants to secure an adequate merger price and their betrayal of the interests of the Company's public shareholders also is apparent from the $18.50 per share consideration agreed to by the Individual Defendants. This proposed consideration is inadequate and unfair to plaintiff and the Class because, in reality, it offers a very meager premium, if any, and thereby deprives plaintiff and the Class of the true and full value of their shares. In fact, the price unanimously agreed to by the Individual Defendants represents a premium of just 4.7 % over the Company's stock price on the last full day of trading before the Proposed Transaction was announced. Moreover, the consideration represents a mere 1.5% premium over the average trading price of the Company's stock over the last year.

53.    The consideration to be paid to plaintiff and the Class in the Proposed Transaction also is unfair and grossly inadequate because, among other things: (a) the intrinsic value of Metrologic is materially in excess of the amount offered in the Proposed Transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability and established markets; and (b) the consideration is not the result of an appropriate evaluation of the value of Metrologic because the Individual Defendants approved the Proposed

18

Transaction without undertaking steps to accurately ascertain Metrologic's transactional value through open bidding or at least a market check mechanism.

54.    The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of Company's valuable and profitable business, and future growth in profits and earnings, at a time when the Company is poised to increase its profitability.

55.    The Proposed Transaction also is suspect because of its timing. A review of the Company's stock price trading history reveals that it had been trading as high as $23.10 per share – significantly above the consideration in the Proposed Transaction – on April 13, 2006, just more than five months before the announcement of the Proposed Transaction.



Moreover, within the last twelve months, the Company's stock has actually traded as high as $24.49 per share. Based on that figure, the Proposed Transaction actually represents a 25% discount to be received by plaintiff and the Class.

56.    A comparison of Metrologic to other similar public companies shows that price multiples of EBITDA and EBIT are lower for the Company that for its peer group. According to

19

Needham's September 11, 2006 presentation to the Board, the $18.50 price represents an 11.4 multiple to the last twelve month EBITDA compared to a 13.3 multiple for peer groups. The same presentation shows that the $18.50 price represents a 14.4 multiple compared to a 16.1 multiple for the peer group.

57.    An independent analysis using market information as of October 26, 2006, shows an even more dramatic shortfall. Since August, Metrologic's peer group has performed well in the market. The market price of Metrologic, however, has lagged because it is capped at $18.50 due to the fact that the offering price and approval of the Proposed Transaction is a *fait accompli*. This updated analysis shows that Metrologic's EBITDA multiple is 10.85 compared to 17.06 for the peer group. Metrologic's EBIT multiple is 13.23 compared to 19.67 for the Company's peer group.

58.    The discounted cash flow valuation Needham presented to the Board on September 11, 2006, similarly demonstrates the inadequacy of the $18.50 offering price. According to Needham, using management projections Metrologic provided to Needham on July 31, 2006, a cash flow analysis in which the terminal value is calculated estimating 2010 EBITDA of $124,390,000 shows a per share range of *$27.74 - $44.56*. Needham also presented to the Board a "sensitivity case" cash flow analysis that was not based on any management projections but instead assumed a 10% growth rate. That analysis, based on dramatically lower financial projections resulting in 2010 estimated EBITDA of only $46,200,000 yielded a per share range of $12.09-$18.18.

59.    The Proxy makes clear, however, that Metrologic's management prepared two additional projections on August 16 and August 23, 2006  Those projections, buried away from the Needham analysis in the Proxy, show 2010 terminal EBITDA projections of $122,955,000

20

and $86,179,000 respectively.  The Proxy discloses that only "some" of the management projections were provided to Needham, but that the projections were made available to Francisco during its due diligence of the Company.  The Proxy gives no explanation why management's projections decreased so dramatically during the three weeks it modified the projections from a high 2010 EBITDA estimate of $124,390,000 (July 31, 2006) to a low of $86,179,000 (August 23, 2006).

