IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOEL GERBER, on behalf of himself and all, others similarly situated,

Plaintiff,

v.

C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., METROLOGIC INSTRUMENTS, INC.,

Defendants.

C.A. No. 06-747 (JJF)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Dated: December 13, 2006

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
William M. Kelleher (ID #3961)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: 302-252-4465

*Attorneys for Defendants Metrologic Instruments, Inc., Richard C. Close, John H. Mathias, Stanton L. Meltzer, Hsu Jau Nan, and William Rulon-Miller*

# I. INTRODUCTION

Defendants jointly submit this Memorandum in support of their Motion to Transfer to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). This is a putative nationwide class action by a New York citizen challenging a proposed acquisition of a New Jersey corporation whose headquarters are in New Jersey. None of the defendant directors is a citizen of Delaware. None of the negotiations that led to the transaction being challenged by plaintiff took place in Delaware, nor was the allegedly misleading Proxy prepared in Delaware. None of the witnesses resides in Delaware. Besides the federal securities claim in Count I, the Complaint asserts three state law claims, all of which arise under New Jersey law.

Recognizing that New Jersey is the locus of the claims, plaintiff and his attorneys filed virtually identical Complaints three months ago on behalf of the same class against the same defendants in New Jersey state court, and the consolidated action (where plaintiff's counsel has been designated Lead Counsel for the putative class) is still pending in New Jersey. Indeed, the only reason plaintiff's counsel has belatedly filed this action in this Court is that he is dissatisfied that the New Jersey judge has not yet acted on his motion for an expedited hearing, which remains sub judice.[1] Simply put, the plaintiff and his counsel are engaging in blatant

---

[1] Plaintiff claims that the New Jersey court is "doing nothing." See Transcript at 27. This is false. In fact, the court heard plaintiff's request for an expedited hearing, and plaintiff made the same arguments to the New Jersey court that he made to this Court about the need for expedited relief. Plaintiff is here only because the New Jersey court has not granted his motion; yet the Delaware Chancery Court has, on numerous occasions, refused to hear a request for expedited relief where, like here, plaintiff has failed to act in a timely manner and/or can be fully compensated by money damages. See, e.g., Mark Prods., Ltd. v. Stuffit of Long Island, 2002 WL 244861 (Del. Ch. Feb. 4, 2002); Wand Equity Portfolio II L.P. v. AMFM Internet Holding Inc., No. 18162, 2001 WL 167720 (Del. Ch. Feb. 7, 2001); Union Pac. Corp. v. Santa Fe Pac. Corp., Nos. CIV. A. 13778, CIV. A. 13587, 1995 WL 54428 (Del. Ch. Jan. 30, 1995).

forum-shopping. Consistent with the decisions by this Court in At Home Corp. v. Cox Communications, Inc., No. 02-1486-JJF, 2003 U.S. Dist. LEXIS 18320 (D. Del. Oct. 8, 2003) and Minstar, Inc. v. Laborde, 626 F.Supp. 142 (D. Del. 1985), this Court should transfer this action to the District of New Jersey.

## II. ARGUMENT

As his "hook" for filing his securities action in this District, plaintiff points to the liberal venue provision set forth in Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, which provides that an action under the Act may be brought in any district "wherein any act or transaction constituting the violation occurred." Plaintiff argues that Metrologic allegedly mailed the Proxy Statement to some residents of Delaware, and therefore venue lies in this District under Section 27.[2] Even assuming arguendo the truth of that assertion, that is only the starting point for determining whether venue is proper in this Court. Securities cases, like other cases, may be transferred to other Districts under 28 U.S.C. § 1404(a). As Judge Latchum emphasized in Minstar, supra, when he granted a transfer motion, "there is no authority in this circuit for the proposition that the burden to transfer a federal securities case is somehow higher than the burden in other types of civil actions. This Court is of the view that 28 U.S.C. § 1404(a) applies in the same form to all types of civil actions; further, Congress could have, but did not, carve out a securities law exception to § 1404(a)." 626 F.Supp. at 149. Accord Burstein v. Applied Extrusion Technologies, Inc., 829 F.Supp. 106, 113 (D. Del. 1992).

---

2 This assertion has been made in correspondence to the Court, but was not pleaded in the "Jurisdiction and Venue" allegations of the Complaint. (See ¶ 9). Metrologic has a certified list of 212 record shareholders. None of them resides in Delaware, and 149 of the 212 reside in New Jersey. Metrologic does not have the names and addresses of all of the beneficial owners of its stock. Thus, plaintiff's unpleaded assertion that the Proxy was mailed into Delaware rests solely on conjecture and speculation, not fact.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is undisputed that plaintiff could have brought this action in the District of New Jersey. Therefore, the issue is whether the factors enumerated in Section 1404(a) warrant a transfer under the circumstances presented here.

In this Court, decisions on motions to transfer are guided by the private and public interests enunciated in Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995), and its progeny. In a very recent decision, this Court summarized those private and public interests as follows:

> These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. [55 F.3d] at 879. The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. Id. at 879-80.

Cashedge, Inc. v. Yodlee, Inc., No. 06-170-JJF, 2006 WL 2038504 at *1 (D. Del. July 19, 2006).

As demonstrated below, application of the foregoing factors militates strongly in favor of transfer to the District of New Jersey, as Delaware has no nexus to or interest in this case.

**Private Considerations**

In Cashedge, this Court acknowledged that while the plaintiff's choice of forum is ordinarily entitled to deference, "when the plaintiff lacks a rational and legitimate reason to litigate in the forum, the transfer of a case to a more appropriate forum is less inconvenient." Id. at *2. As a threshold matter, it bears emphasis that plaintiff is a citizen of New York, not Delaware. Numerous decisions in this District and elsewhere have recognized that a plaintiff's choice of forum is accorded less weight if plaintiff does not reside there. See, e.g., Burstein v. Applied Extrusion Technologies, Inc., 829 F.Supp. 106, 110 (D. Del. 1992); Minstar, Inc. v. Laborde, 626 F.Supp. 142, 145 (D. Del. 1985); Sports Eye v. Daily Racing Form, 565 F.Supp. 634, 637 (D. Del. 1983); Magee v. Essex-Tec Corp., 704 F.Supp. 543, 547 (D. Del. 1988).

Nor do the defendants have a nexus to Delaware. Metrologic is a New Jersey corporation with its principal place of business in New Jersey. Declaration of C. Harry Knowles ("Knowles Decl." attached as Exhibit A), ¶ 2. It has no offices or employees in Delaware. Id., ¶¶ 2, 3. None of the individual defendants lives or works in Delaware, nor did they take any actions in Delaware with respect to the transaction in question or Proxy Statement. Id., ¶¶ 4, 5. None of the negotiations regarding the transaction took place in Delaware. Id., ¶ 5. Nor was the allegedly misleading Proxy Statement prepared in Delaware. Id., ¶ 6. And none of the witnesses in this case resides in Delaware.

This case is strikingly similar to At Home Corp. v. Cox Communications, Inc., supra. In that case, as here, the plaintiff alleged securities violations and breaches of fiduciary duty. In ordering a transfer to the Southern District of New York, this Court stated as follows:

> The Court finds that the Comcast Defendants do not have a significant relation to Delaware. Comcast and Comcast Online are not residents of Delaware. Comcast is incorporated, and has its principal place of business, in Pennsylvania . . . . Mr. Roberts is not a resident of Delaware and does not transact business in

> Delaware. While Comcast PC is organized under Delaware law, it is not qualified to do business in Delaware, and its slight connection to Delaware is overwhelmed by the lack of connection of the other three Comcast Defendants.
>
> The Court also finds that At Home has not shown that any acts or transactions involved in this case occurred in Delaware. Further, the Court finds that none of At Home's factual allegations demonstrate a connection to Delaware.

2003 U.S. Dist. LEXIS 18320 at *5-6.

Here, too, plaintiff "has not shown that any acts or transactions involved in this case occurred in Delaware." Id. Indeed, in At Home, the Court found that transfer was warranted even though plaintiff was a Delaware corporation; plaintiff's choice of forum is entitled to even less deference in this case because he is a citizen of New York.

Plaintiff argues that "defendants incorporated the corporate merger vehicles in this District, and the successor corporation in the merger, defendant Meteor Holding Corporation, is a Delaware corporation." Letter to the Court from Brian D. Long, Esq. dated December 11, 2006. That hardly suffices to establish that Delaware is a more appropriate forum than New Jersey. See, e.g., Minstar, Inc. v. Laborde, 626 F.Supp. 142 (D. Del. 1985) (transferring securities action to Eastern District of Louisiana even though one corporate defendant was incorporated in Delaware, and state law claims arose under Delaware law); Nilssen v. Osram Sylvania, Inc., No. 00-695-JJF, 2001 WL 34368395 at *2 (D. Del. May 1, 2001) (Farnan, J.) (transferring case even though corporate defendants were incorporated in Delaware, which constituted "minimal" contacts with Delaware); Memminger v. InfoCure Corp., No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077 at *18 (D. Del. Nov. 14, 2000) (Farnan, J.) (transferring case even though corporate defendant was incorporated in Delaware, because "all the relevant facts" occurred in Georgia, and "the only connection the case had to Delaware was that the defendant was incorporated there"); Cashedge, Inc. v. Yodlee, Inc., No. 06-170-JJF,

2006 WL 2038504 (D. Del. July 19, 2006) (Farnan, J.) (granting transfer motion even though both plaintiff and defendant were incorporated in Delaware); At Home Corp. v. Cox Communications, No. 02-1486-JJF, 2003 U.S. Dist. LEXIS 18320 (D. Del. Oct. 8, 2003) (Farnan, J.) (granting transfer motion even though one defendant was incorporated in Delaware); Bosco v. Scott, No. 00-211, 2000 WL 1728150 at *3 (D. Del. Aug. 31, 2000) (same).

Here, the key corporate defendant is Metrologic, not the corporate merger vehicles or the successor corporation. Metrologic is a New Jersey corporation, and plaintiff's primary claims are brought against Metrologic and its directors, not against the merger vehicles or successor corporation. In addition to being a New Jersey corporation, Metrologic is headquartered in New Jersey, and has no offices or employees in Delaware. Because Metrologic is a New Jersey corporation, it is undisputed that all of the state law claims brought by plaintiff will be governed by New Jersey law.

The other primary defendants also have no connection to Delaware. For example, none of the Metrologic Director defendants came to Delaware in connection with this transaction. Similarly, none of the negotiations regarding the transaction occurred in Delaware; the Proxy Statement was not drafted in Delaware; and none of the witnesses resides in Delaware.[3]

Moreover, the fact that plaintiff's counsel is located in Delaware is irrelevant for purposes of the transfer analysis. See, e.g., Burstein v. Applied Extrusion Technologies, Inc.,

---

[3] It is also significant that this is a putative nationwide class action. A number of decisions in this District find "that a plaintiff's choice of forum is substantially less important when the plaintiff sues representatively on behalf of a class." Burstein v. Applied Extrusion Technologies, Inc., 829 F.Supp. 106, 111 (D. Del. 1992); see Hall v. Kittay, 396 F.Supp. 261, 263 (D. Del. 1975); Firmani v. Clarke, 325 F.Supp. 689, 691 (D. Del. 1971).

829 F.Supp. 106, 112 (D. Del. 1992); Magee v. Essex-Tec Corp., 704 F.Supp. 543, 548 (D. Del. 1988); Minstar, Inc. v. Laborde, 626 F.Supp. 142, 146 n.18 (D. Del. 1985).

Finally, having litigated a virtually identical action in state court in New Jersey for the past three months, plaintiff certainly cannot now be heard to complain that a transfer of this case to the District of New Jersey would impose undue hardship or inconvenience upon him. Plaintiff's counsel has argued that "the clock keeps ticking" (Transcript at 35) and the shareholder vote will be held soon, but that does not constitute a legitimate basis to deny a transfer to a more appropriate forum. Plaintiff and his counsel delayed in filing their federal securities claim until December 8, 2006, and then chose a forum having no connection to the Company or the transaction, so the press of time is attributable solely to their own tactical decisions.

Accordingly, the "private considerations" outlined in Jumara weigh heavily in favor of transfer.