60.    Moreover, the Proxy fails to disclose why Needham did not use the lower projections in its cash flow analysis included in the Board presentations, but instead decided to create a guesswork "sensitivity case."  Based on plaintiff's independent cash flow calculations, a fair price range using management's worst case August 23, 2006, estimate of 2010 EBITDA, still yields a fair price range of $19.97-$31.55.  Accordingly, it can be more than reasonably assumed that the Individual Defendants did not provide Needham with the more pessimistic updated management projections, as they would show that the $18.50 deal price was inadequate. These Individual Defendants did provide these more "real world" projections to Francisco and thereby gave it reasonable assurance that, even in a worst-case scenario, the buyers were still getting a bargain price for Metrologic.  The Individual Defendant's failure to disclose the truth about the management projections, and their failure to disclose the true facts about the projection distribution and use, constitute violations of the Individual Defendants' fiduciary duties of care and full and fair disclosure.

61.    Recent analyst remarks also indicate that the Company is worth significantly more than the consideration being offered in the Proposed Transaction.  As recently as July 26, 2006, Raymond James set a $23 price target for the Company.  On September 12, 2006, Raymond James issued a report on the Buyout Transaction calling the buyout premium "light."

Specifically the report states: "Valuation on the transaction appears softer than expected, reflecting a P/E multiple of 17.5x our 2007 EPS estimate of $1.06 including options expense (group trading at 20.2x). On an MEV/EBITDAS basis (note – "S" indicates non-cash stock options expense), the transaction comes in at 7.2x our 2007 estimates (2007 estimated EBITDAS $12.2 million). On a more traditional MEV/EBITDA analysis (includes gross impact of options expense), the transaction values Metrologic at 7.9x our 2007 estimates vs. the current group mean valuation of 9.4x." Raymond James called the transaction premium "light" given Metrologic's projected growth trajectory (top-line growth of 19% and 14% in 2006 and 2007, respectively, with EPS growth of 8% and 20% over the same periods).

      62.    Weeden & Co. set the same price on that date. In addition, analyst reaction to the Proposed Transaction has been negative. Ivan Feinseth, director of research at Matrix U.S.A. LLC ("Matrix"), a New York research house and investment bank, was quoted as stating "We think it is kind of cheap." He went on to note that the Company's business has been improving. Not unlike Raymond James and Weeden & Co., Matrix values the Company's stock in the "mid-twenties," also having set a target of $23.

      63.    For instance, in February of 2006, Metrologic announced that it was expanding its wireless barcode scanner offering:

> Metrologic Instruments, Inc. today introduces the MS1633 FocusBT hand-held area imager, a wireless 2 dimensional (2D) bar code scanning solution, at the HIMSS healthcare tradeshow taking place in San Diego, CA. Worldwide availability of FocusBT is expected in the second half of 2006.
>
> Combining the performance of Metrologic's successful MS1690 Focus™ hand-held area imager, which incorporates Omniplanar, Inc.'s SwiftDecoder™ software, with the flexibility of Bluetooth® wireless technology, FocusBT delivers aggressive decoding of 1D and 2D bar code symbologies omnidirectionally with wireless mobility. The lightweight FocusBT, with its ergonomic form-factor that fits comfortably in a user's hand, includes a

rechargeable battery that delivers thousands of scans per charge, allowing for hours of uninterrupted operation.

"The use of 2D bar codes is increasing in many markets, including retail, supply chain, and healthcare. With the introduction of MS1690 Focus in 2005, Metrologic raised the bar on 2D bar code scanning performance. Customer feedback, coupled with Metrologic's commitment to develop products that meet the market's current needs and future expectations, indicated that the mobility . offered by Bluetooth® technology was an important factor in addressing new opportunities in both existing markets and a number of new, developing markets", stated Nicholas Ciarlante, Hand-Held Product Marketing Manager for Metrologic.

Greg DiNoia, Vice President, Metrologic - The Americas, commented, "We are committed to innovation and leadership in image-based scanners to satisfy the growing number of 2D scanning applications and a market trend toward aggressive image-based scanners. We are pleased to introduce FocusBT at HIMSS and recognize the contribution we can make toward reducing medical errors and improving patient safety. FocusBT is a prime example of how we will continue to address our customers' needs for feature-rich, cost-effective, . visionary scanning solutions."

64.    Furthermore, in May of 2006, the Company announced its

acquisition of all of the assets of Visible-RF, LLC, a privately held start-up

company located in Needham, MA:

Metrologic Instruments, Inc., today announced the acquisition of all of the assets of Visible-RF, LLC, a privately held start-up company located in Needham, MA, whose advanced technology combines Radio Frequency communications with bi-stable display materials.