**Public Considerations**

The "public considerations" enunciated in Jumara also militate strongly in favor of transfer. As described above, this case was not filed until after plaintiff and his counsel grew dissatisfied with the Judge presiding over the actions they filed in state court in New Jersey in mid-September. They are forum-shopping, pure and simple. That improper conduct alone suffices to warrant a transfer. Once again, this Court's decision in At Home v. Cox Communications, Inc. is squarely on point:

> With regard to the public interest factors, the Court finds that At Home is engaging in forum shopping and attempting to force this case into the District of Delaware. Obviously, when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted.

2003 U.S. Dist. LEXIS 18320 at *6. Accord Polaroid Corp. v. Casselman, 213 F.Supp. 379, 383 (S.D.N.Y. 1962) ("In view of this all but complete lack of nexus with the forum, suit in this district can only be justified on the basis of the venue privilege given plaintiff by Sections 16(b) and 27 of the Securities Exchange Act of 1934. Normally plaintiff's choice of a technically proper venue is accorded some weight in the court's determination of the propriety of a transfer under 28 U.S.C. § 1404(a)... [An asserted right to choice of forum] is only one factor to be considered and is entitled to no weight whatever where it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter....") (emphasis added).

Indeed, the forum shopping here is even more blatant than in At Home, where no prior action had been filed by the plaintiff. This case was filed in this Court only because plaintiff and his counsel were dissatisfied with their lack of success before the state court judge in New Jersey.

Moreover, plaintiff's counsel has not advanced any good reason why he filed his federal securities complaint in this Court rather than the District of New Jersey. At the hearing on December 12, 2006, this Court asked plaintiff's counsel point-blank: "why didn't you file in the federal court in New Jersey, since you were already there with the State Judge, and typically, as I mentioned, that would be the practice here." (Transcript at 21). Plaintiff's counsel essentially ducked the question, responding weakly that the "proxy was disseminated in Delaware." Id. While this alleged mailing might have sufficed to satisfy the venue requirement of 15 U.S.C. § 78aa, it does not begin to explain why this forum is more appropriate than the District of New Jersey, where the companion state case has been pending for three months and Metrologic is located. See, e.g., Omnicom Group, Inc. v. Employers Reinsurance Corp., No. 01-

839, 2002 U.S. Dist. LEXIS 1275 (D. Del. Jan. 28, 2002) (granting motion to transfer case to New York, where a previously filed similar action involving the same parties was pending in state court).

In addition, other "public considerations" outlined in Jumara that weigh heavily in favor of transfer are "the local interest in deciding local controversies at home" and "the familiarity of the trial judge with the applicable state law." 55 F.3d at 879-80. As discussed above, this lawsuit involves the acquisition of a New Jersey corporation headquartered in New Jersey, and all of plaintiff's state law claims arise under New Jersey law. Neither the plaintiff nor the individual defendants nor any of the witnesses are from Delaware, and none of the conduct complained of occurred in Delaware. Thus, New Jersey has a far greater interest in this lawsuit than does Delaware. See, e.g., At Home, 2003 U.S. Dist. LEXIS 18320 at *6 ("[T]he Court finds that the local interest of New York, where the transactions [occurred] that form the basis of the claims asserted is stronger than the local interest of Delaware in resolving this dispute."). Accord Bosco v. Scott, 2000 WL 1728150 at *3 (D. Del. Aug. 31, 2000) (conduct giving rise to complaint occurred in North Carolina, not Delaware).

Accordingly, both the private and the public interests articulated in Jumara make it readily apparent that this lawsuit has no nexus to Delaware, and should be transferred to the District of New Jersey.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this action be transferred to the District of New Jersey.

Respectfully submitted,

Dated: December 13, 2006

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

William M. Kelleher (ID #3961)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: 302-252-4465
kelleherw@ballardspahr.com

*Attorneys for Defendants Metrologic Instruments, Inc., Richard C. Close, John H. Mathias, Stanton L. Meltzer, Hsu Jau Nan, and William Rulon-Miller*

## CERTIFICATE OF SERVICE

I, William M. Kelleher, hereby certify that on this 13th day of December, 2006, I caused a true and correct copy of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) to be filed with the Clerk of the Court with copies being served upon the following via e-mail and first class mail:

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Rigrodsky & Long, P.A.
919 N. Market Street, Suite 980
Wilmington, DE 19801

David J. Berger, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

Kenneth M. Murray, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

Elizabeth M. Saunders, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
One Market, Spear Tower, Suite 3300
San Francisco, CA 94105

Wolfgang Heimerl, Esquire
Heimerl Law Firm
1 Anderson Road, Suite 105
Bernardsville, NJ 07924

Angelo A. Stio, III, Esquire
Pepper Hamilton, LLP
300 Alexander Park
Princeton, NJ 08543

David Parker, Esquire
Marc Rosen, Esquire
Kleinberg, Kaplan, Wolff & Cohen, P.C.
551 Fifth Avenue
New York, NY 10176

Robert L. Hickok, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Gregory B. Reilly, Esquire
John D. Schupper, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068-1791

William M. Kelleher (3961)

DMEAST #9685274 v1

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOEL GERBER, on behalf of himself and all others similarly situation,

Plaintiff,

v.

C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., METROLOGIC INSTRUMENTS, INC.

Defendants.

CA No. – 06-747

**DECLARATION OF C. HARRY KNOWLES**

C. HARRY KNOWLES hereby declares as follows:

1. I am the founder, Chairman of the Board of Directors and currently the interim Chief Executive Officer of Metrologic Instruments, Inc. ("Metrologic"). I have personal knowledge of the facts set forth below and if called upon, I could and would testify under oath as to the truth of these facts. I make this Declaration in support of Metrologic's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).

2. Metrologic is a New Jersey corporation with its principal place of business located at 90 Coles Road in Blackwood, New Jersey. Metrologic also maintains an office at

1571 Imperial Way, in West Deptford, New Jersey. Metrologic does not maintain, and has never maintained, an office in the State of Delaware.

3. Metrologic owns no property in the State of Delaware and does not have any employees that are located in the State of Delaware. All Metrologic employees that service Metrologic's business in North America and all of Metrologic's corporate records related to the merger at issue in this litigation are located in the State of New Jersey.

4. In addition to me, the Metrologic Board consists of the following directors: William Rulon-Miller, Hsu Jau Nan, Stanton L. Meltzer, John H. Mathias, Richard C. Close and my wife, Janet H. Knowles. To my knowledge, none of Metrologic's directors resides or works in the State of Delaware.

5. I have read the complaint in this matter which, among other things, seeks to enjoin a Metrologic shareholder vote on the proposed merger of Metrologic by a corporation controlled by Francisco Partners, II, L.P. To my knowledge, none of the negotiations related to the merger took place in the State of Delaware.

6. Plaintiff's complaint also challenges certain disclosures that were contained in, and/or allegedly omitted from, a proxy that Metrologic issued to its shareholders in connection with the merger at issue in this case. The proxy statement Metrologic issued to its shareholders was drafted and prepared by Metrologic's attorneys located in Philadelphia, Pennsylvania and Voorhees, New Jersey.

7. The special meeting of Metrologic's shareholders to vote on the proposed merger is scheduled for December 20, 2006 at Metrologic's offices in Blackwood, New Jersey.

I declare, under penalty of perjury the laws of the United States of America, that the foregoing is true and correct. Executed on December 13, 2006.

C. Harry Knowles

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOEL GERBER, on behalf of himself and all, others similarly situated, Plaintiff, | : | |
| v. | : | |
| C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., METROLOGIC INSTRUMENTS, INC., | : | C.A. No. 06-747 (JJF) |
| Defendants. | : | |

**UNREPORTED CASES CITED IN MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Dated: December 13, 2006

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
William M. Kelleher (ID #3961)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: 302-252-4465

*Attorneys for Defendants Metrologic Instruments, Inc., Richard C. Close, John H. Mathias, Stanton L. Meltzer, Hsu Jau Nan, and William Rulon-Miller*

LEXSEE


Signal unavailable
As of: Dec 13, 2006

**AT HOME CORPORATION, Plaintiff, v. COX COMMUNICATIONS, INC., COX@HOME INC., COMCAST CORPORATION, COMCAST ONLINE COMMUNICATIONS, INC., COMCAST PC INVESTMENTS INC., BRIAN L. ROBERTS and DAVID M. WOODROW, Defendants.**

**Civil Action No. 02-1486-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 18320**

**October 8, 2003, Decided**

**DISPOSITION:** [*1] Comcast Defendants' Motion for Improper and Inconvenient Venue and Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 were granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation contended that defendants, group one defendants and group two defendants, committed securities violations and breaches of fiduciary duty. The group one defendants moved to dismiss or transfer the action for improper and inconvenient venue. The group two defendants moved to dismiss or transfer for improper venue, or in the alternative, to transfer pursuant to 28 U.S.C.S. § 1404.

**OVERVIEW:** As to the motion filed by the group one defendants, a corporation one, two, and three and an individual, the corporation one and the corporation two were not residents of Delaware. The individual was not a resident of Delaware and did not transact business in Delaware. While the corporation three was organized under Delaware law, it was not qualified to do business in Delaware, and its slight connection to Delaware was overwhelmed by the lack of connection of the other three group one defendants. The court found that plaintiff had not shown that any acts or transactions involved in the case occurred in Delaware. Further, none of plaintiff's factual allegations demonstrated a connection to Delaware. With regard to the public interest factors, plaintiff was engaging in forum shopping and attempting to force the case into the district. Additionally, the local interest of New York, where the transactions that formed the basis of the claims asserted, was stronger than the local interest of Delaware in resolving the dispute. The court found that the convenience of the parties and witnesses was best be served by transferring the action to the district where proper venue existed.

**OUTCOME:** The group one defendants' motion for improper and inconvenient venue and the group two defendants' motion to transfer were granted. The case was transferred.

**CORE TERMS:** venue, motion to transfer, convenient, motion to dismiss, reasons discussed, collectively, convenience, weigh, securities law, local interest, transferring, transferred, resident, shopping

**LexisNexis(R) Headnotes**

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN1] See 28 U.S.C.S. § 1404(a).

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN2] In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in Jumara v. State Farm. When determining

whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***

[HN3] When a court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted.

**COUNSEL:** Edmond D. Johnson, Esquire and Michael L. Vild, Esquire of THE BAYARD FIRM, Wilmington, Delaware.

Of Counsel: Joseph S. Allerhand, Esquire, Richard W. Slack, Esquire, and Daniel S. Cahill, Esquire of WEIL, GOTSHAL & MANGES LLP, New York, New York.

Counsel for Plaintiff At Home Corporation.

Donald E. Reid, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.

Of Counsel: Michael D. Hays, Esquire, Michael D. Rothberg, Esquire, and Daniel D. Prichard, Esquire of DOW, LOHNES & ALBERTSON, PLLC, Washington, District of Columbia.

Counsel for Defendants Cox Communications, Inc., Cox@Home, Inc., and David M. Woodrow.

Barry M. Klayman, Esquire of WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP, Wilmington, Delaware.

Of Counsel: Michael S. Shuster, Esquire and Sheron Korpus, Esquire of WHITE & CASE LLP, New York, New York.

Counsel for Defendants Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts.

**JUDGES:** Farnan, District Judge.

**OPINION BY:** Farnan

**OPINION:** [*2]

**MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion To Dismiss (D.I. 21-1) Or Transfer This Action For Improper And Inconvenient Venue (D.I. 21-2) filed by Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts (collectively "Comcast Defendants") and the Motion to Dismiss (D.I. 15-1) or Transfer For Improper Venue (D.I. 15-2), or In The Alternative, To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3) filed by Cox Communications, Inc., Cox@Home, Inc., And David M. Woodrow (collectively "Cox Defendants"). For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue (21-2) and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3).

**BACKGROUND AND ALLEGATIONS OF THE PARTIES**

In this action, At Home Corporation ("At Home") contends defendants Comcast Corporation ("Comcast"), Comcast Online Communications, Inc. ("Comcast Online"), Comcast PC Investments Inc. ("Comcast PC"), and Brian L. Roberts and Defendants Cox Communications, [*3] Inc. ("Cox"), Cox@Home, and David M. Woodrow ("Woodrow") have committed securities violations and breaches of fiduciary duty.