"As part of our growth strategy, this transaction expands our market presence in RFID with unique differentiation", said C. Harry Knowles, Metrologic's Chairman. "This acquisition, coupled with our solid organic growth, will assist us in continuing to build our position as a leader in the Automatic Identification Data Capture Industry."

Mark Schmidt, Metrologic's Executive Vice President -Strategic Initiatives, commented, "The acquisition of Visible-RF, LLC, represents a significant addition to our technology portfolio. This technology combines the benefits of a paper label with the advantages of RFID to display visible information that is updated via a wireless signal. Thus, the technology provides users all the benefits of barcoding and RFID. There are applications for this acquired technology in

23

several markets where Metrologic already has a presence, including Retail, Healthcare, Manufacturing, Logistics, and Public Transportation, just to name a few."

"Metrologic intends to utilize its extensive established world-wide sales and distribution network to expand this new technology through its existing customer base. We also believe future generations of this technology potentially are applicable outside our traditional, addressable markets," continued Mr. Schmidt.

65.    Also in May of 2006, Metrologic announced the introduction of its

new Radio Frequency ID Readers:

Metrologic Instruments, Inc. (NASDAQNMS:MTLG) announced today it will introduce its initial line of Radio Frequency ID (RFID) Readers engineered to execute supply-chain applications at the Fourth Annual RFID Journal LIVE conference and exhibition (Booth 200) hosted by the MGM Grand in Las Vegas (NV), May 1-3.

The SP5800 Series MAXIMUS is a rugged CE.NET mobile computer incorporating multifrequency RFID, a high-resolution imager and an integrated fingerprint reader for stateof- the-art flexibility and security for multiple supply-chain solutions. The MR600 Series IMPULSE is an affordable, multi-protocol, Gen 2 EPCglobal-certified, fixed-RFID solution for applications requiring only one set of antennas.

Both systems will be distributed commercially throughout North America during the second half of 2006.

"MAXIMUS is the first RFID-mobile computer to contain such advanced, flexible features at a competitive price," said Andrew D'Amelio, senior director of industrial products and systems for Metrologic. "The power of the unit combined with its security features opens up a whole new set of supply-chain applications.

"Our second product line, the IMPULSE, has advanced digital filtering technology and separate, configurable antennas to make it the ideal reader for fixed RFID applications such as truck-mounted reading, certain conveyor applications and targeted work station interrogation zones. The streamlined and cost-effective IMPULSE provides a great alternative to mobile units for compliance with RFID mandates and regulations without adding additional complexity."

The MAXIMUS RFID reader supports all common UHF (915 MHz) RFID applications and has the flexibility to handle emerging HF (13.56 MHz) RFID

applications, including item-level tagging or smart-card reading. Its two-megapixel digital imager employs Omniplanar's SwiftDecoder to decipher all 1D, 2D and Postal bar codes. The imager also captures, stores and transmits high-resolution images for data collection, identification and verification. The integrated fingerprint reader's login security increases both supply-chain protection and productivity. The mobile computer's wireless connectivity (Bluetooth & 802.11b) allows unfettered short and long range communication with nearby peripherals and the host system. IMPULSE's multi-protocol RFID reader supports EPC and ISO compliant UHF RFID tags. Metrologic also makes IMPULSE available in an evaluation kit complete with all the essential materials needed to set up and test a full RFID system.

66.    Further, in July of 2006, Metrologics' scanners were ranked number one in a

Vertical Systems Reseller ("VSR") Survey:

> In a recent survey of nearly 300 value-added resellers published in the July issue of VSR, Metrologic Instruments, Inc. received the top cumulative score for point-of-sale bar code scanning products. Metrologic finished first overall in the survey's scanner category – ahead of Symbol, Hand Held Products and PSC. Metrologic scored 22.5 out of a possible 25 points.
>
> * * * * * *
>
> VSR stated, "Metrologic was the clear scanner category winner." It also added, "Those [companies] that ranked demonstrate a superior ability to deliver on the litmus test of customer satisfaction and are members of a very elite group of technology pioneers." Metrologic tied Touch Dynamic (category: integrated POS units) for the highest overall score by any vendor in any product category. The company also finished as the top-ranked vendor overall for pricing. The average vendor cumulative score was 19 points.