The Comcast Defendants assert that the lack of any connection with Delaware makes a transfer of the action to the Southern District of New York appropriate. The Comcast Defendants contend that the Southern District of New York is an easier and more convenient venue. The Comcast Defendants allege essentially the same arguments in support of their motion to dismiss the case for lack of jurisdiction and improper venue.

By their motion to transfer or dismiss, the Comcast Defendants contend that neither they nor this action have sufficient connections to Delaware to make venue proper here. They assert that Comcast, Comcast Online, and Mr. Roberts have no presence in Delaware. The Comcast Defendants assert that the transactions at issue in At Home's securities law claim did not occur in Delaware and that the Court's subject matter jurisdiction over the claim of breach of fiduciary duty is dependent on jurisdiction over the securities law claim. Consequently, the Comcast Defendants assert, both claims must be dismissed or transferred.

The Cox Defendants also support [*4] transferring this case. The Cox Defendants assert because Comcast is

an indispensable party to the instant case and venue is improper as to Comcast, venue is improper as to Cox. Cox claims that the transactions creating the claims At Home asserts are not related to Delaware, and that New York is a more convenient venue for the instant case.

At Home responds that venue is proper in Delaware, and that Delaware is a more convenient venue than New York because the action has significant connections to Delaware.

**DISCUSSION**

The Court will first consider the Motions to Transfer filed by the Comcast and Cox Defendants. 28 U.S.C. § 1404(a) states that [HN1] "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[HN2] In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3rd Cir. 1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant [*5] factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. Id. at 883. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D.Del. 1999).

**PRIVATE CONSIDERATIONS**

The Court finds that the Comcast Defendants do not have a significant relation to Delaware. Comcast and Comcast Online are not residents of Delaware. Comcast is incorporated, and has its principal place of business, in Pennsylvania. Comcast Online has merged with Comcast and is not a distinct entity. Mr. Roberts is not a resident of Delaware and does not transact business in Delaware. While Comcast PC is organized under Delaware law, it is not qualified to do business in Delaware, and its slight connection to Delaware is overwhelmed by the lack of connection of the other three Comcast Defendants.

The Court also finds [*6] that At Home has not shown that any acts or transactions involved in this case occurred in Delaware. Further, the Court finds that none of At Home's factual allegations demonstrate a connection to Delaware.

**PUBLIC CONSIDERATIONS**

With regard to the public interest factors, the Court finds that At Home is engaging in forum shopping and attempting to force this case into the District of Delaware. Obviously, [HN3] when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted. Additionally, the Court finds that the local interest of New York, where the transactions that form the basis of the claims asserted is stronger than the local interest of Delaware in resolving this dispute.

After considering the relevant factors for transfer of this case, the Court finds, balancing the relevant private and public factors, that the convenience of the parties and witnesses will best be served by transferring this action to the Southern District of New York where proper venue exists. Accordingly, the Motion to Transfer under 1404(a) will be granted and the case will be transferred to the Southern District of New York.

**CONCLUSION** [*7]

For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404. An Order consistent with this Memorandum Opinion has been entered.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 1728150 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Briefs and Other Related Documents

Bosco v. ScottD.Del.,2000.Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

Charles R. BOSCO and Michael D. McGee, individually, and on behalf of all those similarly situated and derivatively as shareholders of PhyAmerica Physician Group, Inc., Plaintiffs,

v.

Steven M. SCOTT, M.D., et al., Defendants.

**No. Civ.A. 00-211-GMS.**

Aug. 31, 2000.

Jay W. Eisenhofer, Grant & Eisenhofer, P.A., Wilmington, DE, for Charles R. Bosco, individually, and on behalf of all those similarly situated and derivatively as shareholders of PhyAmerica Physician Group, Inc., plaintiff.

Jay W. Eisenhofer, (See above), for Michael D. McGee, individually and on behalf of all those similarly situated and derivatively as shareholders of PhyAmerica Physician Group, Inc., plaintiff.

Elizabeth M. McGeever, Elizabeth A. Wilburn, Prickett, Jones & Elliott, Wilmington, DE, for Steven M. Scott, M.D., defendant.

Alan J. Stone, S. Mark Hurd, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Bertram E. Walls, M.D., defendant.

Alan J. Stone, S. Mark Hurd, (See above), for Eugene F. Dauchert, Jr., defendant.

Alan J. Stone, S. Mark Hurd, (See above), for Edward L. Suggs, Jr. , defendant.

Alan J. Stone, S. Mark Hurd, (See above), for Charles E. Potter, defendant.

Alan J. Stone, S. Mark Hurd, (See above), for Sherman M. Podolsky, M.D., defendant.

Alan J. Stone, S. Mark Hurd, (See above), for W. Randall Dickerson, defendant.

David A. Jenkins, Michele C. Gott, Smith, Katzenstein & Furlow, Wilmington, DE, for Lance K. Poulsen, defendant.

David A. Jenkins, Michele C. Gott, (See above), for National Century Financial Enterprises Inc., defendant.

Anne Churchill Foster, Richards, Layton & Finger, Wilmington, DE, for Phyamerica Physician Group Inc., a Delaware corporation, defendant.

*MEMORANDUM AND ORDER*

SLEET, J.

***1** Charles R. Bosco and Michael D. McGee have brought this shareholder and derivative action against various directors and officers of PhyAmerica Physician Group, Inc. ("PhyAmerica") including its president, chief executive officer, and board chairman, Steven M. Scott, M.D. ("Scott"). The plaintiffs have also sued National Century Financial Enterprises, Inc. ("National Century") and its chairman and chief executive officer, Lance K. Poulsen ("Poulsen"). According to the plaintiffs, the "thrust of th[eir] case" are the four counts in their complaint alleging that the defendants breached a number of fiduciary duties which they owed to PhyAmerica's shareholders. The remaining count which alleges violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § § 1961 *et seq.* (1994), provides the basis for the court's subject matter jurisdiction. *See* 28 U.S.C. § 1331 (1994) (conferring jurisdiction over federal questions); *see also* 28 U.S.C. § 1367 (1994) (affording supplemental jurisdiction over related state law claims, such as those for breach of fiduciary duty). All of the defendants, with the exception of Poulsen and National Century, have moved to transfer this action to the Middle District of North Carolina.[FN1] Because the court finds that transfer will convenience the parties and the witnesses while serving the interests of justice, it will grant the motion.

FN1. Poulsen and National Century, however, have moved to dismiss the action for lack of personal jurisdiction. Given the court's resolution of the motion to transfer, it need not reach the merits of the dispositive motion.

I. BACKGROUND.

PhyAmerica is a Delaware corporation with its principal place of business in Durham, North Carolina. According to the complaint, the company provides health care and administrative services to physicians, hospitals, and other health care organizations across the country. National Century provides billing services to PhyAmerica. It is an Ohio corporation with its principal place of business in Dublin, Ohio. Poulsen is also a citizen and resident

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728150 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Ohio.

The plaintiffs accuse Scott of entering into a complex financial arrangement with Poulsen and National Century in order to "systematic[ally] loot [ ]" PhyAmerica. The plaintiffs claim that this conduct violated the federal RICO statute.

The plaintiffs have also accused Scott of breaching a number of his fiduciary duties to PhyAmerica and its shareholders. For example, the plaintiffs claim that Scott broke off portions of the company and sold them to himself at very favorable prices.[FN2] The plaintiffs also claim that Scott "engaged in several other self-dealing and related-party transactions that were unfair to the company and its shareholders." According to the plaintiffs, PhyAmerica's officers and directors failed to stop Scott's misconduct even though they had knowledge of his actions. The plaintiffs claim that, through their acquiescence, these officers and directors breached their fiduciary duties to the company.

FN2. For example, the plaintiffs allege that PhyAmerica acquired Sterling Health Care Group, Inc. ("Sterling") in July of 1999 while this company was a debtor in a jointly administered Chapter 11 proceeding before the Bankruptcy Court in Delaware. According to the plaintiffs, Scott subsequently attempted to devalue Sterling so that he could purchase it at a low price.

II. DISCUSSION.

Pursuant to the federal venue statute, this court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." *See* 28 U.S.C. § 1404 (1994).

A. This Action Could Have Been Brought in the Middle District of North Carolina.

***2** In opposition to the motion to transfer, the plaintiffs argue that this case could not have originally been brought in North Carolina since that state lacks personal jurisdiction over Poulsen and National Century. In fact, the plaintiffs go so far as to say that because Poulsen and National Century did not join in the motion to transfer, they are "implicitly disputing the jurisdiction of the North Carolina courts." However, in their motion to dismiss for lack of personal jurisdiction, Poulsen and National Century plainly state that: "[A]ll defendants are subject to jurisdiction in North Carolina, at least for purposes of this action." These defendants continue by conceding that the allegations of the complaint "would authorize service of process on N[ational Century] and ... Poulsen under at least two provisions of the North Carolina long-arm statute...." Thus, contrary to the plaintiffs' assertions, Poulsen and National Century are not "implicitly disputing the jurisdiction of the North Carolina courts." In fact, they have expressly conceded that the North Carolina courts can exercise personal jurisdiction over them at least as far as this lawsuit in concerned.[FN3]

FN3. Thus, even though Poulsen and National Century have not joined in the motion to transfer, the court believes that their unequivocal statements concerning the existence of personal jurisdiction over them in North Carolina would effectively estop them from taking a contrary position after transfer. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 361 (3d Cir.1996) ("[J]udicial estoppel is intended to prevent parties from playing fast and loose with the courts by asserting inconsistent positions ...."); *see also King v. Herbert J. Thomas Memorial Hosp.,* 159 F.3d 192, 196-97 (4th Cir.1998) ("Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system.").

Furthermore, the principal offices of PhyAmerica are located in North Carolina, and it is uncontested that the North Carolina courts can exercise personal jurisdiction over the remaining defendants in this case. It is also uncontested that the majority of the events underlying this action occurred in North Carolina. In fact, the plaintiffs have been able to offer only two tangential connections between this lawsuit and Delaware.

1. The Sterling Acquisition.

First, the plaintiffs seem to contend that because Scott and another defendant traveled to Delaware to give testimony before the Bankruptcy Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728150 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

concerning the acquisition of Sterling, a "substantial part of the events or omissions giving rise to the claim[s]" in the complaint occurred in Delaware. As a result, the plaintiffs contend, venue is appropriate in this district. *See* 28 U.S.C. § 1391(b)(2) (1994).

However, even if the court were to conclude that the limited number of visits made to Delaware for the purposes of acquiring Sterling during a bankruptcy proceeding were truly "substantial" as required by Section 1391, the statute also requires the conduct to "giv[e] rise" to the plaintiffs' claim. By the very terms of the complaint, it is not the acquisition of the Sterling assets that gives rise to the plaintiffs' claims. Instead, it is treatment of these assets *after* the acquisition which serves as the basis for the plaintiffs' complaint. The plaintiffs do not allege that any of these activities occurred in Delaware. Thus, their argument is unavailing.

2. The amendment of PhyAmerica's certificate of incorporation.

Second, the plaintiffs appear to argue that since Delaware law governed the amendment of PhyAmerica's certificate of incorporation, venue is appropriate in Delaware.

***3** Admittedly, PhyAmerica is a Delaware corporation. As a result, its certificate of incorporation was required to be amended pursuant to Delaware law. There, however, does not appear to be any dispute that the events which actually gave rise to the amendment and which, therefore, serve as the basis for the instant claims occurred in North Carolina. In other words, although the officers, board of directors, and the shareholders may have been required to act in accordance with Delaware law when amending PhyAmerica's certificate of incorporation, their actions related to the amendment did not occur in Delaware. Instead, they occurred in North Carolina.

3. Summary.

Given this record, the court questions whether a substantial part of the events giving rise to the plaintiffs' claims occurred in Delaware. It seems that the vast majority of the conduct which serves as the basis for the plaintiffs' complaint actually occurred in North Carolina. As a result, the court concludes that this action could have originally been brought in the Middle District of North Carolina. *See Affymetrix Inc., v. Synteni, Inc.*, 28 F.Supp.2d 192, 196 (D.Del.1998) (asking, *inter alia*, whether the forum can exercise personal jurisdiction over the defendants and whether a substantial portion of the events giving rise to the lawsuit occurred there). Thus, the defendants have satisfied the first element of the Section 1404 test.