67.    Metrologic's financial performance has been strong.  For example, the

Company's most recent Form 10-Q for the quarter ended June 30, 2006, Metrologic reported that

"[s]ales increased 28.7% to $62.6 million in the three months ended June 30, 2006 from $48.6

million in the three months ended June 30, 2005."

68.    Metrologic's investment policies and acquisition growth strategy suggest that

revenues will continue to increase in the future. Indeed, in May 2006, the Company publicly

25

proclaimed that it had "solid organic growth." Also, the Company has recently launched a series of new products expected to increase Metrologic's profitability in the future.

## III.    THE PROXY CONTAINS MATERIAL OMISSIONS AND IS MISLEADING

69.     On October 5, 2006, the Company filed the Proxy in connection with seeking shareholder approval of the Proposed Transaction. As alleged herein, the Proxy fails to disclose highly significant and material information necessary for Metrologic's public shareholders to make an informed decision regarding the Proposed Transaction. This decision is the most important in the life of this Company because under New Jersey law, which applies here, the shareholders will not have a right to seek a post-transaction appraisal to obtain fair value for their shares. The Individual Defendants' failure to accurately make material and non-misleading disclosures in the Proxy further renders the Proposed Transaction unfair and coercive.

70.     The Proxy is materially deficient in the following respects:

a.    The Proxy fails to disclose that, unlike the plaintiff and the Class, the Knowles Group is receiving an extra $3.66 per share imbedded in the offering price for its Rollover Shares, representing a 19.8% premium over the $18.50 being offered to plaintiff and the Class;

b.    The Proxy fails to disclose whether the Special Committee or the Board, before they approved the transaction were aware of the September 12, 2006, letter agreement between Elliott and Meteor Holding Company giving Elliott a portion of any consulting and merger termination fees;

c.    The Proxy fails to disclose the identity of the Special Committee members engaged at any time since the date that the Board determined to explore the sale of the Company in 2004;

d.    The Proxy fails to describe what the authority, if any, the Special Committee had to negotiate or reject the Proposed Transaction;

26

e.    The Proxy fails to disclose that the Special Committee members were paid an incentive fee to approve the Proposed Transaction or that they had handsomely awarded themselves additional compensation in connection with the decision to pay out options granted them under the 1994 and 2004 Plans;

f.    The Proxy does not disclose that the Special Committee failed to consider hiring any advisors other than Ballard Spahr and Needham;

g.    The Proxy fails to disclose the amounts that Ballard Spahr and Needham, respectively, were paid by either the Company, Knowles, Elliott or any of the other defendants in connection with services rendered during the past five years, or any amounts promised to be paid in the future;

h.    The Proxy fails to disclose that the $18.50 offering price is only a 1.47% premium over the 52-week average market price for Metrologic's shares;

i.    The Proxy fails to disclose why management's projections so dramatically decreased between July 31 and August 23, 2006, and fails to disclose why the projections prepared on August 16 and August 23, 2006 were given to Francisco but not to Needham;

j.    The Proxy fails to disclose that Needham's cash flow analysis was fundamentally flawed. Needham incorrectly neglected to deduct amortization expense when calculating taxable income. This resulted in an overstatement of tax expense and a corresponding understatement of net income and free cash flow, which in turn understated the Company's equity value. In addition, Needham's discounting calculations reflect end-of-period discounting rather than mid-period discounting. End-of-period discounting, which reflects the implicit assumption that the business generates no cash flow during the year but receives it all in a year-end lump sum, understates the present value of future cash flows and thus Metrologic's equity value. Mid-period discounting, which accurately results in a higher present value relative to end-of-period discounting, appropriately reflects the implicit assumption that the business generates cash throughout the year such that, on average, the business' cash flow is received at the mid-point of the year;

27

k.  In its analyses presented to the Board, Needham used an unusually broad range of discount rates, ranging from 10% to 20%. The Proxy, however, fails to give any indication of the methodology or assumptions Needham relied on to arrive at its range of discount rates;

l.  The Proxy fails to disclose whether any of the other potential bidders contacted by UBS were willing to consider deal terms similar to those contained in the Proposed Transaction, including provisions providing for Knowles and Elliott to have a continuing equity participation;

m.  The Proxy fails to disclose exactly what Elliott will be paid by Meteor Holding Corporation in the event the Company accepts a higher proposal and terminates the Proposed Transaction -- the Proxy also fails to disclose how much Elliott will receive from Francisco in connection with one-time and quarterly payments it will receive for providing services to Meteor Holding Corporation; and

n.  The Proxy fails to disclose the sources of the options Metrologic is buying out from the Board, the extent to which those options are in or out "of the money," and by what amount.