B. The Balance of Convenience and the Interest of Justice Weigh in favor of Transfer.

The defendants have also satisfied the second element of the Section 1404 test by demonstrating that the balance of convenience weighs heavily in favor of transfer.

As mentioned earlier, PhyAmerica is principally based in North Carolina. As a result, many of the witnesses with knowledge of the events giving rise to this lawsuit are located there. These individuals would not appear to be subject to compulsory process in Delaware. *See* Fed.R.Civ.P. 45(b)(2) (2000). Furthermore, a majority of the shareholders in this action are residents of North Carolina. And, as the plaintiffs admit, their state law derivative claims based on alleged breaches of fiduciary duties are the "thrust" of this action. FN4

FN4. In fact, the only basis for the exercise of original jurisdiction by this court is the federal question of whether Scott, Poulsen, and National Century violated the RICO statute. However, it does not appear as if a single one of the predicate acts supporting the RICO allegations occurred in Delaware. Indeed, it does not appear as if any of the factual allegations which serve as the foundation for the RICO claim have any connection to Delaware whatsoever. Instead, most of the events seem to have occurred in North Carolina or, possibly, Ohio. The alleged misconduct also seems to directly or indirectly involve interests, both private and public, in North Carolina.

Indeed, as previously noted, the only connection between Delaware and the acts giving rise to the plaintiffs' claims are (1) the acquisition of Sterling during Chapter 11 proceedings before the Bankruptcy Court and (2) the fact that Delaware law governed the amendment of PhyAmerica's certificate of incorporation. However, there are no allegations that these acts breached the defendants' fiduciary duties to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728150 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

the shareholders of PhyAmerica or are part of the claimed racketeering activities by Scott, Poulsen, and National Century.

Despite this lack of ties between Delaware and this action, the plaintiffs contend that transferring the case would work a "dramatic and unwarranted change in the law" by effectively closing off the federal courts in this district to breach of fiduciary claims. The court disagrees. The plaintiffs' argument boils down to the contention that because this court may exercise personal jurisdiction over a Delaware corporation, venue is likewise appropriate in this district. The court has rejected this argument before, *see* *Affymetrix*, 28 F.Supp.2d at 207-08, and it will do so again.

***4** Therefore, even though the plaintiffs correctly argue that their choice of forum is a "paramount consideration," *see* *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), this lone factor does not prevent the court from transferring this action, especially when the balance of convenience tips as strongly in favor of transfer as it does in this case. *See* *Affymetrix*, 28 F.Supp.2d at 198-99. As the court has explained, none of the events giving rise to the plaintiffs' claims occurred in substantial, indeed, in *any* part in the District of Delaware. On the other hand, the majority of the events giving rise to this action occurred in North Carolina, which is the location of the principal offices of PhyAmerica and, as a result, the location of many of the witnesses. These factors weigh heavily in the court's transfer analysis. Furthermore, the court notes that Bosco and McGee are citizens of Ohio and Illinois, respectively. Therefore, they will have to litigate in a distant forum wherever this case is tried. *See* *Minstar, Inc. v. Laborde*, 626 F.Supp. 142, 146 (D.Del.1985). Requiring them to travel to North Carolina, as opposed to Delaware, will not unduly inconvenience them.

III. CONCLUSION.

Because this action could have originally been brought in the Middle District of North Carolina and because the balance of convenience weighs heavily in favor of transfer, the court will grant the defendants' motion.

For these reasons, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Transfer (D.I.33) is GRANTED; and

2. This matter shall be TRANSFERRED to the Middle District of North Carolina.

D.Del.,2000.
Bosco v. Scott
Not Reported in F.Supp.2d, 2000 WL 1728150 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00211 (Docket) (Mar. 23, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H
Briefs and Other Related Documents
Cashedge, Inc. v. Yodlee, Inc.D.Del.,2006.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.
CASHEDGE, INC., Plaintiff,
v.
YODLEE, INC., Defendant.
**No. Civ.A.06-170 JJF.**

July 19, 2006.

Arthur G. Connolly, III, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, Drew M. Wintringham, III, and Mark W. Rueh, of Clifford Chance Rogers & Wells LLP, New York City, New York, for Plaintiff, of Counsel.
William J. Marsden, Jr., and Kyle Wagner Compton, of Fish & Richardson, P.C., Wilmington, Delaware, David M. Barken, and Craig R. Compton, of Fish & Richardson, P.C., Redwood City, California, for Defendant, of Counsel.

*MEMORANDUM OPINION*

FARNAN, J.
***1** Pending before the Court is Defendant's Motion To Transfer (D.I.12). For the reasons discussed, the Motion will be granted.

I. BACKGROUND

Plaintiff was issued United States Patent No. 7,013,310 ("the '310 patent"), entitled "Method And Apparatus For Retrieving And Processing Data" on March 14, 2006. That same day, Plaintiff filed its Complaint in this Court, alleging infringement of the '310 patent. (D.I.1). Defendant filed its Answer and Counterclaim on April 4, 2006, and stated its intent to file a motion to transfer. (D.I.5). On May 4, 2006, Defendant filed its Motion to Transfer. (D .I. 12).

Defendant's Motion to Transfer is based on a pending action in the Northern District of California, Case No. C-05-1550-SI. On April 14, 2005, Defendant filed a patent infringement action in the Northern District of California, alleging that Plaintiff infringed several of its U.S. Patents. In response, Plaintiff filed an action in the same court, seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the patents asserted in Defendant's case and additional patents. Those two actions were consolidated into one nine-patent case ("the California action"). The California court conducted a Markman hearing on April 26, 2006.

II. PARTIES' CONTENTIONS

By its Motion, Defendant contends that, pursuant to 28 U.S.C. § 1404(a), the Court should transfer this action to the Northern District of California. In support of this contention, Defendant argues that Plaintiff's allegations of infringement of the '310 patent are related to the allegations in the California action. Further, Defendant contends that certain patents in the California action are prior art to Plaintiff's '310 patent and form the basis of Defendant's inequitable conduct defense.[FN1] In response, Plaintiff contends that the Court should deny the Motion because Plaintiff chose Delaware, the California action is unrelated, and judicial economy would not be served by transfer.

FN1. Defendant alleges that, at a minimum, United States Patent Nos. 6,317,783 ("the '783 patent"), 6,199,077 ("the '077 patent"), and 6,412,073 ("the '073 patent") are material prior art to Plaintiff's '310 patent. (D.I. 5 at ¶ 23).

III. DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiff could have brought the instant action in the Northern District of California, the Court's only task is to determine whether the factors enumerated in Section 1404(a) warrant a transfer under the circumstances.

The Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice,

(2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. *Id.* at 879. The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id.* at 879-80. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all the aforementioned interests. *Id.* at 883. The burden is on the movant to establish that the balance of the interests weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999).

A. *PRIVATE INTERESTS*

***2** Although the plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1920), when the plaintiff lacks a rational and legitimate reason to litigate in the forum, the transfer of a case to a more appropriate forum is less inconvenient. *Brunswick Corp. v. Precor Inc.*, 2000 U.S. Dist. LEXIS 22222, at *7 (D.Del. Dec. 12, 2000); *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E2O Communs., Inc.*, 2002 U.S. Dist. LEXIS 5653, C.A. No. 01-309 JJF, at *7 (D.Del. March 26, 2002). Accordingly, the first factor weighs against transfer, and Defendant must demonstrate that the other *Jumara* factors strongly favor a transfer to California.

The Court concludes that the other private interest factors weigh in favor of transfer. Here, both parties are Delaware corporations with principal places of business outside Delaware. Plaintiff is headquartered in New York City, and Defendant is headquartered in Redwood City, California. Both parties maintain offices in the Northern District of California. Also, there are likely witnesses, such as former employees, that still reside in the Northern District of California. The location of books and records is neutral as neither party has argued that it would be unable to produce documents in either forum.

Importantly, the same parties are currently litigating in the Northern District of California. Although the Court understands that the California action and this action are different,[FN2] the technologies at issue all relate to data extraction, retrieval, or presentation through Internet technologies, such as web sites and web pages. The Northern District of California is more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies.

FN2. This action requires claim construction of the claim language of the '310 patent, which is not part of the California action. However, Defendant's patents-in-suit in the California action are relevant to its defenses and counterclaim in this action.

B. *PUBLIC INTERESTS*

The Court also concludes that the public interest factors weigh in favor of transfer. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *Brunswick*, 2000 U.S. Dist. LEXIS 22222, at *8. Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) a common field of prior art.

In this case, judicial efficiency regarding the ease, speed, or expense of trial strongly weigh in favor of transfer. The California action involves the same parties, similar technologies, and related patents-in-suit. The parties in the California action have already conducted a two-hour technology tutorial on April 19, 2006, argued Markman issues in nine patents on April 26, 2006, and commenced discovery on seemingly related products and technologies. Additionally, the Court concludes that public interests such as enforceability of the judgment, familiarity with state law in diversity actions, local

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

interests in deciding local controversies, and court congestion are neutral or non-applicable factors in this case. *Jumara*, 55 F.3d at 879-880. Accordingly, the interests of judicial efficiency and justice are best served by transferring this case to the Northern District of California.

IV. CONCLUSION

***3** In sum, for the reasons discussed, the Court concludes that the balance of the private and public interest factors support transferring this case to the Northern District of California where related litigation is pending. Accordingly, the Court will grant Defendant's Motion To Transfer (D.I.12).

An appropriate Order will be entered.

*ORDER*

At Wilmington, the *19* day of July 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Defendant's Motion To Transfer (D.I.12) is *GRANTED.*

D.Del.,2006.
Cashedge, Inc. v. Yodlee, Inc.
Slip Copy, 2006 WL 2038504 (D.Del.)

Briefs and Other Related Documents (Back to top)

- 2006 WL 850651 (Trial Pleading) Complaint for Patent Infringement (Mar. 14, 2006) Original Image of this Document (PDF)
- 1:06cv00170 (Docket) (Mar. 14, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d
Not Reported in A.2d, 2002 WL 244861 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 1

**C**
Mark Productions, Ltd. v. Stuffit of Long IslandDel.Ch.,2002.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
MARK PRODUCTIONS, LTD., et al.
v.
STUFFIT OF LONG ISLAND, et al.
**No. C.A. 18982.**

Feb. 4, 2002.

Dear Counsel:
Action was brought on license agreement concerning business of direct mail advertising. On plaintiffs' request for expedited preliminary injunction proceedings, the Court of Chancery, Stephen P. Lamb, Vice Chancellor held that plaintiffs were not entitled to expedited preliminary injunction proceedings.

So ordered.
West Headnotes
**Injunction 212 ⚷152**

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)4 Proceedings
212k152 k. Hearing and Determination.
Most Cited Cases
In action brought on license agreement concerning business of direct mail advertising, plaintiffs were not entitled to expedited preliminary injunction proceedings; plaintiffs waited more than six months after filing the complaint to request a schedule for a hearing on motion for preliminary injunction, and they failed to present a cogent explanation why injunctive relief was suddenly necessary.

LAMB, Vice Chancellor.
***1** Before me is plaintiffs' request to schedule a preliminary injunction. Because this application has been too long delayed, I deny the request.

This case was filed on June 29, 2001. The claims asserted arise out of a license agreement concerning the business of direct mail advertising and a related non-compete. The complaint seeks an order prohibiting the defendants from "engaging in any activity in violation of the License Agreement and specifically to prohibit any act which might constitute unilateral termination." The first request to schedule a motion for a preliminary injunction was not until January 9, 2002-more than six months after the filing of the complaint. During the interim period, evidently, the parties engaged in fruitless settlement discussions. In addition, one of the plaintiffs filed a voluntary bankruptcy petition under Chapter 11 in the United States Bankruptcy Court for the District of Delaware and began an adversary petition in that court seeking the same preliminary injunctive relief now sought here.

It is well settled that a motion for expedited proceedings requires that the plaintiff show, among other things, a "sufficient possibility of a threatened irreparable harm." FN1 Here, where there is no showing that the "threat" of irreparable harm is any different today than it was the day the complaint was filed, there is no reason to believe that any threatened injury is sufficiently imminent or irreparable to justify the "imposition upon defendants and the public of the extra and sometimes substantial costs of an expedited preliminary injunction proceeding." FN2

FN1. *Giammargo v. Snapple Beverage Corp.,* 1994 WL 672698, at *2 (Del. Ch., Nov. 15, 1994).