71.  The Individual Defendants' agreement to the unfair terms of the Proposed Transaction, its timing, their failure to auction the Company and make any auction demonstrate a clear breach of fiduciary duties owed to plaintiff and the Class. The Proposed Transaction is an attempt by the Knowles Group to benefit themselves at the expense of plaintiff and the Class. The Proposed Transaction will, for inadequate consideration, deny plaintiff and the other members of the Class the opportunity to share proportionately in the future success of the Company and its valuable assets, while wrongfully benefiting the Knowles Group.

## COUNT I

## BREACH OF THE FIDUCIARY DUTY OF DISCLOSURE

72.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73.     The defendants have already caused materially misleading and incomplete information to be disseminated to the Company's public shareholders.  Having chosen to publicly communicate concerning the Proposed Transaction, defendants had an obligation to be complete and accurate in their disclosures.

74.     The Proxy fails to disclose material financial information, including financial information and information necessary to prevent the statements contained therein from being misleading.

75.     The misleading omissions and disclosures by defendants concerning information and analyses presented to and considered by the Special Committee, including the consideration to be received by the Knowles Group in connection with the Proposed Transaction, among other things, affirm the inadequacy of disclosures to the Company's shareholders.  Because of defendants' failure to provide full and fair disclosures, plaintiff and the Class will be stripped of their ability to make an informed decision on whether to vote in favor of the Proposed Transaction, and thus damaged thereby.

**COUNT II**

**BREACH OF FIDUCIARY DUTY – ENTIRE FAIRNESS**

76.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77.     In unanimously approving the Proposed Transaction on behalf of Metrologic, the Individual Defendants and Elliott have not taken any steps to protect the interests of the Company's minority shareholders.  Instead of utilizing procedural safeguards such as providing for approval of the Proposed Transaction by a majority of the Company's minority shareholders, the Individual Defendants and Elliott simply have agreed to seek approval from a simple

29

majority of the Company's shareholders all financially interested in the Proposed Transaction thus assuring its approval.

78.     Because the Knowles Group stands on both sides of the Proposed Transaction, it is subject to the requirements of entire fairness. The deal, however, fails to meet that standard's rigorous requirements. To that end, defendants are required to, but cannot, demonstrate the entire fairness of the Proposed Transaction because, among other things: (a) the Knowles Group is on both sides of the transaction; (b) the Knowles Group will receive enormous personal benefit as a result of the transaction significantly in excess of that to be received by the Company's public shareholders; (c) the Proposed Transaction calls for the payment of a price that is less than supported; and (e) the Proposed Transaction does not provide for any sort of meaningful procedural protections for the Company's public shareholders.

79.     Further, the Proposed Transaction is coercive. The Proposed Transaction is not conditioned on a "majority-of-the-minority" shares voting in its favor. The Company's public shareholders thus are left with no meaningful choice whatsoever.

80.     The unfairness of the terms of the Proposed Transaction is compounded by the gross disparity between the knowledge and information possessed by defendants by virtue of their positions of control of Metrologic and the Knowles Group and that possessed by the Company's public shareholders.

81.     The inherent unfairness in the Proposed Transaction's consideration thus also is manifest in the uncertainty and inadequacy of the purchase price. The financial pressures that led the Special Committee to accept a structure that extends the right to equity participation and other benefits to the Knowles Group is evident. There was no urgency for selling the Company

30

in a deal with a financial sponsor that does not offer any meaningful premium to minority shareholders.

82.    Because entire fairness applies to the Proposed Transaction, the Individual Defendants are obligated to explore all alternatives to maximize shareholder value.  To accomplish this obligation, the Individual Defendants had a duty to:

      a.    fully inform themselves of Metrologic's market value before taking, or agreeing to refrain from taking, action;

      b.    act in the interests of the equity owners;

      c.    maximize shareholder value;

      d.    obtain the best financial and other terms when the Company's independent existence will be materially altered by the transaction; and

      e.    act in accordance with the fundamental duties of loyalty, care and good faith.