FN2. *Sonnet v. Plum Creek Timber Co.,* 1998 WL 749445, at *2 (De. Ch., Sept. 23, 1998).

Moreover, this court will refuse to schedule preliminary injunction proceedings where the plaintiff unreasonably delays in bringing on an application. For example, this court refused a motion for expedited proceedings where a complaint was filed two months after the announcement of the challenged transaction and the motion for expedited proceedings was filed an additional four months after that.FN3 Here, plaintiffs waited more than six month after filing of the complaint to request a schedule for a hearing on a motion for preliminary injunction. That delay, absent a cogent explanation why injunctive relief is now suddenly necessary, is more than enough to warrant denial of the request.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 244861 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 2

FN3. *Waterside Partners v. C. Brewer & Co.*, 1999 WL 135245 (Del.Ch., Mar.3, 1999).

The court will, of course, entertain a request for a prompt trial schedule if plaintiffs plan to proceed here rather than in the Bankruptcy Court. In that way, plaintiffs can pursue their claim for injunctive relief in the context of the consideration of the case on its merits.

Del.Ch.,2002.
Mark Productions, Ltd. v. Stuffit of Long Island
Not Reported in A.2d, 2002 WL 244861 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE

Positive
As of: Dec 13, 2006

**JOSEPH MEMMINGER, Plaintiff, v. INFOCURE CORPORATION, et al., Defendants.**

**Civil Action No. 00-707-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2000 U.S. Dist. LEXIS 22077**

**November 14, 2000, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff selling corporation's president filed an action alleging: (1) negligence, (2) conversion and trover, (3) breach of contract, (4) equitable fraud, (5) breach of fiduciary duty, and (6) negligent misrepresentation. Defendants, a purchasing corporation and a law firm, moved, pursuant to 28 U.S.C.S. § 1404(a), to transfer the action.

**OVERVIEW:** The court found that the factors weighing strongly in favor of transfer included: (1) the convenience of the witnesses, (2) the practical considerations regarding the law firm's motion to dismiss for lack of personal jurisdiction, and (3) Georgia's interest in resolving the controversy. Factors that weighed slightly in favor of transfer included: (1) the collective convenience of the parties, and (2) the Georgia court's familiarity with the applicable Georgia law. Meanwhile, no factors weighed against transfer. Therefore, the court concluded that transfer was warranted under the circumstances presented here.

**OUTCOME:** Defendants' motion to transfer was granted.

**CORE TERMS:** weigh, convenience, northern district, venue, resolving, turf, choice of forum, motion to dismiss, litigating, slightly, litigate, balancing, concede, fora, lack of personal jurisdiction, local interest, familiarity, non-party, travel, reside, registered, applicable state law, financial resources, public policies, length of time, legal issues, travel time, enforceability, unavailable, convenient

**LexisNexis(R) Headnotes**

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN1] See 28 U.S.C.S. § 1404(a).

***Civil Procedure > Venue > Individual Defendants***
***Civil Procedure > Federal & State Interrelationships > Erie Doctrine***
***Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > General Overview***
[HN2] The United States Court of Appeals for the Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that these books and records could not be produced in a certain forum. The factors also include six public interests for courts to con-

sider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all of the aforementioned interests.

***Civil Procedure > Venue > Motions to Transfer > General Overview***
[HN3] The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

***Civil Procedure > Venue > Motions to Transfer > General Overview***
[HN4] The "home turf" rule requires a plaintiff's choice of forum to be given even greater weight than usual if the chosen forum is the forum closest to a plaintiff's principal place of business in which personal service over the defendant can be obtained. The "home turf" rule does not affect the amount of deference given to a plaintiff's choice of forum. Rather, whether or not a plaintiff has brought an action on its "home turf" is one of the many factors courts should consider when balancing the convenience of the chosen forum.

***Civil Procedure > Venue > Motions to Transfer > General Overview***
[HN5] For purposes of transferring venue, large, multimillion dollar companies with national markets are not significantly burdened by having to litigate in a distant forum.

***Civil Procedure > Venue > Motions to Transfer > General Overview***
[HN6] Convenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate. Furthermore, the availability of fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit are the most important type of witnesses for purposes of venue transfer analysis. But, because the convenience to witnesses is only relevant in how it may affect their availability for trial, only non-party witnesses need be considered because the parties are required to procure their own employees' attendance at trial. The defendant, however, does not have to allege that the witnesses actually will be unavailable for trial to establish the necessary lack of convenience.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview***
***Civil Procedure > Venue > General Overview***
***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss***
[HN7] If a transfer of venue would eliminate a jurisdictional question and thus save judicial resources, such fact weighs in favor of transfer.

**COUNSEL:** Marc H. Snyder, Esquire, FRANK & ROSEN, New Castle, Delaware, for Plaintiff.

Alan L. Frank, Esquire, and Samantha A. Millrood, Esquire, FRANK & ROSEN, Philadelphia, Pennsylvania, for Plaintiff.

John H. Newcomer, Jr., Esquire, and Francis P. Newell, Esquire, MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP, Newark, Delaware, for InfoCure Corporation, Defendant.

Michael R. Smith, Esquire, David L. Green, Esquire, Of Counsel, KING & SPALDING, Atlanta, Georgia, for InfoCure Corporation, Defendant.

Keith E. Donovan, Esquire, SWARTZ, CAMPBELL & DETWEILER, Wilmington, Delaware, for Morris, Manning & Martin, LLP, Defendant.

Jeffrey B. McCarron, Esquire, and Richard J. Wall, Esquire, SWARTZ, CAMPBELL & DETWEILER, Philadelphia, Pennsylvania, for Morris, Manning & Martin, LLP, Defendant.

**JUDGES:** Joseph J. Farnan, Jr., District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

**MEMORANDUM OPINION**

November 14, 2000
Wilmington, Delaware

Joseph J. Farnan, Jr., District Judge.

Presently before [*2] the Court is Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia Pursuant to 28 U.S.C. §

1404(a) (D.I. 15). For the reasons stated below, the Court will grant Defendants' motion.

**BACKGROUND**

Plaintiff Joseph Memminger ("Plaintiff") was the President and principal shareholder of Scientific Data Management, Inc. ("SDM"), a Michigan corporation involved in developing, marketing, and supporting computer software customized specifically to assist in the management of physicians' offices. (D.I. 24 at 2). Plaintiff is a resident of Michigan. (D.I. 16 at 2). The Defendants include InfoCure Corporation ("InfoCure") and Morris, Manning & Martin ("MM&M") (hereinafter known collectively as "Defendants"). InfoCure is a Delaware corporation involved with healthcare software, with its principal place of business in Atlanta, Georgia. (D.I. 16 at 2). MM&M is a law firm also located in Atlanta, Georgia. (D.I. 16 at 2). In the Spring of 1999, InfoCure approached Plaintiff regarding InfoCure's interest in acquiring SDM. (D.I. 24 at 2). During this initial encounter, and at all times relevant to this litigation, MM&M served [*3] as legal counsel for InfoCure. n1 (D.I. 24 at 2).

n1 The MM&M lawyers involved in these negotiations included Richard Haury, Bradley T. Pruitt, and Duncan Spears. (D.I. 24 at 3).

Defendants negotiated with Plaintiff regarding this potential transaction for several months. (D.I. 16 at 1). These negotiations eventually culminated with the parties signing a Letter of Intent on July 27, 1999. (D.I. 24 at 3). The Letter of Intent was an agreement between Plaintiff, SDM, and InfoCure, in which InfoCure would acquire SDM in a stock-for-stock, reverse triangular merger. (D.I. 24 at 3). The relevant terms of this agreement provided that InfoCure would acquire and merge SDM into a wholly-owned subsidiary of InfoCure, and in exchange, Plaintiff would receive a number of shares of InfoCure's stock, the exact number of which was to be determined by a formula set forth in the Letter of Intent. (D.I. 24 at 3).

After the parties entered into the Letter of Intent, a period of due diligence commenced during which a "Registration [*4] Rights Agreement" was entered into between Plaintiff and InfoCure. (D.I. 24 at 4). This Registration Rights Agreement detailed the process by which Plaintiff was to obtain registration of his InfoCure shares, which was important to Plaintiff because he planned on selling most or all of these shares in early 2000. (D.I. 24 at 4). Plaintiff alleges that, upon representations from Defendants promising that Plaintiff's InfoCure shares would be available for public sale by mid-November of 1999, the transaction was closed on August 31, 1999, in MM&M's offices in Atlanta. (D.I. 24 at 4; D.I. 16 at 2).

The relationship between Plaintiff and Defendants deteriorated during the ensuing months. Plaintiff alleges that only one-half of his shares were registered on time, in October of 1999. (D.I. 24 at 6). By December of 1999, Plaintiff had purchased options on these shares of stock. (D.I. 24 at 8). These options required Plaintiff to sell the shares at a set price; but, if the stock price subsequently increased or decreased, Plaintiff would still be required to sell the shares at that set price. (D.I. 24 at 8). The price of the shares soon started to increase, and Plaintiff sought to "unwind" [*5] his position in the options market by repurchasing the options. (D.I. 24 at 8). Plaintiff's effort to "unwind" his position was thwarted, however, because his shares had been placed on "legal hold" and could not be negotiated. (D.I. 24 at 8). Plaintiff alleges that his inability to sell the shares caused him significant monetary loss. n2 (D.I. 24 at 8). Plaintiff further contends that Defendants informed Plaintiff that his unregistered shares - which constituted one-half of all of his InfoCure shares - could not be registered due to a "blackout window" caused by a "significant event." (D.I. 24 at 9). As a result, Plaintiff was forced to retain ownership of these shares for longer than he desired. (D.I. 24 at 9). Meanwhile, InfoCure's stock closed at an all-time high of $ 36.625 per share on January 24, 2000. (D.I. 24 at 9).

n2 Plaintiff's trading account had a negative balance of over $ 1,300,000 at this time. (D.I. 24 at 8).

During the ensuing months, Plaintiff was repeatedly told by Defendants that his unregistered [*6] shares still could not be registered. (D.I. 24 at 9). Not until May 10, 2000, did InfoCure's registration statement covering Plaintiff's shares become effective, thus enabling Plaintiff to sell them. (D.I. 24 at 9). At this point, however, InfoCure's stock price had dropped below $ 10 per share, again causing Plaintiff to suffer a significant monetary loss. (D.I. 24 at 9). Plaintiff subsequently filed this action in the United States District Court for the District of Delaware, alleging: (1) negligence, (2) conversion and trover, (3) breach of contract, (4) equitable fraud, (5) breach of fiduciary duty, and (6) negligent misrepresentation. (D.I. 1; D.I. 3). Defendants subsequently filed this motion, pursuant to 28 U.S.C. § 1404(a), seeking transfer to the United States District Court for the Northern District of Georgia. (D.I. 15).

**DISCUSSION**

**A. Legal Standard for Transfer of Venue Under 28 U.S.C. § 1404(a)**

[HN1] **Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it [*7] might have been brought." 28 U.S.C. § 1404(a). Since both parties agree that Plaintiff could have brought this action in the Northern District of Georgia, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer.**

[HN2] **The Court of Appeals for the Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that these books and records could not be produced in a certain forum. Id. at 879. The factors also include six public interests for courts to consider: (1) the [*8] enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. Id. at 879-80. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all of the aforementioned interests. Id. at 883.** [HN3] **The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).**

**B. Analysis of the Factors**

1. Plaintiff's Choice of Forum; Defendants' Preference; and Whether the Claim Arose Elsewhere

Although Jumara provides that the plaintiff's choice of forum, the defendant's preference, and whether or not the claim [*9] arose elsewhere, are separate factors for district courts to consider in deciding whether or not to transfer venue, these factors are afforded substantial weight during consideration of several other Jumara factors. Thus, in order to avoid considering these factors twice, the Court will defer consideration of them until later in the analysis. See Continental, 61 F. Supp. 2d at 131 n.7 (holding that these three factors are subsumed in Jumara's other factors); Motorola Inc. v. PC-Tel, Inc., 58 F. Supp. 2d 349, 357 n.10 (D. Del. 1999) (same); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197 (D. Del. 1998) (same).