83.    Because of their respective positions with the Company, the Individual Defendants are also required to:

      a.    independently to ensure that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholders;

      b.    ensure that if there are conflicts of interest between the defendants interests and their fiduciary obligations of loyalty, that they are resolved in the best interest of the Metrologic's public shareholders; and

      c.    ensure that the Proposed Transaction is entirely fair to Metrologic's public shareholders.

84.    By reason of the foregoing, defendants have breached, and will continue to breach, their fiduciary duties owed to the public shareholders of Metrologic, and are engaging in,

or facilitating the accomplishment of, an unfair and self interested transaction that is not entirely fair to the public shareholders of Metrologic.

85.    Plaintiff and the Class will suffer irreparable harm unless defendants are enjoined from breaching their fiduciary duties and carrying out the aforesaid wrongful transaction.

86.    Plaintiff and the Class have been and will be damaged in that they not and will not receive a fair proportion of the value of Metrologic's assets and business and will be prevented from benefiting from a value-maximizing transaction.

87.    Plaintiff and the other Class members are immediately threatened by the acts and transactions complained of herein.

88.    Plaintiff lacks an adequate remedy at law.

## COUNT III

### AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Against Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, Meteor Merger Corporation, Elliott Associates, L.P., and Elliot International, L.P.)

89.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

90.    Because they were fiduciaries of the Corporation, the Individual Defendants and Elliott owed duties of due care, undivided loyalty, good faith, and truthful disclosure. The Individual Defendants and the Knowles Group violated and breached these duties.

91.    With the knowledge, approval, and participation of each of the Individual Defendants, as alleged herein, defendants Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, and Meteor Merger Corporation, were able to, and in fact did, knowingly render aid and assistance to the Individual Defendants in their breach of fiduciary duty. Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation, and

32

Meteor Merger Corporation, did so knowingly, or but for their gross negligence would have

known, of the Individual Defendants' and Elliott's fiduciary breaches.

   92.   As a direct and proximate result of the aiding and abetting the Individual

Defendants' and Elliott's breach of fiduciary duty, plaintiff and the Class have sustained, and

will continue to sustain, substantial harm.

## CERTIFICATION PURSUANT TO R.4:5-1

   1.   I hereby certify that the matter in controversy is the subject of two other

actions pending in this Court and one pending in Gloucester County, all which are subject

to a joint stipulation that is being circulated between the parties for submission to this court

within the week that, subject to Court approval, will consolidate, coordinate and/or

transfer all of these actions into the instant action. These actions are as follows:

   a.   *Savarese v. Close, et. al.* L-6430-06 Superior Court of New
        Jersey, Camden County, Law Division;

   b.   *Marcin v. Metrologic Instruments, Inc., et. al.* C-62-06
        Superior Court of New Jersey, Gloucester County,
        Chancery Division; and

   c.   *Gerber v. Metrologic Instrument, Inc., et. al.,* L-6503-06,
        Superior Court of New Jersey, Camden County, Law
        Division.

   2.   To my knowledge, no other action or arbitration procedure is contemplated.

   3.   I have no knowledge at this time of the names of any other party who

should be joined to this action.

## DESIGNATION OF TRIAL COUNSEL

   Pursuant to the revisions of R.4:25-4, the Court is advised that Evan J. Smith,

Esquire, is hereby designated as trial counsel until such time as other counsel listed herein

are admitted *pro hac vice.*

## NOTICE PURUSANT TO RULE 1:5-1(a)

**TAKE NOTICE** that the undersigned attorneys do hereby demand, pursuant to Rules 1:5-1(a) that each party herein serving pleadings and interrogatories and receiving answers thereto, serve copies of all such pleadings and answered interrogatories received from any party, including any documents, papers and other materials referred to therein, upon the undersigned attorneys, and take notice that this is a continuing demand.