However, the Court will initially address the "home turf" rule even though it is traditionally discussed when considering the weight that a plaintiff's choice of forum deserves. [HN4] The "home turf" rule requires a plaintiff's choice of forum to be given even greater weight than usual if the chosen forum is "the forum closest to a plaintiff's principal place of business in which personal service over the defendant can be obtained." Sunds Defibrator, Inc. v. Durametal Corp., 1997 U.S. Dist. LEXIS 1859, 1997 WL 74660, at *2 n.2 [*10] (D. Del. Jan. 31, 1997). The Court affirms other recent opinions of this Court declaring that the "home turf" rule does not affect the amount of deference given to a plaintiff's choice of forum. See e.g., Affymetrix, 28 F. Supp. 2d at 199. Rather, whether or not a plaintiff has brought an action on its "home turf" is one of the many factors courts should consider when balancing the convenience of the chosen forum. See Sunds, 1997 U.S. Dist. LEXIS 1859, 1997 WL 74660, at *2 n.2 (holding that Delaware's "home turf" rule has been subsumed by Jumara's factors). The Court therefore concludes that the "home turf" rule has retained little, if any, vitality as a separate doctrine since the Third Circuit's decision in Jumara.

2. Convenience of the Parties as Indicated by their Relative Physical and Financial Positions

Defendants concede they have the financial resources to litigate in Delaware, which is a fact that weighs against transfer. See Motorola, 58 F. Supp. 2d at 358 (holding that [HN5] large, multi-million dollar companies with national markets are not significantly burdened by having to litigate in a distant forum); Bering Diagnostics GMBH v. Biosite Diagnostics, Inc., 1998 U.S. Dist. LEXIS 531, 1998 WL 24354, [*11] at *5 (D. Del. Jan. 6, 1998)(same). Thus, unless Defendants can articulate "some unique or unexpected burden associated with defending this action," the convenience factor should not weigh significantly in favor of transfer. Motorola, 58 F. Supp. 2d at 358. Articulating such a burden is especially difficult when considering how technological advancements have minimized the difficulty of litigating matters in distant fora. See The Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 188-89 (D. Del. 1996). See also Motorola, 58 F. Supp. 2d at 358

n.12 (noting that the defendants need not attend courtroom proceedings other than the trial).

Defendants reside in Atlanta, Georgia, and Plaintiff resides in Michigan. Therefore, the amount of travel necessitated by litigating in Delaware compared to litigating in Georgia is significantly increased for Defendants. While Defendants would be required to travel from Georgia to Delaware if transfer is not granted, Plaintiff concedes he will only have one extra hour of travel time if required to travel to Georgia, as opposed to Delaware, which is an amount of time the Court deems "minimal" for [*12] purposes of venue transfer analysis. See Falco v. Alpha Affiliates, Inc., 1997 U.S. Dist. LEXIS 20122, 1997 WL 782011, at *3 (D. Del. Dec. 10, 1997). As a result, the Court concludes that it is more convenient for the parties to litigate this matter in Georgia. n3 But, because the extra burden imposed by increased travel time is not the kind of "unique or unexpected burden" that is required for parties with substantial financial resources, the Court concludes that this added convenience weighs only slightly in favor of transfer.

n3 The Court reaches this conclusion even though it is somewhat troubled by Defendants' assertion of inconvenience in having to litigate in Delaware, when Defendant InfoCure is incorporated in Delaware - a move presumably deemed "convenient" for purposes of being governed by the provisions of Delaware's management-friendly corporate law. (D.I. 24 at 14).

3. Convenience of the Witnesses as to their Availability at Trial

[HN6] Convenience of the expected trial witnesses is the most important factor to consider [*13] when determining whether or not transfer is appropriate. See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 510 (D. Del. 1999). Furthermore, the availability of "fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit" are the most important type of witnesses for purposes of venue transfer analysis. Affymetrix, 28 F. Supp. 2d at 203. But, because the convenience to witnesses is only relevant in how it may affect their availability for trial, only non-party witnesses need be considered because the parties are required to procure their own employees' attendance at trial. See id. The defendant, however, does not have to allege that the witnesses actually will be unavailable for trial to establish the necessary lack of "convenience." Mentor Graphics, 77 F. Supp. 2d at 511 (noting that, if availability of a witness "cannot be guaranteed" in the present forum, this fact weighs in favor of transfer). See also Continental, 61 F. Supp. 2d at 132, 132 n. 8 (ruling that, because five witnesses were located in the forum to which the defendant sought transfer, while [*14] the current forum only contained one witness, the convenience of witnesses factor weighed in favor of transfer).

Defendants assert that three material non-party fact witnesses are located in Georgia. No representations have been made regarding witnesses located in Delaware. Although Plaintiff points out that two of these three witnesses would be subject to Rule 30(b)(6) deposition notices, this is not the equivalent to witnesses being subject to compulsory process in this forum. See United States v. Ismaili, 828 F.2d 153, 171 (3d Cir. 1987) (recognizing the difference between a witness being subject to the court's subpoena power and her availability for purposes of a deposition). In view of the location in Georgia of three non-party fact witnesses, the Court concludes that this factor weighs strongly in favor of transfer.

4. Location of Books and Records

Defendants concede that, while all the books and records relevant to the case are located in Atlanta, Georgia, they would be capable of being produced if this case is tried in Delaware. (D.I. 16 at 11). Therefore, the Court concludes that this factor weighs neither for nor against transfer.

5. Enforceability of [*15] a Judgment

Both parties concede that a judgment in this District or in the Northern District of Georgia would be equally enforceable. Thus, the Court concludes this factor weighs neither for nor against transfer.

6. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

Defendants argue that, because MM&M has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (D.I. 22), this fact weighs in favor of transfer. (D.I. 16 at 17). Plaintiff responds by arguing that MM&M is clearly subject to this Court's jurisdiction and Defendants' assertions to the contrary are frivolous.

The Court has previously ruled that, without expressing any opinion on the merits of a motion to dismiss for lack of personal jurisdiction, [HN7] if a transfer of venue would eliminate a jurisdictional question and thus save judicial resources, such fact weighs in favor of transfer. See Mentor Graphics, 77 F. Supp. 2d at 512, 513 n.10. Even if Plaintiff ultimately prevails on the jurisdictional issue, it is not clear to the Court at this time that MM&M's motion to dismiss lacks merit. n4 If MM&M's motion to dismiss [*16] has merit, a transfer of venue would avoid duplicitous litigation and save both

parties substantial time and money. In these circumstances, the Court finds that the practical considerations involved in resolving this issue weigh in favor of transfer.

n4 It is possible that an evidentiary hearing would be needed to determine the extent of MM&M's contacts with Delaware before the Court could rule on this issue.

7. The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

Defendants have submitted statistics indicating that the average length of time to trial in this District is 19 months, while the average length of time to trial in the Northern District of Georgia is 23 months. (D.I. 16). Plaintiff further observes that under Local District Court Rule 16.2, Delaware's Civil Justice Expense and Delay Reduction Plan, and the Civil Justice Reform Act of 1990, trials in this District are supposed to commence within 12 to 18 months after a complaint is filed. (D.I. 24 at 19). The Court [*17] has previously ruled that a two month average difference in respective times to trial among the two fora weighs against transfer "only slightly." Affymetrix, 28 F. Supp. 2d at 206. The Court has previously found that a nine month differential was only minimally significant due to the fact that the duration of time to trial varies greatly among different types of cases and can be affected by many different factors. Mentor Graphics, 77 F. Supp. 2d at 513-14. The Court finds the data in support of each side's argument demonstrates that this factor is insignificant in the Court's balancing, and therefore, the Court concludes this factor has no impact on the transfer analysis.

8. Local Interest in Deciding Local Controversies at Home

Defendants argue that the Northern District of Georgia has a significant interest in deciding this controversy because (1) Defendants' principal places of business are located in Georgia, (2) all of the relevant conduct occurred in Georgia, and (3) the contract involved is governed by Georgia law. (D.I. 16 at 14). Plaintiff responds by relying on Banco Nominees Ltd. v. Iroquois Brands, Ltd., 748 F. Supp. 1070 (D. Del. 1990) [*18] to demonstrate that Delaware has a strong interest in ensuring its corporations adhere to their contractual obligations. (D.I. 24 at 19). In the Banco case, the Court recognized Delaware's interest, but concluded that Delaware's interest was "greatly outweighed" by the other forum's (i.e., England's) interest in resolving a dispute between entities located within its borders and where all the relevant facts occurred. Banco, 748 F. Supp. at 1077. Further, the Banco Court concluded that the only connection the case had to Delaware was that the defendant was incorporated there, and that this connection alone did not override England's interest in resolving the matter. Id.

The facts in the present case are similar to those in Banco, and the Court concludes that Georgia's interest in resolving this action outweighs Delaware's interest in resolving it. See also Lopez v. Consolidated Rail Corp., 1997 U.S Dist. LEXIS 15267, 1997 WL 633752, at *2 (E.D. Pa. Sept. 30, 1997) (noting that the public interest is best served when a jury is composed of citizens "drawn from the community where the plaintiff resides and works, the incident occurred, and the defendant is an employer"). [*19] Thus, the Court concludes that the local interest weighs in favor of transfer.

9. Public Policies of the Fora

Defendants argue that denying transfer in this case would only "encourage forum shopping of the worst kind." (D.I. 16 at 14). The Court, however, is not persuaded that Plaintiff's choice of forum violates any public policy concerns. Defendants' only assertion implicating any public policy is that Plaintiff chose to litigate in Delaware solely to drive up Defendants' litigation costs. (D.I. 16 at 15). Plaintiff, however, has articulated other legitimate reasons for its choice of forum, such as litigating in a forum closer to Plaintiff's counsel and litigating in a forum in which cases proceed more quickly. (D.I. 24 at 20). On this record, the Court concludes that this factor does not weigh for or against transfer.

10. Trial Judge's Familiarity with the Applicable State Law

Plaintiff argues that the governing Georgia law is relatively straight forward and should not be problematic for the Court to apply. (D.I. 24 at 20). However, the District Court for the Northern District of Georgia is obviously more familiar with Georgia state law. Therefore, the Court concludes this factor [*20] weighs in favor of transfer, although only slightly, due to the lack of complexity of the relevant legal issues. See Continental, 61 F. Supp. 2d at 132-33 (concluding that, because the legal issues were straight-forward, this factor weighed neither for nor against transfer).

**C. Balancing the Factors**

Balancing all of Jumara's factors, as modified by subsequent rulings, the Court concludes that this case should be transferred to the Northern District of Georgia. The Court finds that the factors weighing strongly in favor of transfer include: (1) convenience of the witnesses, (2) practical considerations regarding MM&M's motion to dismiss for lack of personal jurisdiction, and (3) Georgia's interest in resolving the controversy. Fac-

tors that weigh slightly in favor of transfer include: (1) the collective convenience of the parties, and (2) the Georgia Court's familiarity with the applicable Georgia law. Meanwhile, no factors weigh against transfer. Therefore, the Court concludes that transfer is warranted under the circumstances presented here.

**CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion to Transfer Action to United [*21] States District Court, Northern District of Georgia Pursuant to 28 U.S.C. § 1404(a) (D.I. 15).

An appropriate Order will be entered.

**ORDER**

At Wilmington this 14 day of November, 2000, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that Defendants' Motion to Transfer Action to United States District Court, Northern District of Georgia Pursuant to 28 U.S.C. § 1404(a) (D.I. 15) is GRANTED.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

**C**

Briefs and Other Related Documents

Nilssen v. Osram Sylvania, Inc.D.Del.,2001.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

Ole K. NILSSEN and Geo Foundation, Ltd., Plaintiffs,

v.

OSRAM SYLVANIA, INC. and Osram Sylvania Products, Inc., Defendants.

**No. Civ.A. 00-695-JJF.**

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Harry J. Roper, Raymond N. Nimrod, John E. Titus, and Jonathon Hill, of Roper & Quigg, Chicago, Illinois, for Plaintiffs, of counsel.

Richard K. Herrmann, of Blank Rome Comisky & Mccauley LLP, Wilmington, Delaware, Brian D. Sieve, Thomas G. Pasternak, Andrew M. Johnstone, and Kevin J. O'Shea, of Kirkland & Ellis, Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

***1** Presently before the Court is Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15). For the reasons stated below, the Court will grant the motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident with his principal place of business in Chicago, Illinois.[FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is engaged in the business of "identifying, formulating plans for, developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including electronic ballasts." (D.I. 1 at ¶ 8). Geo Foundation ("Geo") is a non-profit corporation incorporated in the Cayman Islands, British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and Geo collectively referred to as "Plaintiffs").