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action, and certifying plaintiff as a class representative;

B.    Declaring that the defendants and each of them have committed or participated in a breach of their fiduciary duty to plaintiff and other members of the Class;

C.    Enjoining the Proposed Transaction and, if the transaction is consummated, rescinding the Proposed Transaction (or award damages);

D.    Awarding plaintiff the costs and disbursements of this action, including a reasonable allowance for plaintiff's attorneys and experts' fees; and

E.    Granting such other and further relief as may be just and proper.

Dated:  October 31, 2006                    Respectfully submitted,

                                      **BRODSKY & SMITH, LLC**

                                      By:_____
                                      Evan Smith, Esquire
                                      1040 Kingshighway North, Suite 601
                                      Cherry Hill, NJ 08034
                                      856-795-7250
                                      856-795-1799 (fax)

                                      *Plaintiff's Liaison Counsel*

                                      [Additional Counsel Appear on Next Page]

34

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel:    (302) 984-0597
Fax:    (302) 984-0870

**SAXENA WHITE P.A.**
Maya Saxena, Esquire
Joseph E. White, III, Esquire
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Tel. (561) 394-3399
Fax. (561) 394-3382

**LAW OFFICES OF BRUCE G. MURPHY**
Bruce G. Murphy, Esquire
265 Llwyds Lane
Vero Beach, FL 32963
Tel: (828) 737-0500
Fax: (828) 737-0534

*Attorneys for Plaintiff*

Evan J. Smith, Esquire
**BRODSKY & SMITH, LLC**
1040 Kings Highway North, Suite 601
Cherry Hill, NJ 08034
856-795-7250
856-795-1799 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| DAVID WILKENFELD, On Behalf of Himself and All Others Similarly Situated, | **SUPERIOR COURT OF NEW JERSEY** **LAW DIVISION** **CAMDEN COUNTY** |
| Plaintiff, | |
| v. | Docket No. L 06445-06 |
| C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, and METROLOGIC INSTRUMENTS, INC., | **PROOF OF MAILING** |
| Defendants. | |

## PROOF OF MAILING

I, Evan J. Smith, Esquire, Esquire, of full age, hereby certifies that on October 31, 2006, I caused to be delivered by first class regular mail a true and correct copy of the attached Amended Class Action Complaint on all counsel set forth below:

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel:    (302) 295-5310
Fax:    (302) 654-7530

**SAXENA WHITE P.A.**
Maya Saxena, Esquire
Joseph E. White, III, Esquire
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Tel. (561) 394-3399
Fax. (561) 394-3382

**LAW OFFICES OF BRUCE G. MURPHY**
Bruce G. Murphy, Esquire
265 Llwyds Lane
Vero Beach, FL 32963
Tel: (828) 737-0500
Fax: (828) 737-0534

*Attorneys for Plaintiff Wilkenfeld*

Robert Hickok, Esquire
Angelo A. Stio, III, Esquire
Pepper Hamilton, LLP
300 Alexander Park, CN 5276
Princeton, NJ 08543
(609) 452-0808
(609) 452.1147 (facsimile)

*Attorneys for Defendants C. Harry Knowles and Janet Knowles*

Louis R. Moffa, Esquire
Ballard, Spahr Andrews & Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Vorhees, NJ 08043
856-761-3400
856-761-1020 (facsimile)

*Attorneys for Defendants Metrologic Instruments,*
*Inc., Richard Close, John Mathias, Stanton*
*Meltzer, Hsu Jau Nan, and William Rulon-Miller.*

Danielle Disporto, Esquire
Robert Kornreich, Esquire
Wolf Popper, LLP
845 Third Avenue
New York, NY 10022
212-759-4600
212-486-2093 (facsimile)

*Attorneys for Plaintiff Savarese*

Samuel Rudman, Esquire
Lerach Coughlin
58 S. Service Road, Suite 200
Melville, NY 11747
631-367-7100
631-367-1173 (facsimile)

Peter Pearlman, Esquire
Cohn, Lifkind, Pearlman
Park 80 Plaza West-One
SaddleBrook, NJ 07663
201-845-9600
201-845-9423 (facsimile)

*Attorneys for Plaintiff Marcin*

Lawrence J. Sass, Esquire
443 Northfield Avenue
West Orange, NJ 07052
973-324-5500
973-535-1921 (facsimile)

Ira Press, Esquire
Kirby McInerney & Squire
830 Third Avenue
New York, NY 10022
212-317-2300
212-751-2540 (facsimile)

*Attorneys for Plaintiff Gerber*

Dated: October 31, 2006

_____
Evan J. Smith, Esquire