FN1. Mr. Nilssen contends that his ongoing business in Illinois, Innovations Center, "is now defunct." (D.I. 24, Exh. 1 at ¶ 8). However, Plaintiffs' Complaint alleges that Mr. Nilssen is currently engaged in "business opportunities." (D.I. 1 at ¶ 4). Further, Mr. Nilssen admits that he still travels to Illinois regularly to "bring closure to [his] other business dealings that take place in Illinois." (D.I. 24, Exh. 1 at ¶ 8). The Court concludes that, for purposes of the instant motion, this record sufficiently establishes that Mr. Nilssen's principal place of business is in Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania Products, Inc. (collectively "Defendants") are Delaware corporations with their principal places of business in Danvers, Massachusetts. (D.I. 13 at ¶ 6-7). Defendants are engaged in the business of making and selling electronic ballasts. (D.I. 13 at ¶ ¶ 11).

Plaintiffs filed the instant action against Defendants on August 1, 2000. In their Complaint, Plaintiffs contend that Defendants wilfully infringe twenty-six patents that were invented and are owned by Mr. Nilssen and of which Geo holds exclusive licenses.[FN2] (D.I. 1 at ¶ ¶ 9, 10, 13). On January 24, 2001, Defendants filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I.15).

FN2. These patents include U.S. Patent No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754; U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at ¶ 9).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.,* C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)).[FN3] These factors also include several public interests:

> FN3. *Jumara* also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id.*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

***2** *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and some of Defendants' accused products are sold in Delaware.[FN4] (D.I. 16 at 5). *See Memminger,* slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30 (S.D.N.Y.1998)(holding that the Southern District of New York's connection to the litigation was "tenuous" for purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

> FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special "connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. Motorola Inc. v. PC-Tel. Inc., 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.*, 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara*, 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics*, 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

***3** In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene-an employee of Mr. Nilssen, (2) Robert Schneider-a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.*, 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art.[FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

analysis.[FN7] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing Motorola, 58 F.Supp.2d at 359; *Sunds Defribator, Inc. v. Durametal Corp.*, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defribator*.

C. Practical Considerations

***4** The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.*, 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois.[FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer.[FN10]

FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.*, Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.*, Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**
Page 5

24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.

After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED.*

D.Del.,2001.
Nilssen v. Osram Sylvania, Inc.
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00cv00695 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d
Not Reported in A.2d, 1995 WL 54428 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 1

H
Union Pacific Corp. v. Santa Fe Pacific Corp.Del.Ch.,1995.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
Re UNION PACIFIC CORPORATION
v.
SANTA FE PACIFIC CORPORATION, et al.;
In re SANTA FE PACIFIC CORPORATION SHAREHOLDER LITIGATION.
**Nos. CIV. A. 13778, CIV. A. 13587.**

Submitted Jan. 27, 1995.
Decided Jan. 30, 1995.

Stephen P. Lamb, Skadden Arps Slate Meagher & Flom, Wilmington.
David J. Margules, Klehr, Harrison, Harven, Branzburg & Ellers, Wilmington.
Pamela S. Tikellis, Chimicles Jacobsen & Tikellis Wilmington.
Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington.
Anne C. Foster, Richards, Layton & Finger, Wilmington.
Kenneth, J. Nachbar, Morris Nichols Arsht & Tunnell, Wilmington.
JACOBS, Vice Chancellor.

***1** Pending are applications for expedited discovery and an expedited hearing on the plaintiffs' motions for a preliminary injunction in these actions brought by Union Pacific Corporation ("Union Pacific") and the shareholder plaintiffs. The motions for injunctive relief and to expedite were filed on Thursday, January 26, 1995. Because the defendants requested time to submit opposing papers, the motions to expedite were not presented until late Friday afternoon, January 27, 1995. I reserved decision in order to consider the parties' voluminous submissions. The Court concludes that because of the plaintiffs' laches, it has no realistic choice but to deny the motions.

Ordinarily, a detailed opinion on a motion of this kind would be unnecessary. However, given the public interest in this controversy and the magnitude of what is at stake, an explanation of the Court's reasoning is appropriate. Hence, this letter.

I.

This Court routinely entertains applications for preliminary injunctive relief on an expedited basis. However, on occasions where the moving party has not shown good cause, the Court has declined to entertain the injunction application as a matter of discretion. Thus, in October of last year, the Court refused to schedule earlier motions by the plaintiffs for preliminary injunctive relief in this case. The reason was that such relief in advance of a shareholders' meeting was unnecessary, because the validity of the challenged merger transaction could be determined at a final hearing held after the shareholders' meeting, but before the merger would be consummated. *Union Pacific Corp. v. Santa Fe Pacific Corp., et al.,* Del.Ch., C.A. No. 13778, Jacobs, V.C. (Oct. 18, 1994).

This Court has also declined to entertain applications for expedited injunctive relief where the applicant has delayed unreasonably in presenting the application. *See, e.g., DiRocca v. Roessner,* Del.Ch., C.A. No. 8107, Berger, V.C. (Aug. 12, 1985), *appeal refused,* Del.Supr. No. 273, 1875 (Aug. 14, 1985); *Hecco Ventures v. Sea-Land Corp.,* Del.Ch., C.A. No. 8486, Jacobs, V.C., slip op. at 13 (May 19, 1986); *In re Blockbuster Entertainment Corp. Shareholders Litig.,* Del.Ch., C.A. No. 13319, Berger, V.C. (March 1, 1994); *Cottle v. Carr,* Del.Ch., C.A. No. 9612, Allen, C., slip op. at 7 (Feb. 9, 1988); *Bacine v. Scharffenberger,* Del.Ch., C.A. No. 7862, Brown, C., slip op. at 9-10 (Dec. 11, 1984). Regrettably, that is what has occurred this time around.

II.

A.

Since October 1994, Union Pacific and Burlington Northern, Inc. ("BNI") have been engaged in a bidding contest to acquire Santa Fe Pacific Corporation ("Santa Fe"). Since then, both bidders have increased and modified their bids on several occasions. As a result, the present posture of the contest is as follows: Union Pacific's current offer, announced on January 17, 1995, is an all-cash tender

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 54428 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 2

offer for all Santa Fe shares at $18.50 per share. That transaction would be followed by a second-step merger at the same price. The current BNI transaction, announced on December 18, 1994, is somewhat more complicated. The first stage of that transaction is a joint BNI/Santa Fe partial tender offer to purchase up to 63 million shares (approximately 33%) of Santa Fe's outstanding stock.FN1 The second stage would be a stock-for-stock merger, contingent on ICC approval, in which the remaining Santa Fe shares would be exchanged for .4 shares of BNI stock.

FN1. Of those shares, 25 million would be purchased by BNI (which would then own 16% of Santa Fe's outstanding shares), and 38 million shares would be repurchased by Santa Fe with $760 million of borrowed funds.

***2** The Santa Fe board has rejected Union Pacific's bid and has refused to exempt that bid from the coverage of a shareholder rights plan, or "poison pill," that it adopted on November 28, 1994. The Santa Fe board has, however, approved BNI's latest proposal, and has exempted that proposal from its shareholder rights plan.

The BNI/Santa Fe proposed transaction is conditioned upon the prior approval of Santa Fe stockholders. Those shareholders will vote on that proposal at a special meeting that is scheduled for February 7, 1995. Since late December, Santa Fe management and Union Pacific have been engaged in a heated proxy contest to obtain voter support sufficient to approve (or defeat) the BNI proposal. The Court is informed by the parties that at the present moment the outcome of the proxy contest is "very close."

On January 18, 1995, the day after announcing its current offer, Union Pacific asked this Court for leave to file a second amended complaint. That complaint articulated Union Pacific's present injunction claim that because of the existence of the discriminatory poison pill, Santa Fe's stockholders would be coerced into voting for the BNI/Santa Fe transaction.

On January 24, 1995, Santa Fe and BNI announced the signing of an agreement with Allegheny Corp. (a large Santa Fe shareholder) that would amend the rights plan in order to allow Allegheny to purchase up to 14.9% of Santa Fe's shares without triggering the poison pill. In return, Allegheny agreed to vote for the BNI/Santa Fe transaction at the February 7, 1995, stockholders' meeting.

On January 26, 1995-only eleven days before the stockholders meeting-the plaintiffs moved for mandatory preliminary injunctive relief. A principal ground for those applications is that Santa Fe's discriminatory deployment of the "poison pill" will coerce Santa Fe shareholders to vote in favor of the BNI/Santa Fe transaction, which plaintiffs contend is inferior to the Union Pacific transaction.FN2 A coerced vote, it is argued, will cause irreparable harm because it will foreclose Santa Fe stockholders from choosing the Union Pacific transaction, and also because the BNI/Santa Fe transaction will result in an irreversible restructuring of Santa Fe.

FN2. It is claimed that Santa Fe's discriminatory use of the "pill" sends a signal to Santa Fe shareholders that it would be futile to tender into the Union Pacific offer, which will never close as long as the Santa Fe Board opposes it.

Accordingly, the plaintiffs ask this Court to issue a mandatory preliminary injunction-by no later than February 7, 1995-directing Santa Fe's board to redeem the "poison pill" rights or, alternatively, to amend the rights plan to exempt Union Pacific's proposed transaction from its coverage. The shareholder plaintiffs, on the other hand, seek mandatory and prohibitory injunctive relief that is inconsistent with, and broader than, that sought by Union Pacific. The shareholder plaintiffs seek an order (i) directing Santa Fe's board to keep the pill "in place" and to make it applicable to BNI's (as well as Union Pacific's) offer until the board has engaged in a "fair process" designed to "achieve the highest available value for the Santa Fe public shareholders" and (ii) enjoining the "wrongful conduct" of the Santa Fe board in failing to "explore and negotiate [the Union Pacific offer] in good faith." (Shareholder Plaintiffs' Motion for Expedited Proceedings; Tikellis Aff. ¶ 2.)

B.

***3** The two different kinds of alleged wrongdoing that are claimed to permit preliminary injunctive relief are (i) the coercive effect on the forthcoming shareholder vote of the discriminatory use of Santa Fe's rights plan, and (ii) the Santa Fe board's improper refusal to treat the Union Pacific bids

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

evenhandedly and on the same basis as BNI's. However, the facts underlying both claims have been known to the plaintiffs for some time.

To begin with, the rights plan, *with its discriminatory feature,* has existed since November 28, 1994. Since then, BNI's proposals-but not Union Pacific's-have been exempted from the rights plan's coverage. That was the fact on December 18, 1994-almost six weeks ago-when BNI and Santa Fe announced their joint tender offer and second-step merger, and it was also the case on December 23, 1994, when the joint tender offer was formally commenced. Yet plaintiffs took no action, even though they knew then (or shortly thereafter) of the repidly-approaching February 7, 1995, meeting at which Santa Fe shareholders would be asked to approve the BNI/Santa Fe transaction.

To these events Union Pacific responded on January 17, 1995-almost one month later-when it announced its increased (present) $18.50 all cash, all shares tender offer, and then on January 18, 1995, when Union Pacific moved to file a second amended complaint. In its amended pleading, Union Pacific alleged the precise claims that form the basis for the plaintiffs' preliminary injunction applications.[FN3]

> FN3. The amended complaint alleges that Santa Fe's directors breached their fiduciary duties (*inter alia* ) by (i) entering into the December 18, 1994, BNI merger agreement and refusing to negotiate fairly with Union Pacific, and (ii) refusing to redeem Santa Fe's "poison pill" rights plan, thereby coercing stockholders into voting for the BNI merger agreement at the February 7, 1995 stockholders' meeting.

Significantly, plaintiffs did not request expedited proceedings or file a motion for a preliminary injunction on January 18, although they could have. Moreover, the shareholder plaintiffs (unlike Union Pacific) did not seek to amend their complaint. Had the plaintiffs applied for injunctive relief on January 18, they would have increased by ten days, *i.e.,* nearly doubled, the time available for their motion to be presented, heard, and decided.

In short, the plaintiffs were in a position to request injunctive relief on January 18, 1995, and (as far as the record shows), perhaps as early as December 23, 1994. The plaintiffs' only proffered reason for not doing so-that Santa Fe's board did not reject Union Pacific's bid until January 23-is no excuse. According to Union Pacific's own complaint, the alleged coercion was threatened as early as January 18. Thus, the plaintiffs' injunctive claims existed on January 18, and in all likelihood weeks before. A board decision to approve Union Pacific's bid may have mooted that claim, but did not affect those claims' prior existence.

C.

Given the imminence of the February 7, 1995, shareholders meeting, it was essential that plaintiffs assert their injunction claims promptly. By waiting until now to do so, the plaintiffs delayed unreasonably, with the result that to grant their application would significantly prejudice the defendants' ability to respond adequately to the motion.

The parties' injunctive claims, if heard, would involve (i) an exploration of the coercive effect, if any, of Santa Fe's discriminatory use of its poison pill, and (ii) in the case of the shareholder plaintiffs, an exploration and evaluation of all actions of the Santa Fe board throughout the entire course of the bidding contest. Because mandatory preliminary relief is being requested, the application would be governed by the standards applicable to a grant of summary judgment. *TW Services, Inc. v. SWT Acquisition Corp.,* Del.Ch., C.A. No. 10427, Allen, C. (Mar. 2, 1989). The expedited schedule requested by plaintiffs would require that all document and deposition discovery, briefing (by four separate parties), oral argument and a decision-in the form of a written opinion-be completed by February 7, 1995; that is, in slightly more than one week.

***4** Such a schedule might be justified in other circumstances, but not in this case, which involves a $3.85 billion transaction and a contest for control of one of the country's largest railroad systems. In this case, the proposed expedited schedule is unprecedented and unreasonable. Indeed, it is probably impossible to achieve except at grave cost to the parties' ability to make an adequate presentation, and to the Court's ability to decide the case and craft an opinion that would be coherent and responsive to the parties' predictably complex positions.

Had the plaintiffs acted promptly, the Court would entertain the injunction application, even if the time available were unavoidably short. In such an event, *i.e.,* an emergency application that could not have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 54428 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 4

been presented earlier, the Court would fashion an appropriate procedure to overcome the time obstacle.[FN4] But that is not this case. Although the plaintiffs could have presented their injunction application long before now, they chose not to do so. Instead, for reasons about which the Court can only speculate, [FN5] the plaintiffs delayed that application until just eleven days before the scheduled vote. For that reason, those applications will not be entertained on the schedule demanded.

FN4. The Court might, for example, treat the application as one for a temporary restraining order, which is normally heard on short notice, without discovery, and on an extremely limited record.

FN5. Given the competence and sophistication of plaintiffs' counsel, who are fully knowledgeable of injunction practice in this Court, it is apparent that the chosen manner of proceeding was not the product of oversight. Union Pacific chose to do battle on the proxy front, not in Court, and the shareholder plaintiffs chose to follow Union Pacific's lead. Only after Allegheny Corp. and Santa Fe entered into an agreement to amend the rights plan to enable Allegheny to purchase up to 14.9% of Santa Fe's shares-which would then be voted in favor of the proposed merger-did the plaintiffs decide to move for injunctive relief. The inescapable inference is that the injunction motions were motivated by a concern that the Allegheny/Santa Fe agreement might tip the scales against Union Pacific in a close contest.
It also should be pointed out that even if the shareholders were to approve the BNI/Santa Fe merger, that transaction would not occur until 1996, due to the need for regulatory approval. Therefore, the plaintiffs' claims could be heard and decided at a final hearing on a more reasonable timetable. Even if the joint BNI/Santa Fe tender offer did occur, 62% of the Santa Fe shares would still remain in public hands, so that if the proposed merger were invalidated, the opportunity for Santa Fe to engage in a "control" transaction would still exist.

Accordingly, the plaintiffs' motions for expedited proceedings are denied. IT IS SO ORDERED.

Del.Ch.,1995.
Union Pacific Corp. v. Santa Fe Pacific Corp.
Not Reported in A.2d, 1995 WL 54428 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 167720 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 1

**C**
Wand Equity Portfolio II L.P. v. AMFM Internet Holding Inc.Del.Ch.,2001.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
WAND EQUITY PORTFOLIO II L.P. and Wand Affiliate Fund L.P.
v.
AMFM INTERNET HOLDING INC., AMFM Inc., Clear Channel Communications, Inc., Randall T. Mays, Mark P. Mays, L. Lowry Mays, and Kenneth E. Wyker, and AMFM Interactive Inc.
**No. 18162.**

Feb. 7, 2001.

Dear Counsel:
LAMB, Vice-Chancellor.
***1** Plaintiffs Wand Equity Portfolio II and Wand Affiliate Fund (collectively "Wand Partners") have moved to expedite proceedings by shortening the time for defendants to answer the complaint, directing the parties to conduct discovery on an expedited basis, and scheduling a prompt hearing on their motion for preliminary injunction. For the reasons explained, *infra*, the motion is denied.

*Background*

In 1999, Wand Partners entered into a series of agreements with defendant AMFM Inc., one of the country's largest owners of radio stations, by which Wand Partners acquired an 8% equity interest (and unexercised warrants to acquire up to 10% on a fully-diluted basis) in AMFM Interactive, Inc. ("AMFM*i*" ), an internet business that pairs a network of websites with AMFM Inc.'s radio stations. In these transactions, AMFM Inc. (through its wholly owned subsidiary AMFM Internet Holding, Inc.) acquired a 92% equity interest (90% fully diluted) in AMFM*i*.

Wand Partners and AMFM Holding also executed an Equity Ownership Agreement, limiting the circumstances in which Wand Partners' minority equity position could be squeezed-out. Under this agreement, AMFM*i* could not be merged with another entity:

unless a Mutually Satisfactory Investment Bank shall have rendered a Banker's Opinion to the effect that the aggregate consideration to be received in the Merger by the holders of AMFM*i* common stock ... is fair to AMFM*i* and its stockholders from a financial point of view.

In exchange for this protection, Wand Partners waived its appraisal rights pursuant to § 262 of the Delaware General Corporation Law.

On August 31, 2000, AMFM, Inc. was acquired in a merger by defendant Clear Channel Communications, also an owner/operator of radio stations. Clear Channel notified Wand Partners on September 13, 2000, of its intention to merge AMFM*i* into AMFM Holding, converting Wand Partners' equity interest into cash. Additionally, Clear Channel gave notice to Wand Partners that it had selected Salomon Smith Barney as the Mutually Satisfactory Investment Bank pursuant to provisions within the Equity Ownership Agreement.

Wand Partners notified Clear Channel, on September 22, 2000, that they rejected Salomon Smith Barney. Instead, Wand Partners named Credit Suisse First Boston ("CSFB") as their choice to serve as the Mutually Satisfactory Investment Bank, in a letter dated October 3, 2000. On November 10, 2000, Clear Channel sent plaintiffs its preliminary valuation analysis of AMFM*i*, which the plaintiffs now attack as grossly inadequate and lacking in good faith.

In mid-December, Wand Partners notified Clear Channel that, for various reasons, they could not agree on a form of engagement letter with CSFB. Thus, pursuant to the Equity Ownership Agreement, Clear Channel asked Salomon Smith Barney and CSFB to select a third investment bank. They chose Morgan Stanley Dean Witter ("MSDW"), which was retained to act as the Mutually Satisfactory Investment Bank at a board of directors meeting held on December 27, 2000.

***2** After that meeting, Clear Channel provided Wand Partners with its formal merger proposal, indicating a still lower valuation of AMFM*i* than in November 2000. Wand Partners has since met separately with MSDW to present their case for a higher valuation. While the parties have not established a formal schedule for MSDW's work, MSDW could reach a conclusion as to the fairness of the proposed merger at any time. Should that conclusion be affirmative,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 167720 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 2

the parties expect that Clear Channel will act promptly, pursuant to 8 *Del.C.* § 253, to effectuate the merger.

On January 11, 2001, plaintiffs filed their complaint, alleging that "even before its acquisition of AMFM Inc. had closed, Clear Channel undertook to impede AMFM*i*' s rollout of station web sites, loot its assets and effectively dismantle [AMFM*i* ]." The complaint also alleges that, after the Clear Channel/AMFM Inc. merger, employees were hired away from AMFM*i* and its hardware and software moved to Clear Channel's data center. Most importantly, according to Wand Partners, Clear Channel caused AMFM, Inc. to usurp AMFM*i*' s exclusive rights under its "crown jewel," the so-called Web Site Agreement:

[That agreement] provided [AMFM*i* ] with an exclusive ten-year license to, among other things, design, service and maintain each of the radio station Internet web sites, and the right to retain all revenue generated by it in connection with each web site....

Because, among other things, the squeeze-out merger assigns *"no value at all"* to the Web Site Agreement, Wand Partners claims that the merger proposal is grossly inadequate and unfair.

Wand Partners also argues that MSDW will not be able to render a fair valuation of AMFM*i* because its assets have been looted. In light of the waiver of appraisal rights, plaintiffs argue that they need expedited proceedings in order to protect the value of their interest in AMFM*i*.

The schedule proposed by Wand Partners contemplates the exchange of documents and conduct of depositions over the course of the next six weeks, to be followed by briefing and an argument on the motion for a preliminary injunction sometime in April.

*Discussion*

On a motion for expedited proceedings, this Court must assess, preliminarily, whether the moving party has articulated a sufficiently colorable claim together with a sufficient possibility of a threatened irreparable injury to justify the imposition of the expense and inconvenience of an expedited preliminary injunction proceeding.[FN1] Nevertheless, I am mindful that a plaintiff's request to schedule a preliminary injunction hearing "is normally routinely granted." [FN2]

FN1. *Giammargo v. Snapple Beverage Corp.*, Del. Ch., C.A. No. 13845, letter op. at 5-6, Allen, C. (Nov. 15, 1994).

FN2. *In re International Jensen Inc. S'holders Litig.*, Del. Ch., C.A. No. 14992, Jacobs, V.C., mem. op. at 2 (July 16, 1996).

Having considered the submissions and arguments presented by the parties, I am persuaded that the motion presents unusual circumstances and should be denied for at least two reasons.

First, there is a significant disconnection between the planned schedule for the merger and the proposed schedule for the injunction proceeding. The merger process was initiated in September 2000 and could come to fruition at any time. But the motion to expedite was not presented until February 1, 2001 and the proposed schedule for the preliminary injunction motion would not reach a point of decision for another two months. Perhaps this "disconnect" is the result of Wand Partners' realization that they simply delayed too long in bringing their action to seek an injunction against the merger. As plaintiffs know, this court has repeatedly declined to schedule proceedings for expedited injunctive relief where the moving party has delayed unreasonably in presenting the application. [FN3] This defect is not cured, however, by proposing a schedule that is out of joint with the threatened harm.

FN3. *Union Pacific Corp., v. Santa Fe Pacific Corp.*, Del. Ch., C . A. No. 13778, Jacobs V.C., mem. op. at 3 (Jan. 30, 1995).

***3** Second, it appears from the complaint and the moving papers, to a reasonable certainty, that an award of money damages could fully and adequately compensate the plaintiffs for any injury they might suffer. This is so whether their injury results from being cashed-out at a price unfairly dictated by Clear Channel's alleged depredations or, should no merger occur, from Clear Channel's alleged looting of AMFM*i*. Moreover, money damages would seem to be the only avenue of relief available to them. Their complaint is that Clear Channel has methodically looted and destroyed the value of AMFM*i*, by raiding and otherwise reducing its staff, appropriating its hardware and software and destroying the value of the Web Site Agreement. As plaintiffs' counsel candidly recognized during the argument on the pending motion, it is unrealistic to believe that any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 167720 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 3

order this court might issue could restore AMFM*i* to any semblance of its former operating condition. Nevertheless, it would be possible to determine what the damages to AMFM*i* were resulting from Clear Channel's alleged misconduct and compensate plaintiffs accordingly.

For these reasons, I will deny the motion for expedited proceedings. IT IS SO ORDERED.

Del.Ch.,2001.
Wand Equity Portfolio II L.P. v. AMFM Internet Holding Inc.
Not Reported in A.2d, 2001 WL 167720 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.