IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOEL GERBER, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| C. HARRY KNOWLES, RICHARD C. CLOSE, JANET H. KNOWLES, JOHN H. MATHIAS, STANTON L. MELTZER, HSU JAU NAN, WILLIAM RULON-MILLER, FRANCISCO PARTNERS, II, L.P., FP-METROLOGIC, LLC, METEOR HOLDING CORPORATION, METEOR MERGER CORPORATION, ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., METROLOGIC INSTRUMENTS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

C.A. No.  06-747 (JJF)

**AFFIDAVIT OF BRIAN D. LONG, ESQUIRE IN SUPPORT OF PLAINTIFF'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss. |
| COUNTY OF NEW CASTLE | ) |

I, Brian D. Long, being duly sworn, do hereby state as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of Delaware and I am a shareholder in the law firm of Rigrodsky & Long, P.A. ("Rigrodsky & Long"). Rigrodsky & Long is counsel of record for plaintiff Joel Gerber in the above-captioned action.

2.    I submit this Affidavit In Support of Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).

3.    Attached hereto are true and correct copies of the following documents:

Exhibit A:      Transcript of the December 12, 2006 hearing before the Honorable Joseph
                J. Farnan, Jr., in the above-captioned action;

Exhibit B:      Correspondence regarding the production of witnesses from Defendants'
                counsel in this action;

Exhibit C:      Selected pages from the Transcript of Motion from the December 1, 2006
                hearing before the Honorable M. Allan Vogelson, in *Wilkenfeld v. C.
                Harry Knowles,* C.A. No. C-166-6 (Super. Ct., Ch. Div., Camden County);
                and

Exhibit D:      Correspondence regarding the production of documents from Defendants'
                counsel in this action.

I make this Affidavit under penalty of perjury under the laws of the State of Delaware and

the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2006, in Wilmington, Delaware.

                                    Brian D. Long (ID # 4347)

SWORN TO AND SUBSCRIBED
before me this 14th day of December, 2006.

_____
Notary Public

My Commission Expires:_____

NOAH R. WORTMAN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires April 4, 2008

# EXHIBIT A

1

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   JOEL GERBER, on behalf of himself :      CIVIL ACTION
     and all other similarly situated, :
 5                                      :
                  Plaintiff            :
 6                                      :
             vs.                        :
 7                                      :
     C. HARRY KNOWLES, RICHARD C.       :
 8   CLOSE, JANET H. KNOWLES, JOHN H.   :
     MATHIAS, STANTON L. METZER,        :
 9   HSU JAUNAN, WILLIAM RULON-MILLER,  :
     FRANCISCO PARTNERS, II,            :
10   PF-METROLOGIC, LLC, METEOR         :
     HOLDING CORPORATION, METEOR        :
11   MERGER CORPORATION, ELLIOTT        :
     ASSOCIATES, L.P., ELLIOTT          :
12   INTERNATIONAL, L.P., METROLOGIC    :
     INSTRUMENTS, INC.,                 :
13                                      :
                  Defendants           :      NO. 06-747 (UNA)
14
                              - - -
15
                                 Wilmington, Delaware
16                               Tuesday, December 12, 2006
                                 11:00 o'clock, a.m.
17
                              - - -
18
     BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
19
                              - - -
20

21

22

23

24                               Valerie J. Gunning
                                 Official Court Reporter
25
```

2

```
 1   APPEARANCES:

 2
             RIGRODSKY & LONG, P.A.
 3           BY:  SETH D. RIGRODSKY, ESQ. and
                  BRIAN D. LONG, ESQ.
 4

 5                    -and-

 6
             LERACH COUGHLIN STOIA GELLER RUDMAN ROBBINS LLP
 7           BY:  MARK S. REICH, ESQ.
                  (Melville, New York)
 8

 9                Counsel for Plaintiff
                  Joel Gerber
10

11           PEPPER HAMILTON LLP
             BY:  THOMAS KOVACH, ESQ. and
12                THOMAS ZEMAITIS, ESQ.

13
                  Counsel for Defendants
14                C. Harry Knowles and Janet H. Knowles

15
             WILSON SONSINI GOODRICH & ROSATI
16           BY:  KENNETH M. MURRAY, ESQ.
                  (New York, New York)
17
                      -and-
18
             LOWNESTEIN SANDLER
19           BY:  GREGORY B. REILLY, ESQ.
                  (Roseland, New Jersey)
20

21                Counsel for Defendant
                  Francisco Partners, II
22

23           BALLARD SPAHR ANDREWS & INGERSOLL, LLP
             BY:  WILLIAM KELLEHER, ESQ.
24

25                    -and-
```

3

```
 1   APPEARANCES (Continued):

 2
             BALLARD SPAHR ANDREWS & INGERSOLL, LLP
 3           BY:  GEOFF KAHN, ESQ.
                  (Philadelphia, Pennsylvania)
 4

 5                          -and-

 6
             BALLARD SPAHR ANDREWS & INGERSOLL, LLP
 7           BY:  LOUIS R. MOFFA, JR.
                  (Voorhees, New Jersey)
 8

 9           Counsel for Defendants
             Metrologic Instruments, Inc.,
10           Richard C. Close, John H. Mathias,
             Stanton L. Meltzer, Hsu Jau Nan, and
11           William Rulon-Miller

12
             KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
13           BY:  MARC R. ROSEN, ESQ.
                  (New York, New York)
14

15           Counsel for Defendants
             Elliott Asoociates, L.P. and
16           Elliott International, L.P.

17

18

19

20

21

22

23

24

25
```

4

```
 1

 2                    P R O C E E D I N G S

 3

 4              (Proceedings commenced in the courtroom,

 5   beginning at 11:00 a.m.)

 6

 7              THE COURT:  Be seated, please.  Good morning.

 8              (Counsel respond, "Good morning, your Honor.")

 9              THE COURT:  If you want to announce your

10   appearances first, for the plaintiff, Mr. Gerber, and then

11   the defendants?

12              MR. RIGRODSKY:  Good morning, your Honor.  Seth

13   Rigrodsky, of Rigrodsky & Long, for plaintiff, Joel Gerber.

14   With me today is my partner, Brian D. Long.

15              MR. LONG:  Good morning.

16              THE COURT:  Good morning.

17              MR. RIGRODSKY:  And also with us is Mark Reich

18   of the Lerach firm, also with plaintiffs.

19              THE COURT:  Okay.  Good morning.

20              THE COURT:  For the defendants?

21              MR. KELLEHER:  Good morning.  Bill Kelleher,

22   from Ballard Spahr.  We represent Metrologic, Richard Close

23   and John Mathias, Stan Meltzer, Hsu Jau Nan, William

24   Rulon-Miller, defendants.

25              I'm here with Mr. Jeff Kahn and Mr. Lou
```

5

```
 1   Moffa, Jr.  About an hour ago I filed pro hac papers for

 2   them.

 3            THE COURT:  I just okayed them.

 4            MR. KAHN:      Thank you, your Honor.

 5            MR. MOFFA:  Thank you.

 6            MR. KELLEHER:  Thank you, your Honor.

 7            THE COURT:  You're admitted and welcome.  All

 8   right.

 9            MR. REILLY:  Your Honor, I can't formally

10   appear.  My name is Gregory Reilly, from Lowenstein Sandler a

11   New Jersey law firm.  I'm here today -- you have not

12   been served yet, but our firm has represented the Francisco

13   Partners, parties in the New Jersey action that has

14   been ongoing, and they have asked me to come today and

15   watch.

16            THE COURT:  All right.  Nothing wrong with

17   being a New Jersey lawyer.  I'm from New Jersey.  I married

18   into Delaware and I actually took the New Jersey Bar first in

19   1970.  I didn't become a Delaware lawyer until 1972 because

20   of such a great experience in New Jersey, I didn't know if I

21   wanted to leave it, so welcome.

22            MR. REILLY:  Thank you very much, your Honor.

23            MR. KOVACH:  Good morning, your Honor.

24            THE COURT:  Good morning.

25            MR. KOVACH:  Tomorrow Kovach, from Pepper
```

6

1    Hamilton.  I have with me Thomas Zemaitis, also from Pepper

2    Hamilton, and we're here representing C. Harry Knowles and

3    Janet Knowles, and defendants in this action.

4            THE COURT:  Thank you.

5            MR. ROSEN:  My name is Marc Rosen from Kleinberg,

6    Kaplan, Wolff & Cohen.  I represent Elliott Associates and

7    Elliott International.

8            THE COURT:  All right.  Welcome.

9            MR. ROSEN:  Thank you, your Honor.

10            THE COURT:  All right.  I took a look at the --

11    and if anybody on the pro hac admissions, as we go forward,

12    there won't be any problem getting those in and filed and

13    getting them okayed for you.

14            I took a look at the papers and I'm going to

15    tell you what I think we can do since you appear to have

16    several issues in this dispute.

17            First of all, let me ask a question:  From

18    reading the papers, am I to understand that Mr. Gerber has

19    dismissed the New Jersey action?

20            MR. RIGRODSKY:  That's correct, your Honor.

21            THE COURT:  So there's no longer an action in

22    Camden?

23            MR. MOFFA:  Your Honor, that's not right.  Under

24    New Jersey law there's a joint consolidation order.  I do

25    not believe under New Jersey law he has unilaterally

7

1    dismissed one of the four consolidated cases.  That issue

2    isn't before the New Jersey Court yet.  He filed his own

3    stipulation of dismissal.  I don't think that's effective

4    under New Jersey law, at least not now with a consolidation

5    order in place.

6              MR. KAHN:  Your Honor, to be clear there

7    were four separate class action lawsuits filed in New

8    Jersey.  By agreement of the parties, they were consolidated

9    into one case.  Subsequent to that, we received a few

10   days ago Mr. Gerber's voluntary dismissal.  Whether that

11   voluntary dismissal is valid in the context of a

12   consolidated case I suppose is a question of New Jersey

13   law, but what I think is certain is that the New Jersey

14   case remains pending.

15             MR. MOFFA:  Especially, your Honor, since the

16   operative complaint, the operative pleading in the

17   consolidated matter is not Mr. Gerber's pleading.  It's

18   the Wilkinson pleading, which Mr. Rigrodsky filed on behalf

19   of his client.  It's virtually identical to the complaint

20   he filed here.  That became operative on December 1 when,

21   at his request, Judge Vogelson entered the joint

22   consolidation order, which was signed by all parties and

23   all counsel, and consolidated all four cases in front of

24   him in New Jersey.

25             THE COURT:  So what do you think happened?

8

```
 1              MR. RIGRODSKY:  Oh, I know what happened.
 2   Mr. Gerber did voluntarily dismiss this case, which is
 3   procedurally proper under New Jersey law.  He's no longer
 4   in that consolidated case.  There is a case pending in New
 5   Jersey Court, in Camden, in the Chancery Division there,
 6   captioned Wilkson versus Knowles.  That case is basically
 7   sitting there because the Court in New Jersey has refused to
 8   take any action whatsoever with regard to either scheduling a
 9   hearing on a motion for a preliminary injunction or to
10   expedite discovery.  So there's a case sitting there in New
11   Jersey.
12              I anticipate that if this action were to go
13   forward on an expedited basis, that action would be
14   dismissed.
15              THE COURT:  Now, your representation in your
16   papers was that, so Mr. Gerber dismissed out his case
17   there.  You believe that he was permitted to did that
18   under New Jersey rules and law, and so he doesn't have, in
19   your view, a claim pending there?
20              MR. RIGRODSKY:  That is correct, your Honor.
21              THE COURT:  Now, in the case that Mr. Gerber was
22   participating in, do you believe there was the necessary
23   discovery?
24              MR. RIGRODSKY:  No, your Honor.
25              THE COURT:  So you never got, in your view,
```

1    discovery there to the extent you sought or to any

2    extent?

3              MR. RIGRODSKY:  Your Honor, if I can just

4    explain, it will take a second.

5              THE COURT:  Sure.

6              MR. RIGRODSKY:  Because it's a little

7    complicated, but basically, in the New Jersey action,

8    the parties had signed off on a stipulation that would

9    consolidate all the cases together.  There were four

10   different class action cases that were filed.

11             As part of that consolidation order --

12             THE COURT:  Can I just ask you one question

13   there?

14             MR. RIGRODSKY:  Yes.

15             THE COURT:  Were you or was Mr. Gerber the lead

16   plaintiff?

17             MR. RIGRODSKY:  No.  He was just one of the

18   plaintiffs.

19             THE COURT:  All right.

20             MR. RIGRODSKY:  The plaintiffs' counsel in the

21   case all decided and agreed to work together and to

22   coordinate their actions together, so they all agreed to a

23   stipulation that would consolidate all the cases.

24             There was an action filed in the Law Division in

25   Camden.  There was an action filed in the Chancery Division

10

1    in Camden.  There was an action filed in Gloucester County in

2    the Chancery Division, and I believe one more in the Law

3    Division.

4            So all the parties got together with the

5    defendants, and this is back in early November, and agreed

6    that we'll have the cases consolidated.

7            Because of this shareholder vote that's coming

8    up and the closing of the transaction, plaintiffs filed a

9    motion to expedite.  The defendants secured the agreement

10   of the plaintiffs to dismiss or at least adjourn the motion

11   to expedite in return for their agreement in the stipulation

12   of consolidation, to produce documents by certain dates,

13   and then the key language here is to produce witnesses

14   once the Court had scheduled a hearing on a preliminary

15   injunction.

16           THE COURT:  Well, that's why I asked you about

17   discovery.  They say in their papers that they produced,

18   like, a hundred thousand documents to you.

19           MR. RIGRODSKY:  That's correct, your Honor.

20   They have produced documents to us.  However, we served --

21   unfortunately, we had to go the route of getting

22   commissions and having subpoenas served on their

23   investment bankers.  None of those documents has been

24   produced and so far the defendants have not cooperated

25   in that production.

1          The defendants for the Francisco people, the

2    buyers, they had until the 11th, which is today, to produce

3    their documents, so their documents are coming.

4          The problem we have been having is as follows:

5    We asked the Court in Camden to please schedule a hearing

6    on a motion for a preliminary injunction, and I will

7    certainly take the blame for this.  We're used to

8    litigating in Delaware courts, and typically what a

9    Delaware Court does is schedule a hearing on a preliminary

10   injunction motion.  You work backwards on discovery and

11   briefing schedule.

12         In our stipulation, which we submitted for

13   consolidating the cases, and in lieu of our decision or in

14   return for our decision to withdraw this or table this motion

15   to expedite, the defendants agreed to produce witnesses for

16   deposition before our opening brief would be due on a motion

17   for preliminary injunction.  And so we kind of had a fast one

18   pulled on us, to be perfectly frank, your Honor, because what

19   happened was, the defendants would not agree, and would not

20   cooperate to produce witnesses because they said, Oh, well,

21   we don't have to produce witnesses until a Court schedules a

22   motion for a preliminary injunction.

23         We went into court.  We asked the Court, on a

24   show cause order, to simply fill out and put in dates on

25   an order, a scheduling order, saying, Please schedule a

1    hearing on a preliminary injunction for this December 20th

2    vote.

3            The Court received that motion weeks ago.  There

4    was a hearing on it on December 1st, and as of today, the

5    Court hasn't even entered an order scheduling a hearing on a

6    preliminary injunction.

7            Defendants have all written me letters and

8    they've all said, We are not producing any witnesses because

9    the agreement says that we don't have to produce witnesses

10   until the Court schedules something on a preliminary

11   injunction.

12           So we do have some document discovery.  We don't

13   have complete document discovery.  The defendants have

14   refused to produce witnesses and we still don't have

15   discovery from the investment bankers.

16           THE COURT:  Does that sound like what happened?

17           MR. KAHN:  Not quite, your Honor.

18           THE COURT:  I'm not surprised.

19           MR. KAHN:  Which may not surprise you.

20           THE COURT:  No.

21           MR. KAHN:  We have a slightly different version

22   of events.

23           Three months ago, Mr. Gerber and Mr. Rigrodsky,

24   on behalf of a different plaintiff, filed virtually identical

25   litigation to the one filed here on behalf of the same class

1    against the same defendants, challenging the same transaction

2    and seeking the same relief.  They filed the litigation in

3    New Jersey and they did so for good reason:  The company

4    whose conduct they're challenging, Metrologic Instruments, my

5    client, is a New Jersey company, with its principal place of

6    business in New Jersey.

7              Since September, plaintiffs have litigated

8    in the New Jersey State Court.  As Mr. Rigrodsky

9    acknowledges, in November they entered into a stipulation

10   consolidating the four separate class actions into a single

11   consolidated case.

12             Mr. Gerber's counsel signed that stipulation.

13   Mr. Rigrodsky signed that stipulation.

14             THE COURT:  Can I ask you a question?

15             MR. KAHN:  Yes, Judge.

16             THE COURT:  Do you understand the New Jersey

17   action in the Chancery Division to be about valuation

18   principally?

19             MR. KAHN:  I view there to be two fundamental

20   claims in the New Jersey action.  One is inadequate price

21   and -- well, I think it's basically an inadequate price case,

22   yes.  I mean, I think that is fundamentally what's involved.

23   But they are also challenging in New Jersey, under the guise

24   of State law, breach of fiduciary duty claims, inadequacies

25   in the public disclosures that Metrologic filed, and in that

14

1    sense, it's entirely identical to the claim they're now

2    bringing in this court.

3                THE COURT:  All right.

4                MR. KAHN:  The claims are virtual carbon copies

5    of each other.

6                THE COURT:  Typically, here in Delaware, in this

7    type of a dispute, the Chancery Court here, like is going on

8    in New Jersey, and, of course, this was rampant in the 80s,

9    would deal with the price issues.  And we would deal --

10   there's usually a companion lawsuit filed in the federal

11   court about the proxy statement, citing the federal statutes,

12   and the -- and I guess sometimes they were concurrently

13   framed as a governance issue.  Our proxy issues were framed

14   as governance issues in the State Court.

15               Now, is that your experience in New Jersey?

16               MR. KAHN:  Well, my experience in this particular

17   case is that Mr. Rigrodsky brought both claims, both the

18   disclosure claims and the price valuatoin claims, in State

19   Court.  Now, obviously, he didn't couch them as a federal

20   securities claim in State Court, but he brought them as State

21   Court disclosure claim, and if you put the allegations of the

22   two complaints against each other, that is the New Jersey

23   State complaint and the federal complaint here, they're --

24   substantively, they are identical.  There is absolutely no

25   difference.

1           So both claims were brought there.

2           I mean, I think our fundamental position is,

3    number one, it seems to me there are one of two possibilities

4    from our standpoint:  Either the Court should defer to the

5    prior pending State action in New Jersey, in which plaintiff

6    has actively participated --

7           THE COURT:  Which is hard to do when -- if

8    there's jurisdiction and venue here in the District of

9    Delaware and they've invoked a federal securities statute, it

10   is hard to say that this Court could or would or should defer

11   to any State Court those questions.

12          MR. KAHN:  Well, I understand, your Honor.

13          THE COURT:  The question would be:  Should you

14   then take it up the way the plaintiffs here here have framed

15   the valuation question?

16          MR. KAHN:  I think the other kind of predicate

17   question is:  If the proxy claim, the 14(a) claim, is

18   to be heard in federal court at this juncture, should it

19   be heard in this court as opposed to the District of New

20   Jersey?

21          THE COURT:  Well, yes.  That's the jurisdiction

22   venue question.

23          MR. KAHN:  Right.  And Mr. Rigrodsky brought his

24   claim in State Court.  That was a choice he made.  He could

25   have brought a 14(a) claim there.  He chose not to.  When he

1   decided to bring his 14(a) claim, he could have brought it in

2   New Jersey, he decided not to.  The fact is there is

3   absolutely no connection between the substance of this

4   lawsuit and this particular forum.

5           The plaintiff, Mr. Gerber, resides in Queens, New

6   York.  Metrologic, as I said, is a New Jersey company, with

7   its principal place of business in New Jersey.  The

8   transaction being challenged has absolutely nothing to do

9   with Delaware.

10          None of the individual defendants named in the

11  case lives or works in Delaware.  And, in fact, we believe

12  that they are appropriately subject to a motion to dismiss

13  for lack of personal jurisdiction.

14          And --

15          THE COURT:  The one thing the plaintiff says in

16  the papers, the limited papers we have, is that that all may

17  be true, but when they made the offer, they did not hit all

18  of the 49 states and include Delaware with the proxy.

19          MR. KAHN:  No, and that's absolutely true, but I

20  don't think the proxy is enough to make this a convenient

21  forum in light of all of the other factors that need to be

22  balanced in the equation.

23          I mean, the only -- the only factors, you know --

24  I think the -- you know, you've got the mailing of the

25  proxies.  You've got Mr. Rigrodsky having an office here.

17

1    The plaintiff is not here.  The events at issue aren't here.

2    The corporation whose conduct is being challenged isn't

3    here.

4                It's not a Delaware case.  This case -- this

5    jurisdiction has no nexus to -- Delaware has no nexus to, you

6    know, to the underlying events.

7                THE COURT:  Now, you're still engaged in the

8    Camden action?

9                MR. KAHN:  Yes.  We're very --

10               THE COURT:  Now, tell me this:  Do you

11   understand -- what do you understand Judge Vogelson's plan

12   for the case is over there since he's well aware of the

13   case?  He's well aware of the December 20th date.

14               What do you understand is his plan?

15               MR. KAHN:  Well, I can tell you -- if I can just

16   review the posture of the last couple of weeks.  On November

17   28th, plaintiffs filed their motion, what's called an order

18   to show cause, why a preliminary injunction should not be

19   issued in the New Jersey Court.

20               They accused Judge Vogelson of lack of

21   attention to the matter.  The fact is, three days later,

22   on December 1st, he held a hearing in the case.  We attached

23   a transcript to the copy of the letter to the Court.  In

24   that hearing, he approved the consolidation order, to

25   which the parties agreed, which made Mr. Rigrodsky lead

18

```
 1    counsel.  He also retained jurisdiction to hear the

 2    injunction action.

 3              And it was basically exactly one week later,

 4    while Judge Vogelson was considering the motion, and just 12

 5    days before the scheduled shareholder meeting, that plaintiff

 6    has come into this court.  And, you know, from our

 7    standpoint, it is an end run around Judge Vogelson's handling

 8    of his matter and it's entirely inappropriate.

 9              I mean, Judge Vogelson has the case.  He's got

10    their motion under consideration.  If they believe that Judge

11    Vogelson is not acting with sufficient dispatch, it seems to

12    me they should raise that with Judge Vogelson and the New

13    Jersey appellate, but not here.

14              THE COURT:  Has anybody told Judge Vogelson that

15    this is going on here in Delaware and that I put it on for a

16    scheduling conference, the case filed by plaintiff?

17              MR. KAHN:  I don't know if -- he definitely knows

18    about the matter.  We alerted him to the fact that an action

19    has been filed in Delaware.  I don't believe we alerted him

20    yesterday to the fact that this hearing was scheduled for

21    today.

22              THE COURT:  And when he was given that

23    information, it was by defendants?

24              MR. KAHN:  It was by defendant in writing, not in

25    person.
```

19

```
 1              THE COURT:  All right.  All right.  Is there
 2    anything else you think I ought to know?
 3              MR. KAHN:  No, your Honor.
 4              I think our view is that, as I said, either the
 5    case -- either the Court should defer in the face of the
 6    prior pending State Court action and stay this case, or,
 7    alternatively, the case ought to be transferred to the
 8    District of New Jersey, where the real locus or nexus is, and
 9    depending -- I'm not sure what the Court has in mind for
10    scheduling, but if the Court wants to see briefs on those
11    points, we would be prepared to submit them promptly, if
12    necessary.
13              THE COURT:  All right.  Thank you.
14              MR. KAHN:  Thank you, your Honor.
15              MR. MOFFA:  Your Honor, just one point on the New
16    Jersey procedure, since your Honor was curious about it.  The
17    scheduling of a hearing was within plaintiff's control and
18    not Judge Vogelson's.  They could have applied for a hearing
19    as early as Friday.  They didn't do that.  They chose another
20    course, which put the scheduling in Vogelson's control.  For
21    whatever reason why, we don't know why, but they chose that
22    tactic.  They've chosen all the tactics as far as
23    forum-shopping.  It's not as simple as Judge Vogelson isn't
24    doing something.  He knows too they could have filed a notice
25    or motion and could have gotten a hearing for December 15th
```

20

1   without anybody intervening.  They didn't do that.

2               Now they are here because they don't like

3   what they did in New Jersey for some reason and this isn't

4   the place to be.  They could be in New Jersey in federal

5   court across the Court from State Court if they want to file

6   a proxy claim or they could write a letter to Judge

7   Vogelson.

8               THE COURT:  Coming from Camden, you have to admit

9   this is a better block.

10              MR. MOFFA:  Judge, I was born in Camden.  My

11  grandparents lived in Camden.  I was born and raised in

12  Camden.

13              THE COURT:  I went to school at Sacred Heart on

14  on Kane Avenue.

15              MR. MOFFA:  My grandfather worked as a

16  maintenance man on Kane Avenue.

17              THE COURT:  I hate to tell the story.  I got

18  designated to a case in the District of New Jersey and I got

19  sent to Camden like it was some sort of punishment.

20              MR. MOFFA:  Right.

21              THE COURT:  And I showed up there and I didn't

22  realize all the construction that had taken place around

23  there in that particular time.  It was like tough to find my

24  way a little bit, but when I did, I don't get why everybody

25  points out about Camden.

```
 1              I thought I would mention it since you're all
 2   from New Jersey.
 3              MR. MOFFA:  The courthouse is beautiful.  The
 4   walk now is all brick.
 5              THE COURT:  Rutgers has expanded and done a great
 6   job in the area.
 7              MR. MOFFA:  Very friendly, very cordial folks.
 8   Nice place to be.
 9              THE COURT:  So why aren't you there, bringing it
10   back to you on that segue, the point being, in a serious
11   vein, why didn't you file in the federal court in New Jersey,
12   since you were already there with the State Judge, and
13   typically, as I mentioned, that would be the practice here.
14   You would file concurrently in Delaware Chancery Court and
15   then over here, and they would -- the cases would track each
16   other on different issues, but they would be tracked and I
17   know both Judge Brotman, and having spent a lot of time in
18   the Virgin Islands with him and Judge Rodriguez, I'm sure
19   they'd make themselves available to you.
20              MR. RIGRODSKY:  Well, your Honor, we chose to
21   file in the District of Delaware because, number one, there
22   is a certain locus in connection with Delaware.  Number one,
23   proxy was disseminated in Delaware.  The statute clearly
24   provides for a jurisdiction of this Court over the parties
25   and the cause.
```

22

1          So I guess what it really comes down to is a

2   venue issue, which they are raising now.

3          Again, I want to just clear away some of the

4   brush here because people are jumping up and making arguments

5   about procedure and our fault, things like that.

6          We've got a vote on an absolutely wildly unfair

7   transaction for December 20th and defendants have been very

8   effective, I give them credit, for convincing the Court in

9   Camden to sit around and do nothing.  They did attach a copy

10  of the transcript of the proceedings to their papers, and

11  they didn't attach the entire proceedings, but -- and we can

12  send this to the Court.

13         When we showed up to our hearing -- and, by the

14  way, the hearing was not on a motion for our scheduling

15  order, it was a hearing on a motion to expedite, which then

16  turned into a whole rigmarole and a more broader discussion.

17  But the Judge hadn't even read our papers at the hearing for

18  preliminary restraints.  He said it in the transcript.  He

19  didn't even know he had them.  The Clerk had them.

20         The bottom line is that we did the absolutely

21  correct thing.  We went in, as we do in Delaware.  We ask,

22  Please issue a show cause order, fill in dates for a hearing,

23  we'll work backwards, because defendants, the defendants will

24  not produce witnesses for deposition.

25         They're taking the position that unless and until

23

1    a Court schedules a hearing on an injunction motion, they
2    don't have to do anything as far as witnesses.
3              We can't produce a full record for a preliminary
4    injunction without witnesses, so what they've been doing over
5    the past couple of weeks has been very good and very
6    effective:  Not having a Court do anything.
7              There is no action in the Court in Camden.  Judge
8    Vogelson apparently has decided not to enter a scheduling
9    order, has not considered anything.  Certainly, it's now the
10   11th.  The hearing -- excuse me -- the vote is on the 20th.
11   I don't know what Judge Vogelson is going to do.
12             Now, defendants have written letters to Judge
13   Vogelson and told them why he shouldn't schedule a hearing
14   and we've written letters to Judge Vogelson.  We said we
15   really should have a hearing and he has done absolutely
16   nothing, your Honor.
17             So we are sitting here.  We have boxes of
18   documents.  We have defendants refusing to produce
19   witnesses.  We have legitimate and serious and substantial
20   federal claims and those claims can be brought here.
21             Now, my colleague misspoke about no Delaware
22   connection.  There is a Delaware connection.  The vehicle
23   that was formed by the buyer to effectuate the merger is
24   incorporated in Delaware.  It's a Delaware corporation.  So
25   they've taken advantage of Delaware law to effectuate what we

24

1    say is this unfair transaction.

2              Also, meeting our holding company, which is a

3    party to some voting agreements which we would say unfair or

4    at least indicia of unfairness is also a Delaware

5    corporation.  So it's not completely accurate there's no

6    nexus to Delaware.

7              In terms of venue issues, Camden, New Jersey, is

8    15 minutes up the road.  I don't see this as a case where

9    documents are going to have to be hauled across the country

10   or witnesses are going to have to come across the country to

11   litigate in this court, where jurisdiction is proper and

12   venue is proper.  Defendants have no problem producing

13   documents to my office in Delaware from Philadelphia.  We're

14   not talking about one of these transcontinental, Delaware

15   versus California, debates here.

16             The bottom line is:  We are aggressively seeking

17   justice.  This transaction is unfair.  The transaction is

18   locked up.  The disclosures are misleading, according to the

19   proxy.  It violates State law and we need a Court, this

20   Court, to at least enter an order scheduling a hearing on a

21   preliminary injunction or temporary restraining order, so

22   that we can finally get witnesses and take depositions and

23   get to the bottom of this.  Otherwise, we lose -- we suffer

24   the irreparable injury.  We lose the right to cast an

25   informed vote, and I think the law is black letter in this

1   district and every other district in the United States, that

2   we are entitled to injunctive relief for misleading and

3   omissions, material omissions in a proxy.

4           So even if Judge Vogelson was to wake up this

5   morning and say, I'm going to schedule the hearing, it's

6   still not going to affect this case.  In fact, what's likely

7   to happen, again, and I will say it in open court, if this

8   Court schedules a hearing on the motion for temporary

9   restraining order/preliminary injunction, it is substantially

10  likely that it will dismiss our case in New Jersey, and then

11  Judge Vogelson has nothing to rule on.

12          MR. KAHN:  Your Honor, I only want to note that

13  counsel is really casting aspersions both at Judge Vogelson

14  and at defense counsel.

15          If I understood him correctly he said we

16  convinced Judge Vogelson to sit around and do nothing.

17  That's absolutely not true.  The fact is plaintiff,

18  Mr. Rigrodksy, decided to file the lawsuit in New Jersey

19  in September.  He decided not to file in federal court.

20  He decided to file a motion for preliminary injunction

21  on November 28th in New Jersey.  He got a hearing on that

22  motion on December 1, three days later.  That's not doing

23  nothing.

24          The Judge, obviously, has taken their motion

25  under advisement, and I think it's unfair for counsel to

1    point the finger at everyone else for this situation in which

2    he now finds himeslf.  And the bottom line, I don't think he

3    has answered the Court's predicate fundamental question,

4    which is:  Why Delaware and not New Jersey?  If the federal

5    proxy claim should be heard, it should be heard in the

6    jurisdiction that has the real nexus.

7              Sure, he can point to a paper company, part of an

8    acquisition company that's incorporated in Delaware, but the

9    company whose conduct he's challenging, Metrologic, is New

10   Jersey based, New Jersey incorporated.  And, in fact, that's

11   where their shareholders meeting is scheduled for December

12   20.  It's a New Jersey case.  By the way, that's why they

13   brought it there in the first place.

14             MR. RIGRODSKY:  Your Honor, if I can just make

15   clear again, the motion that was filed with the Court in

16   Camden is not a motion for a preliminary injunction.  It's a

17   requested hearing.  All we requested was a hearing date.  We

18   had asked the judge, and it was on the transcript in State

19   Court, your Honor, all we're asking for is for the Court to

20   schedule a hearing date, so like in Delaware, we can work

21   backwards and we can have depositions and we can get our

22   documents in an orderly way and we can have an orderly

23   briefing schedule.

24             This is something the defendants agreed to in a

25   stipulation they signed and I can submit to the Court.  Now

1    defendants are running into Court saying -- this stipulation

2    basically allows them to stiff us on depositions and

3    documents.  They say, Well, until a Court enters a hearing

4    date, you get nothing, so here we are.  We have absolutely

5    nothing.  We have some documents, it's true, but we're

6    missing a substantial amount of documents.

7              So the clock keeps on ticking.  The Court in New

8    Jersey keeps on doing nothing.  All we asked the Court to do

9    was to give us a hearing date.  The Court has been sitting on

10   the papers since December 1st.  And, again, the hearing date

11   of December 1st was on a motion to expedite.

12             And, finally, I also want to go back to

13   the fundamental point, which is defendants are not

14   telling the Court.  They went final with their proxy on

15   November 29th, the day before Thanksgiving.  They are the

16   ones who decided to go final then.  They're the ones who

17   put in the definitive date of the proxy vote for the 20th

18   for three weeks later.

19             They've created the exigencies.  They have not

20   agreed to produce documents, to produce witnesses to us.

21   They have not agreed to go into the Court hand in hand as we

22   do in Delaware and say, We agree.  Let's have a hearing and

23   we'll produce witnesses.

24             They have not done anything.  They basically are

25   hoping that no Court takes action and that this transaction

1    gets voted on, and, you know, we're going to wind up with no

2    relief for our federal proxy claims and certainly no relief

3    for our underlying State Court claims.

4           If you were to take a look at our papers, this is

5    the most unfair transaction, frankly, I've seen.  There is no

6    majority or minority provision.  They have 49 percent of the

7    votes locked up, paid for by the CEO of the company, a large

8    shareholder and the management of the company.  The public

9    shareholders are in a tough spot here.

10          Their special counsel -- excuse me -- their

11   special committee retained Ballard Spahr, which represents

12   the company and is here today on behalf of the defendants and

13   the company.  They didn't have independent legal counsel.

14   They hired Needham Company, which is an investment banker.

15   Needham Company also did work for the company.

16          So there are no independent advisors.  The deal

17   is locked up.  The shareholders, the large shareholders of

18   the company, Mr. Knowles, the CEO, has about 41 percent, and

19   the other shareholder, Elliott, together they have a 49, have

20   agreed to vote against even a better priced deal, if a better

21   priced deal comes along because of the shareholder voting

22   agreements.

23          This deal is financially unfair.  This deal

24   is locked up.  We certainly have presented to the Court in

25   New Jersey some documents that were produced to us that

1    indicate that even the CEO of the company has recognized that

2    the need for expedition here is solely because the Knowles --

3    excuse me -- the Francisco people want to buy the company on

4    the cheap because of a depressed stock price.  These are the

5    words of the Chairman of the company of Metrologic, not my

6    words, not plaintiff's counsel's words.  It's there.  It's a

7    fantastic document.

8              But we can't get past this.  We can't get beyond

9    this document.  We can't take Mr. Knowles' deposition until a

10   Court schedules a hearing.  All we're asking for is a fair

11   opportunity to address what we think are material violations

12   of federal securities laws as well as the underlying State

13   claims.

14             If this Court were to enter a scheduling order

15   scheduling a hearing on a TRO for our disclosure claims and

16   our underlying state claims, as it said before, we will

17   dismiss our State law claim and there won't be an issue

18   about another pending State Court action.

19             MR. KAHN:  Your Honor, if I may, three points.

20             One, Mr. Rigrodsky seems to be suggesting that

21   defendants have violated the consolidation order that the

22   parties agreed to and that Judge Vogelson approved.  We

23   obviously strenuously disagree with that, but if he's

24   right, his recourse is to take it up with Judge Vogelson,

25   not to burden your Honor with nuances of a consolidation

```
 1   order entered in appending New Jersey lawsuit.  That's number

 2   one.

 3            Number two, he says that the defendants decided

 4   to go final on November 29th.  I actually think it was the

 5   28th, but that's not material.

 6            THE COURT:  He said the day before Thanksgiving.

 7   The 29th wasn't the date before Thanksgiving.

 8            MR. KAHN:  I think the date was the 28th, in any

 9   event.

10            THE COURT:  It was the Tuesday after

11   Thanksgiving.

12            MR. RIGRODSKY:  Before.

13            THE COURT:  Before Thanksgiving?

14            MR. RIGRODSKY:  Before Thanksgiving, your Honor.

15            THE COURT:  Thanksgiving, I thought, was the

16   23rd.

17            MR. KAHN:  It was after Thanksgiving.

18            MR. RIGRODSKY:  I'm sorry, your Honor.  My

19   apologies.

20            THE COURT:  I'm just trying to figure out

21   when I had Thanksgiving dinner.  I think it was the 23rd.

22   So it was the week after Thanksgiving.

23            MR. KAHN:  Your Honor, my point is --

24            THE COURT:  Your point is that there was

25   plenty of time if they wanted to get in front of Judge
```

31

1    Vogelson.

2           MR. KAHN:  That's one point, but a second point

3    I just want to be clear on, we didn't create any kind of

4    exigency and wait until the last minute to file a proxy.

5    There's a whole process, your Honor is aware, you go through

6    with the SEC.  They make comments.  We got final approval

7    from the SEC before the final approval was filed.  We didn't

8    create an exigency.

9           I am reluctant to burden the Court with the

10   merits of their injunction relief, but I also don't think we

11   can leave unanswered the argument he has made.

12          So just very, very briefly, we believe that the

13   transaction is fundamentally fair in all respects.  The price

14   that was obtained was a significant premium over the trading

15   price for the previous 30 days, number one.

16          The price was negotiated by a special committee

17   consisting of independent directors of the board, number

18   two.

19          Number three, the special committee obtained

20   a fairness opinion from a highly reputable financial

21   company, Needham, and who said that this price was absolutely

22   fair.

23          And lastly and most fundamentally and I think

24   significantly for injunction purposes, there is -- you know,

25   the announcement was made three months ago.  There is no

1    alternative bidder out there.  No one has come in and said

2    we'd like to offer more money.  So -- and if the transaction

3    is not consummated, there will be very, very significant harm

4    to a lot of people, and if this occurs, we will have to, you

5    know, file an appropriate motion for an injunction, a very

6    substantial injunction.

7              Thank you, your Honor.

8              MR. RIGRODSKY:  Your Honor, if I could, I'm

9    sorry.  I just feel compelled to speak because I do feel very

10   passionate about this case.

11             Our document, which I have in court today,

12   is a confidential document, and according to a stipulation

13   we entered into with the defendants, we are not to use it

14   in other actions.  How you define actions is another

15   question.

16             This is a document, an e-mail by the CEO of the

17   company, which I handed up to Judge Vogelson.  The e-mail

18   action actually says, Mr. Knowles says that there are

19   alternatives, that Francisco is not the only one out there.

20   The only reason a bidder has not shown up is the deal is

21   locked in.

22             Again, it's a discovery issue.  It's certainly

23   an issue of disputed fact with regard to is the deal locked

24   up, is the deal fair.  You know, obviously, the issue of

25   materiality is a factual issue.  We can't get at these and

1    make a proper presentation to the Court on a full discovery

2    record without the cooperation of defendants, certainly, and

3    that certainly won't be happening unless we have a date set

4    for a hearing on this.

5          So, again, your Honor, in all fairness, we do

6    want to present our case, a fair case to the Court, let the

7    Court decide, and we are very confident in the outcome, but

8    until a Court does something, unfortunately, we are left with

9    defendants saying they're not getting any witnesses and the

10   clock keeps ticking.

11         Thank you, your Honor.

12         MR. REILLY:  I'm sorry, your Honor.  I said I

13   wouldn't speak, but here I am asking to speak.

14         THE COURT:  Sure.

15         MR. REILLY:  Thank you, your Honor.

16         I just want to make sure your Honor is clear

17   about one thing.  An artificial emergency has been created

18   by the plaintiffs.  Ask plaintiffs whether their complaint

19   in this action is based upon the preliminary proxy materials

20   that they had and cited in their September New Jersey

21   action.  They are relying not on this final proxy.  The

22   claimed nondisclosures or appropriate disclosures they have

23   known about because they alleged them in the New Jersey

24   action in September.

25         If you look at this complaint and hold it up to

1   the complaint in New Jersey, the same allegations and

2   disclosures are being made.  They have known about these

3   since September.  I guess Judge Vogelson is not moving fast

4   enough for them, even though they didn't ask him to move

5   until the very end of November.

6           Now they're coming to your Honor, asking

7   your Honor to jump through hoops.  Plaintiffs should

8   have brought their motions for preliminary relief in

9   September.  They didn't.  October, they didn't.

10   November, they didn't.

11           Your Honor should not hear them now on an

12   artificially created emergency.  Ask them whether these

13   allegations of nondisclosure they have known about since

14   September.

15           MR. RIGRODSKY:  Your Honor, I think my case was

16   made for me.  As is the practice here, we waited until the

17   proxy was final.  They have known about these allegations

18   since September.  They've known about our disclosure claims.

19   They didn't do anything about it.  They went through the

20   proxy process.  They went through the valuation process.

21   They didn't contact us.

22           They did a couple of things on the margin.

23   For example, we said -- they didn't say who was on the

24   special committee.  They finally got around to saying who was

25   on the special committee, I believe in November, when they

1    had another proxy go out.

2            We said that they didn't disclose if Needham

3    had done work for any of the defendants, special committee.

4    Finally, right before the final proxy, they said that.

5            So we actually litigated this case deliberately

6    and actually in a very, I think in a way that preserved

7    judicial resources.  We didn't go running into court every

8    time the new proxy came out.  Our disclosures were out

9    there.  They knew that they wanted to close the transaction

10   in December.  We entered into a stipulation that contemplated

11   expedited discovery and expedited proceedings.  They knew

12   that in mid-November.  We've been negotiating that for two

13   weeks or more.

14           We were diligent about amending our complaint.

15   They didn't do anything about it.  And when the final proxy

16   was finally mailed, now you have dissemination and now you

17   have a ripe federal proxy claim.  It is not an emergency that

18   we created.  They just ignored our disclosures.

19           There was no surprise launched on these folks

20   at the last minute.  Of course, if we had gone to court in

21   September or October, they would have said, You're

22   premature.

23           We acted responsibly, we litigated this

24   responsibly and they were on notice the entire time.  They

25   decided to proceed at their own risk.  They decided to go

36

1    ahead and see if a Court would enjoin this transaction or
2    not.  We didn't.
3              THE COURT:  All right.  Kane Avenue, want to
4    weigh in again?
5              MR. MOFFA:  Coming from Camden, I've got to talk
6    some more.
7              You asked the question nobody has answered yet:
8    Why are you here?  They are here because they want you and
9    not the Judge in Camden to decide the case.  That's not a
10   proper reason to be here.  They would rather have somebody
11   who doesn't know Judge Vogelson rule in their case because
12   they created all these procedural problems.  That's not a
13   reason to be here.
14             You could sign an order today and they could
15   see their good friends in Camden tomorrow and they'll make
16   the same pitch and we'll make the same argument absent the
17   venue problems.
18             Your Honor could go through a lot of hoops over
19   the next five business days that they've brought to you, and
20   at the end of the day, there's no personal jurisdiction,
21   there's no personal jurisdiction, and that's a problem.
22   Plus, there's an alternative remedy:  Money.  Every one of
23   their complaints asks for money in the alternative, which is
24   what it's all about anyway, but there's no reason they
25   couldn't have gone to New Jersey.  They could have gone to

1    federal court in New Jersey on December 5th, when Judge

2    Vogelson didn't enter the order that they wanted.

3              They waited for whatever reason to come here.

4    That -- they have nobody to blame but themselves, and the

5    District Court in New Jersey is perfectly capable of dealing

6    with this case and is the appropriate place to be.  They

7    can't answer that question.  There's no good answer to that

8    question, and we think that that is a threshold issue from

9    the defendants' standpoint that it has to address at least on

10   the jurisdiction questions.

11             But on the venue question, it's a transfer and

12   venue forum question.  The Court has addressed these in the

13   past.  It doesn't matter whether it's across the country.  If

14   it's the wrong place and it's not convenient, it's the wrong

15   place.

16             They could have gone to Camden.  Why they didn't,

17   it doesn't matter why.  It matters that the case, the roots

18   of the case, the witnesses, the documents, are in Camden

19   County, New Jersey, where there's a good federal court to

20   deal with this, where they've been playing for the last three

21   months.  That's sufficient enough reason, I believe, to

22   transfer, at a minimum, and let them go make their pitch to a

23   Judge in Camden, where this case belongs.

24             MR. RIGRODSKY:  Your Honor --

25             THE COURT:  This is the last word.

1          MR. RIGRODSKY:  Okay.  Personal jurisdiction by a

2    matter of statute, I'm not sure I understand Mr. Moffa's

3    argument on that.

4          In terms of venue, I think we've addressed this

5    sufficiently and certainly there is a Delaware nexus to this

6    transaction in addition to the fact that the statute provides

7    for national jurisdiction and venue over a federal securities

8    claim.

9          They circulated their proxy in Delaware and

10   Delaware is just as good a place as Camden, New Jersey.

11   What they want the Court to do is, and let's be realistic

12   about this, they want you to transfer the case.  Then they

13   want some more motions and the clock keeps ticking.

14          What they want to do, they want to run away

15   from Court actually sitting down and considering the merits

16   of this case.  I think once the Court looks at that, the

17   Court will understand exactly what is going on here.

18          This is not a situation of Camden versus Orange

19   County, California.  It's Camden, New Jersey versus

20   Delaware.  There certainly is jurisdiction and venue with

21   regard to the proxy claims, which the Judge in New Jersey, if

22   he ever decides to do something, can't address in all

23   events.  Can't moot it, can't dismiss it, cannot do anything

24   about it.

25          This Court has jurisdiction.  This Court has

1    exclusive jurisdiction, and we're asking the Court to please

2    consider our motion for a temporary restraining order or, at

3    a minimum, to please schedule a motion for a preliminary

4    injunction.

5            If the Court does that and then decides to

6    transfer it, that's one thing, but what they are doing is

7    they're, again, trying to slow this thing down on, frankly, I

8    think, procedural issues that really have nothing to do with

9    the merits and don't really have much merit at all.

10           Thank you, your Honor.

11           THE COURT:  All right.  The motivations of both

12   sides is something that I typically try to ignore.  I know

13   why you came here, and why you entered into whatever you

14   entered into over in New Jersey is really kind of irrelevant,

15   in my view.  It's interesting.

16           I don't know why lawyers say stuff like that to

17   each other all the time, though, because it can't be good for

18   your health to hear that kind of stuff about yourself.  But I

19   see this case and try to see each case by what the legal

20   issues are and then try to get answers giving the best

21   judgment you have that day and then whatever the result is,

22   it is.

23           The way I view this case is, there is a federal

24   set of statutes.  Actually, my first case on the bench in

25   1985 was Revlon versus Pantry Pride.  What an initiation from

1    a criminal prosecutor to the world of civil litigation.

2              But my view of this case is, it's a case brought

3    under the federal statutes and essentially is a proxy case,

4    and, of course, the remedy is that I can order the defendants

5    to change the representations in the materials.

6              The principal question is:  Materiality.  And I

7    mean if you really try to distill this to its essence.

8              Now, the underlying claims, which I call

9    valuation of fairness, of price, adequacy of price, really

10   aren't in play yet because, in this court, they're pendant

11   state law claims.  They aren't federal question claims.

12             So, typically, I would not get to those ever,

13   because they would be decided in a State Court in a

14   preliminary proceeding.  I guess you could get to them,

15   but that's just not the way this practice works, as my

16   experience has taught.

17             Now, before I can get to the proxy materials and

18   materiality issues, the defendants have raised questions as

19   to jurisdiction and venue.

20             So it seems to me what we need to do on an

21   expedited basis is to have the defendants come forward

22   with a paper that challenges the -- and I know you've

23   already done this in your papers and you say they don't

24   plead and that type of thing, but I think we've got to get

25   it in a paper on an expedited basis what it is you say

1    about jurisdiction and venue.  The sooner, the better.

2              You know, typically, in a case like this, I would

3    order that paper to be here tomorrow morning.  Then you would

4    have to respond by the next morning, so that would put us

5    here on -- that would put that issue in front of me on

6    Thursday.  I would decide it by Thursday afternoon or early

7    evening, and if we were then going to move on, there would be

8    some, I suppose -- I mean, I suppose you would have

9    discovery, but from what I've read in the papers to date, it

10   does not seem like there's a need, if there is any need at

11   all, for a lot of discovery, if there's a need for any

12   discovery.

13             But then you would get a paper here some time

14   Sunday night, anticipating a brief hearing on Monday about

15   whether or not I need to order the defendant to modify,

16   change, or do something else with the proxy materials.

17             If I decided that there was nothing

18   misrepresented in a material way, pretty much this case comes

19   to a huge sucking sound, typically.  And then I guess you run

20   around wherever you can before December 20th, because I would

21   not take up the principal claims at that point because, I can

22   tell you, my next analysis would be irreparable harm if I got

23   into those pending claims.  And on irreparable harm, I might

24   order some expedited discovery, but it would be well after

25   the December 20th date, because it would be difficult to

42

1    convince me that money damages wouldn't cure the wrongs

2    alleged.

3            But we would do that on a quick pace, but it

4    wouldn't be on the kind of pace we'd get through the next

5    five days on it.

6            So why don't -- I mean, I hate to -- I try to

7    tell folks about 70 percent of what I do is arbitrary and

8    only about ten percent of it ever gets reviewed.  I mean, it

9    would be better if you sat down with each other, and if you

10   can't agree, I'm here.  Decide when you want to get your

11   paper in:  Tomorrow.  Decide when you want to get your paper

12   in, but it has to be done by noon on Thursday.

13           Pick your times and then I will get you a

14   decision Thursday afternoon.  If I don't send you out of here

15   or to another federal court, then you ought to plan to file

16   your -- then it would be on plaintiff to file its opening

17   paper with you answering that paper, and I will be here

18   Monday pretty much at your convenience to come in, and I

19   would allocate 30 minutes each side to argue on your paper,

20   and then I would either rule from the bench or within an

21   hour, if there had to be some change.

22           Now, if I ordered a change, obviously, that

23   probably puts the sale off on the 20th, but I don't know,

24   because I have not seen your papers, so I don't know what I

25   would do.

43

1              But I will be focused on materiality to the

2    transaction.  I think that's what the cases today focus

3    on.

4              Can I answer any questions from the plaintiff?

5              MR. RIGRODSKY:  Just briefly, your Honor.

6              At least if we get to the point of a substantive

7    briefing schedule, would we be permitted to at least submit a

8    short letter reply at all, or the Court doesn't want a reply

9    letter?

10             THE COURT:  It does not really help me -- oh, you

11   mean on the jurisdictional issue?

12             MR. RIGRODSKY:  No.  Excuse me, your Honor.

13   On the -- actually, on both.  On substantive claim as well

14   as --

15             THE COURT:  On the substantive proxy claim, I

16   would give you a chance to verbally respond.

17             MR. RIGRODSKY:  Okay.

18             THE COURT:  I've got to do the reading, and

19   if I'm waiting for that last document to drop, it gets

20   me tense, and that's why I took this job, so I could

21   control my professional life, not have to get tense like

22   you lawyers.

23             On the jurisdictional issue, you can have a

24   couple hours to file a reply, because -- I mean, you're going

25   to file an answer.  They would get to reply on that.

44

```
1              MR. KAHN:  Right.

2              MR. RIGRODSKY:  That's right.

3              THE COURT:  You want them to have a couple hours

4    to do that?

5              MR. RIGRODSKY:  No, I don't.

6              THE COURT:  So we'll cancel that request.

7              MR. RIGRODSKY:  Cancel that.  I will agree to

8    that.  Absolutely.

9              THE COURT:  Okay.

10             MR. RIGRODSKY:  Thank you, your Honor.

11             THE COURT:  You wanted to talk with each other,

12   and then you can tell my law clerk just by coming through the

13   side door there that you've reached agreement.  I will come

14   back out.  We'll put it on the record and I will so order.

15   It shouldn't take you that long.

16             MR. MOFFA:  No.  Fine, your Honor.

17             MR. KAHN:  Thank you.

18             THE COURT:  All right.  Thank you much very

19   much.  We'll be in recess.

20             (Court recessed at 11:50 a.m.)

21

22                        - - -

23

24             (Proceedings resumed in the courtroom at 12:21

25   p.m.)
```

```
 1              THE COURT:  All right.  Be seated, please.
 2              All right.  As I understand it, you are unable
 3    to reach agreement, but that's why I get the big dollars.
 4    These decisions are licketysplit.
 5              Tell me what the dispute is.
 6              MR. RIGRODSKY:  Your Honor, I think just two
 7    issues.
 8              THE COURT:  Okay.
 9              MR. RIGRODSKY:  With respect to the -- actually,
10    three issues.
11              With respect to the injunction issue, I think
12    there's a dispute over timing.  Obviously, if the Court is
13    not going to exercise jurisdiction over this case and will
14    transfer it to New Jersey, we would need time to get over
15    there, if possible.
16              So with the Court's indulgence, we had suggested
17    to defendants that they submit a letter, not a full-fledged
18    brief.  We submit that they submit a letter, a certain
19    page limit, by 9:00 o'clock tomorrow morning.  We respond
20    by 7:00 p.m. tomorrow evening, and the Court, if it had
21    available time, rule on the motion some time on Thursday
22    morning.
23              Aside from the scheduling issue, it is also a
24    dispute, because my understanding is that defendants
25    intend to submit affidavits with their jurisdictional papers,
```

1    and obviously, depending upon what they say, we think it

2    would be unfair if plaintiff didn't at least have an

3    opportunity to, if we needed to, take some discovery on

4    that.  We don't know what they are going to say and we can't

5    leave facts unrebutted on the record if that's what they

6    intend to do.

7              Finally, on the -- I think there is agreement --

8    I think there's agreement on the schedule of the substantive

9    briefing to the extent that case moves forward here.

10   Defendants, however, have, once again, refused to produce any

11   witnesses for deposition, yet they will not agree not to

12   submit fact affidavits with their papers.  So I think what

13   they want is they want to submit affidavits and we don't have

14   any opportunity for discovery.

15             So we think that's unfair and obviously puts us

16   at a disadvantage, especially when the question of

17   materiality is a question of fact of law.

18             THE COURT:  All right.

19             MR. KAHN:  Your Honor, the -- simply stated, the

20   defendants are prepared to abide by the schedule that we

21   understood your Honor to propose:  That is that the

22   defendants would submit not a letter, but a formal brief,

23   which your Honor could rule by noon tomorrow.  Plaintiff

24   would have until noon the following day to respond, if the

25   Court would then be in a position to rule.

1          If the case were to proceed beyond that, I think

2    what your Honor proposed was plaintiff getting their brief in

3    some time Friday.  We would get our brief in by noon on

4    Sunday, and hopefully that would give the Court time to

5    review the papers before Monday.

6          I didn't hear the Court say anything about

7    depositions.  It's obviously a very tight schedule to start

8    with.  Mr. Rigrodsky is injecting that into the proceeding.

9    We think that's appropriate as well.

10          MR. RIGRODSKY:  Your Honor, again, we have not

11    heard anything about affidavits.  They're going to submit

12    fact affidavits, I'm sure, by Mr. Knowles.  They're going to

13    submit fact affidavits by an expert.  They're going to submit

14    fact affidavits with their investment banker.

15          I mean, this is not the way things are done, your

16    Honor.  If they are going to submit affidavits, we do have --

17    we certainly do have the right to take discovery of those

18    fact witnesses.  We can't agree and abide by a schedule that

19    provides for them to submit a unilateral factual record to

20    the Court and then we don't have an opportunity to

21    cross-examine these witnesses.  Just simply unfair.

22          Also, again, the defendants did not mention to

23    you that they also intend to submit affidavits with their

24    brief on the jurisdictional points, and all we're saying is

25    that if they feel that's necessary, and I'm not sure I

48

1    understand why, because, you know, the arguments they made in

2    their letter that they submitted to the Court already makes

3    their jurisdictional points, but if they need to submit

4    affidavits, we need an opportunity to respond.

5              THE COURT:  Well, if they open up and they have a

6    paper with affidavits, when you respond, if you wanted to

7    submit affidavits, you could do that?

8              MR. RIGRODSKY:  We could respond on

9    jurisdictional points.  I think the facts regarding the

10   jurisdictional points would probably be beyond the

11   plaintiff's control, other than what is disclosed, which we

12   think is sufficient.

13             I'm not sure what they are going to say in

14   their affidavits in terms of the substantive claims,

15   materiality claims.  I mean, that's merits discovery and

16   they want to submit to the Court fact based arguments based

17   on self-serving affidavits without our opportunity to rebut

18   the witnesses.  That just does not seem -- it's not fair and

19   certainly does not come -- is not contemplated by the rules.

20   That's certainly not how we do it in any of the courts I've

21   practiced before, including the Court of Chancery.

22             Finally, I don't agree with their schedule.  I

23   don't see how we're going to put in the brief on Friday on

24   the substance, again, without the benefit of deposition

25   discovery and the remainder of their documents.  Then they

1    are going to have the weekend to submit affidavits that are

2    going to be unrebutted and file that on Sunday.  You know,

3    what time Sunday?  Sunday night?

4              We're going to walk into court on Monday, if this

5    is how it proceeds.  They're going to say, Well, Mr. Knowles

6    said this and Mr. Knowles said that, and it's unrebutted on

7    the record and we're sort of left with our hands in our

8    pockets.

9              THE COURT:  Do you have an expert?

10             MR. RIGRODSKY:  Yes.  We have a consultant

11   working with us, but we do plan on retaining an expert.

12             THE COURT:  Did you want to -- I saw you jumping

13   up and then you deferred to your friend.

14             MR. KAHN:  Your Honor, I keep hearing that the

15   process isn't fair.  I think we're past that point in the

16   argument.

17             The bottom line is that we're here at the

18   eleventh hour at their request.  The Court has proposed a

19   procedure.  We think it's fair.  I now hear that we're okay

20   submitting affidavits to support our venue and personal

21   jurisdiction arguments, which obviously we need to give the

22   Court in order to support our position.  And then we don't

23   know what we're going to do with respect to the merits of the

24   injunction because all we've seen so far are Mr. Rigrodsky's

25   allegations, and I assume they're not going to carry the

1    day.  When we see what he submits, we'll have to figure out

2    what we're going to submit.

3                THE COURT:  Okay.  Whether you call it a brief,

4    a memorandum or a letter is probably not that important.

5    The paper on each of these issues that both sides should file

6    is -- it should be a readable, short nonfiction short story.

7    And if there is a real important case that you're relying on,

8    you should tell me the name of the case and its citation, but

9    you shouldn't string-cite it and you probably do not need to

10   footnote it, because in this area of the law, I can tell you

11   there are probably five cases that matter.  And if there's a

12   sixth one out there that I'm not familiar with, you will just

13   put that in there and we will go read it.

14                So I'm more interested in substance over form,

15   so I would call it a memorandum, so you don't have to have

16   a table of contents and you don't have to have all the

17   formalistic presentation of argument and summary of

18   argument.

19                What you need to do is have issue one and

20   write your readable, nonfiction short story under Issue

21   No. 1, go to Issue No. 2.  If you rely on a case, put it

22   in there.

23                So that will tell, that's the form

24   that your papers will take on a proceeding like this.

25                Now, on jurisdiction -- let's see.  I should get

1    the defendants' opening paper by 2:00 o'clock tomorrow.  That

2    gives you enough time to get back to your office, get those

3    high paid associates cranking and turn something valuable out

4    and get it filed.

5               I don't know much about this electronic stuff.

6               (Pause.)

7               THE COURT:  You don't even have to bring

8    us a hard copy to chambers.  We're so high-tech here, we

9    will be able to push the print button and get that off.

10               Electronically file that paper from your office

11    and then we'll print it out here, so you do not have to worry

12    about all of that delivery and everything.

13               And then your answering brief would be due by

14    2:00 o'clock on Thursday.

15               Now, if you attach affidavits -- and I'm assuming

16    the kind of affidavit you're talking about is, I'm John Doe

17    and I don't live in Wilkes-Barre, Pennsylvania, never have

18    lived in Wilkes-Barre, Pennsylvania.

19               Okay.  That kind of affidavit I think is

20    acceptable in this kind of a practice and I don't think it

21    requires discovery, because, hopefully, nobody would file a

22    clear, false affidavit in a federal court, because that would

23    be not a good thing.  That could wind you up in front of the

24    Grand Jury here or something like that or back in front of

25    me.

52

1         So you will get to answer that.  Then I will make

2    a decision on jurisdiction by the close of business on

3    Thursday.

4         Now, then you're going to file a paper about

5    what is wrong with the proxy statement, and you are going

6    to electronically file that, and you should be able to

7    file that buy 6:00 o'clock Friday night, again, in the same

8    form.

9         The defendant should be able to answer that by

10   6:00 o'clock on Saturday night, electronically filed.

11        Now, if you think there's somebody's -- if they

12   put in place a declaration or an affidavit and you want to

13   talk with that person for an hour, you should let me know

14   that by Sunday, noon, electronically.

15        MR. MOFFA:  Same for us, your Honor, if they

16   submit an affidavit or something?

17        THE COURT:  Yes.

18        MR. MOFFA:  Thank you.

19        THE COURT:  We actually have blackberries now

20   where you can get e-mail at home.  We have computers at

21   home.  So this will go pretty easily.

22        I will respond to you before the end of Sunday if

23   I'm going to allow it or not allow your request.  And they

24   should be very straightforward.  You should tell me who it is

25   you want to talk to and why you want to talk to them, and you

53

1    already know you're limited to an hour of direct.  I'm not

2    going to let you interview or depose, you know, ten people,

3    five people.  So you might be able to talk to two people or

4    three people, depending on how the papers look.

5              And then that can all take place, since all of

6    these people will be under your control.  And how do I know

7    that?  Because you've got their affidavit or their

8    declaration.  So you are controlling the person, so you

9    produce them.  And you can do all of that work on the early

10   part of Monday.  If there are four of them, that's four

11   hours.  And then what I will do is, I will schedule now a

12   hearing for Monday, the 18th, at 5:00 p.m.

13             So that's the one time you'll have to come back

14   here, and any paper you want to file in answer that would

15   have something learned by your ability to depose one or two

16   people should be filed by 4:00 p.m. on Monday, the 18th of

17   December.

18             So you will tell me what it is that was learned,

19   or you may not want to tell me anything.  You can file that

20   electronically.  You don't have to worry about serving each

21   other.  I mean dropping a hard copy off at the Court.  So

22   that will be done by 4:00 o'clock and we'll see you at 5:00

23   o'clock.

24             So depending on how the case goes, you'll either

25   be ended here on Thursday afternoon or you'll be here at 5:00

54

1   o'clock on Monday.

2           Does that address the concerns?

3           MR. RIGRODSKY:  That does, your Honor.  I

4   appreciate it.

5           One more question.  You know, lawyers tend to

6   go on and I know the Court wants a nonfiction short story.

7           Are there certain page limitations the Court has

8   in mind for these papers?

9           THE COURT:  I always hate to do that because --

10  but, remember, I'm reading, and I'm an adult with Attention

11  Deficit Disorder and I'm an oral learner.  When I used to try

12  cases, I used to think about how long can a juror sit and

13  listen to me.  Probably not more than 45 minutes.  At the

14  outside, an hour.

15          I mean, I'm going to be reading a lot of

16  papers here.  I'm going to leave it to your good

17  judgment.

18          So there is a risk for you.  I will leave it

19  to your good judgment.  I hate to put limits on them, because

20  sometimes there's a subplot, so I'm not going to limit the

21  pages.

22          Now, if you're outrageous when I get those

23  jurisdictional papers and we're going to the next step, I

24  might have to say something to you, but I don't think so.

25  You all are pretty experienced lawyers here.

55

```
 1              Does that answer your question?

 2              MR. RIGRODSKY:  Thank you, your Honor.  Yes.

 3              MR. MOFFA:  Thank you.

 4              THE COURT:  Anything on your side?

 5              MR. KAHN:  No.

 6              THE COURT:  All right.  Thank you very much.

 7   We'll look forward to getting your papers.

 8              (Counsel respond, "Thank you, your Honor.")

 9              (Court recessed at 12 43 p.m.)

10                    - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT B



**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

December 4, 2006

**BY E-MAIL AND FACSIMILE**

Evan J. Smith, Esquire
Brodsky & Smith, LLC
1040 Kings Highway North, Suite 601
Cherry Hill, NJ 08034

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Rigrodsky & Long, P.A.
919 North Market Street, Suite 980
Wilmington, DE 19801

Re:    **David Wilkenfeld, et al. v. C. Harry Knowles, et al.**

Dear Counsel:

We represent Francisco Partners, II, L.P. ("Francisco") in the above-captioned matter. We are in receipt of the deposition notices served by email on November 29, 2006, including the deposition notice concerning the deposition of Francisco on Wednesday, December 6, 2006 in Cherry Hill, New Jersey. Please be advised that Francisco will not be able to make a witness available on December 6, 2006, and that any deposition of Francisco will take place in Northern California. Please contact us to schedule a mutually agreeable date for the deposition of Francisco. Further, the deposition notice concerning the deposition of Francisco requests that Francisco produce documents by December 6, 2006. Pursuant to the Consent Consolidation and Pre-Trial Order entered by the Court in this matter, Francisco is not required to commence its document production until December 11, 2006. We will, however, attempt to begin our production prior to that date.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Kenneth M. Murray

LAW OFFICES
# BALLARD SPAHR ANDREWS & INGERSOLL, LLP
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PLAZA 1000 · SUITE 500
MAIN STREET
VOORHEES, NEW JERSEY 08043-4636
856-761-3400
FAX: 856-761-1020
WWW.BALLARDSPAHR.COM

PHILADELPHIA, PA
BALTIMORE, MD
BETHESDA, MD
DENVER, CO
LAS VEGAS, NV
PHOENIX, AZ
SALT LAKE CITY, UT
WASHINGTON, DC
WILMINGTON, DE

PARTNER RESPONSIBLE FOR
VOORHEES, NJ PRACTICE
BENJAMIN A. LEVIN

LOUIS R. MOFFA, JR.
DIRECT DIAL: (856) 761-3493
PERSONAL FAX: (856) 873-9050
E-MAIL: MOFFAL@BALLARDSPAHR.COM

December 8, 2006

**Via Facsimile (302) 654-7530 and U.S. Mail**

Seth D. Rigrodsky, Esquire
Rigrodsky & Long, P.A.
919 N. Market Street
Suite 980
Wilmington, DE 19801

      Re:   Wilkenfeld v. Metrologic Instruments, Inc., et al.
           <u>Docket No. C-166-06</u>

Dear Seth:

      As you know, we represent defendants Metrologic Instruments, Inc., Richard C. Close, John H. Mathias, Stanton L. Meltzer, Hsu Jau Nan and William Rulon-Miller in the above-referenced case. Although we received a Notice of Deposition directed to Hsu Jau Nan which contained an alternate deposition date of Monday, December 11, 2006, we are not in a position to make Mr. Nan available for deposition on that date.

      First, when we engaged in discussions concerning expedited discovery, you identified various individuals and entities you intended to depose. Mr. Nan was not one of them. Second, he does not reside in the United States. Rather, he resides in Singapore. At present, he is in China, and we cannot make him available for a deposition on such short notice. To the extent you insist on deposing Mr. Nan, we will seek an appropriate protective order from the Court.

      In addition, you sent us a Notice of Deposition directed to John Mathias. As suggested by the Knowles' counsel in his letter to you yesterday, as soon as we have a hearing

DMEAST #9682233 v1

Seth D. Rigrodsky, Esquire
December 8, 2006
Page 2

date from the Court, we will discuss deposition scheduling with you and set a mutually convenient date and location for Mr. Mathias' deposition.

Thank you for your time and attention to this matter.

Very truly yours,

LOUIS R. MOFFA, JR.

LRM/dc
cc:     All Counsel of Record (via e-mail)

# EXHIBIT C

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
CAMDEN COUNTY
DOCKET NO. C-166-06
A.D. #_____

DAVID WILKENFELD, et al,    )
                            )
          Plaintiffs,       )    TRANSCRIPT
                            )        OF
          vs.               )    MOTION
                            )
C. HARRY KNOWLES, et al,    )
                            )
          Defendants.       )

                    Place:  Camden County Hall of Justice
                            101 S. 5th Street
                            Camden, New Jersey    08103

                    Date:   December 1, 2006

BEFORE:

     HONORABLE M. ALLAN VOGELSON, J.S.C.


TRANSCRIPT ORDERED BY:

     GREGORY B. REILLY, ESQUIRE   (Lowenstein Sandler)

APPEARANCES:

     EVAN JASON SMITH, ESQUIRE   (Brodsky & Smith, LLC)
     BRIAN D. LONG, ESQUIRE
     SETH D. RIGRODSKY, ESQUIRE
     (Rigrodsky & Long, PA)
     Attorneys for the Plaintiffs.

     LOUIS R. MOFFA, JR., ESQUIRE
     (Ballard, Spahr, Andrews & Ingersoll, LLP)
     GREGORY B. REILLY, ESQUIRE   (Lowenstein Sandler, PC)
     DAVID M. BERGER, ESQUIRE
     (Wilson, Sonsini, Goodrich & Rosati)
     JEFFREY A. CARR, ESQUIRE   (Pepper Hamilton, LLP)
     Attorneys for the Defendants.


                    Transcriber Rita F. Carelli
                    DIANA DOMAN TRANSCRIBING AND
                    RECORDING SERVICES
                    P.O. Box 129
                    Gibbsboro, NJ    08026
                    PHONE:  (856)435-7172
                    FAX:  (856)435-7124
                    Email:  dianadoman@comcast.net

                    Audio Recorded

{W0001400.RTF.}

Recording Operator, VMD

I N D E X

ARGUMENT BY:

Mr. Evan Jason Smith                         7
Mr. Seth D. Rigrodsky                    11, 36
Mr. Louis R. Moffa, Jr.                     24

THE COURT:

Ruling                                      46

                  THE COURT:  Wilkenfeld verses Knowles.
                  MR. SMITH:  Good morning, Your Honor.
                  THE COURT:  Who's watching the office, guys?
                       (All laugh)
                  MS. DiBARTOLOMEO:  Pull some chairs around.
                  COUNSEL:  Your Honor, do you mind if we
utilize this side?
                  MS. DiBARTOLOMEO:  Not at all.
                  THE COURT:  Make yourself comfortable.
                  MS. DiBARTOLOMEO:  Is everyone gonna speak or
--
                  COUNSEL:  Probably not.
                  COUNSEL:  Mr. Moffa is gonna be the primary
spokesperson.
                  MR. MOFFA:  Lucky me.
                  MS. DiBARTOLOMEO:  Okay.  Fine.  But,
gentlemen, anyone who's on the fringe, if you're gonna
speak, I need you by a microphone.
                  COUNSEL:  Absolutely.
                  MS. DiBARTOLOMEO:  Thank you.
                  COUNSEL:  Okay.
                  THE COURT:  Are these live -- are the
telephone mikes live other than on the phone?
                  MS. DiBARTOLOMEO:  No.
                  THE COURT:  No?
                  MS. DiBARTOLOMEO:  No.
                  THE COURT:  Okay.  All right.  Gentlemen, can
we have appearances from those who at least we think,
at this point, are going to speak.
                  MR. SMITH:  Good morning, Your Honor.  Evan
Smith, on behalf of the plaintiffs, from Brodsky &
Smith.  I have here with me Seth Rigrodsky to my left,
your right.

{W0001400.RTF.}

Moffa - Argument

1  created it.  They filed this complaint in September.
2  They could've filed a motion for preliminary injunction
3  then.  We could've had lots of days of discovery if we
4  wanted and still had a hearing before the end of the
5  year.  We didn't do anything to stop them.
6          In fact, we proposed a consolidation two
7  months ago.  It took them a while to get themselves
8  organized.
9          And I suggested that when they submit this
10  order, Judge Freedman's not gonna sign it because he
11  doesn't have the power to bring a case from Gloucester
12  County into Camden County.  Maybe only the Assignment
13  Judge can do that.  And if he sent it to Judge Orlando,
14  Judge Orlando would send it to you to sign it, have the
15  -- have the power to bring a case over from Gloucester
16  County.  That's fine.  We agreed to that.  It should be
17  consolidated.
18          THE COURT:  Gee, I thought I'd send
19  everything there.
20          MR. MOFFA:  Well, you can.  But the first
21  filed action was a Law Division action.  And under our
22  consolidation rules, that would be the case that's
23  consolidated into.  There's nothing secret about this
24  and we didn't stop anything.
25          Will we agree on a discovery schedule?  Of
26  course we will, based on -- within reason, within the
27  amount of time that the Court allows.  But understand
28  that one of the witnesses they want to depose lives in
29  Singapore, is in China now.
30          Another -- most of the parties that are --
31  that they really want to talk to are in New York or San
32  Francisco.  That -- the locals are all here, but they
33  don't count as much, but they're here.  We can get --
34  they're easy enough.
35          But we'll work with them, but we don't want
36  to be seen as the people who caused this fire drill.
37  And to the extent that we're gonna need accommodations
38  on some of those things, or that any of that is really
39  even necessary.  It's a preliminary injunction motion.
40  They have the burden of proof.
41          The facts as to the transaction are
42  undisputed.  Where's their expert report?  That's what
43  they need.  Somebody to say, the price is no good.  And
44  we don't see that.  And if we're gonna have expedition,
45  then I want that well in advance of the hearing too.
46          COUNSEL:  Your Honor --
47          THE COURT:  Do we have -- no, please.  Do we
48  have such a report?
49          MR. RIGRODSKY:  Your Honor, our expert's
50  analysis is reflected in our amended complaint based
51  upon public information.  Mr. Moffa -- you know, our ex
52  --
53          THE COURT:  No.  What's in the amended
54  complaint are allegations.
55          MR. RIGRODSKY:  Well, Your Honor, our expert
56  --
57          THE COURT:  Is there -- is there a report --
58          MR. RIGRODSKY:  There cannot be an expert

{W0001400.RTF.}

# EXHIBIT D

WSGR  Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

December 11, 2006

**BY FEDERAL EXPRESS**

Brian D. Long, Esq.
Rigrodsky & Long, P.A.
919 North Market Street
Suite 980
Wilmington, DE 19801

Re:   **In re: Metrologic Instruments, Inc. Shareholders' Litigation, No. 6430-06**

Dear Mr. Long:

Pursuant to Plaintiff's First Request for Production of Documents to All Defendants, dated November 1, 2006, and the Consent Consolidation and Pre-Trial Order entered by the Court on December 1, 2006, enclosed is the initial production of documents by Francisco Partners, II, L.P., FP-Metrologic, LLC, Meteor Holding Corporation and Meteor Merger Corporation. The documents are Bates-stamped FR 0000001 – FR 0014675. Certain enclosed documents have been designated as "CONFIDENTIAL" pursuant to the Stipulation and [Proposed] Protective Order Governing Confidential Material entered into by the parties.

Please be advised that this production is without waiver and without prejudice to Francisco's right to serve written responses and objections to the document requests at a later date in accordance with R. 4: 18-1. Feel free to contact my fellow associate Kenneth Murray at 212-497-7772 if you have any questions.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Evelina Manukyan

Enclosure
cc: Evan J. Smith, Esq. (w/o enclosure)

PALO ALTO    AUSTIN    NEW YORK    RESTON    SALT LAKE CITY    SAN DIEGO    SAN FRANCISCO    SEATTLE

# Pepper Hamilton LLP
Attorneys at Law
A Pennsylvania Limited Liability Partnership

300 Alexander Park
CN 5276
Princeton, NJ 08543-5276
609.452.0808
Fax 609.452.1147

Angelo A. Stio III
stioa@pepperlaw.com
609.951.4125

Dennis R. Casale
Michael J. Mann
Partners-in-Charge, Princeton Office

December 4, 2006

**By Hand Delivery**

Evan J. Smith, Esq.
Brodsky & Smith LLC
1040 Kings Highway North, Suite 601
Cherry Hill, New Jersey  08034

Re:   Wilkenfeld, et al. v. Metrologic Instruments, Inc., et al.
      Docket No. C-166-06

Dear Mr. Smith:

        This firm represents C. Harry Knowles and Janet H. Knowles in the above-referenced matter.  Pursuant to the parties' agreement to provide expedited discovery, enclosed please find a CD containing documents bates numbers K0001 through K1091.  These documents are responsive to the document requests propounded on the Knowles in this matter.

        Please be advised that this production is without waiver and without prejudice to the Knowles' rights to provide formal responses and objections to the document requests at a later date.  These formal responses and/or objections will be served on plaintiffs in accordance with R. 4:18-1.

                                        Very truly yours,

                                        Angelo A. Stio III

AAS/rd
Encl.

cc:    All Counsel of Record  (w/o encl.)

| Philadelphia | Washington, D.C. | Detroit | New York | Pittsburgh |
| #8176567 v.1 | Harrisburg | Orange County | Princeton | Wilmington |

www.pepperlaw.com

## KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

ATTORNEYS AT LAW

551 FIFTH AVENUE

NEW YORK, NEW YORK 10176

(212) 986-6000

FACSIMILE: (212) 986-8866

www.kkwc.com

FREDRIC A. KLEINBERG
MYRON KAPLAN
NORRIS D. WOLFF
JAMES R. COHEN
STEPHEN M. SCHULTZ
DAVID PARKER
JEFFREY S. BORTNICK
MARTIN D. SKLAR
JAMES R. LEDLEY△
PHILIP S. GROSS+
CHRISTOPHER P. DAVIS
LAWRENCE D. HUI
ANDREW M. CHONOLES
EDWARD P. GROSZ
ERIC S. WAGNER
ROSS L. YUSTEIN+
SHARON M. TOMAO

MAURICE S. SPANBOCK
BRUCE D. STEINER+◊
ROBERT L. BERMAN△
MATTHEW J. GOLD
OF COUNSEL

ERIC S. JOHNSON
JAMES I. RAPP
MARC R. ROSEN*△
MAX KARPEL
JASON P. GRUNFELD
JAMIE L. NASH
MELISSA S. DANSON
KELLY E. ZELEZEN+
DAVID Y. PARK

+ALSO ADMITTED IN NJ
◊ALSO ADMITTED IN FL
△ALSO ADMITTED IN DC

WRITER'S E-MAIL ADDRESS:
MRosen@KKWC.com

December 1, 2006

## VIA OVERNIGHT MAIL

Evan J. Smith
Brodsky & Smith, LLC
1040 Kings Highway North, Suite 601
Cherry Hill, New Jersey 08034

Seth D. Rigrodsky
Rigrodsky & Long, P.A.
919 N. Market Street, Suite 980
Wilmington, Delaware 19801

re:    **In re Metrologic Instruments, Inc. Shareholders' Litigation
         Docket No. L-6430-06**

Dear Mssrs. Smith and Rigrodsky:

Pursuant to the Consent Consolidation and Pre-Trial Order, and subject to the objections set forth in Elliott Associates, L.P.'s and Elliott International, L.P.'s Objections and Responses to Plaintiffs' First Request for Production of Documents dated November 21, 2006, Elliott Associates, L.P. and Elliott International, L.P. hereby produces their second and final production of documents bates stamped EA00289 through EA01393.

The enclosed documents are all designated "confidential" and should be treated confidentially in accordance with the parties' agreement.

Very truly yours,

Marc R. Rosen

cc:    Wolfgang Heimerl

MROSEN\112539.1 - 11/30/06

**HEIMERL LAW FIRM**
1 Anderson Road, Suite 105
Bernardsville, New Jersey 07924

*New York Office:*
67 Wall Street
Suite 2211, PMB-8370
New York, New York 10005
Tel.: (212) 709-8370

Wolfgang Heimerl
Admitted in NJ & NY

Member of the Association of Trial Lawyers of America

Tel: (908) 766-3385
Fax: (908) 766-4821

E-Mail: HeimerlLawFirm@ATT.net

November 22, 2006

**Via UPS Overnight Delivery**

Evan J. Smith, Esq.
Brodsky & Smith, LLC
1040 Kings Highway North, Suite 601
Cherry Hill, New Jersey 08034

Seth D. Rigrory, Esq.
Rigrodsky & Long, P.A.
919 N. Market Street, Suite 980
Wilmington, Delaware 19801

Re: **In Re: Metrologic Instruments, Inc. Shareholders' Litigation / Docket No. L-6430-06**

Dear Mr. Smith and Mr. Rigrodsky:

In accordance with the Consent Consolidation and Pre-Trial Order, enclosed on behalf of defendants Elliott Associates, L.P. and Elliott International, L.P. (collectively "Elliott") are Elliott's Objections and Responses to Plaintiff's First Request for the Production of Documents, together with documents bates stamped EA00001 through and including EA00288.

Please note that: (i) all documents produced herewith have been identified as "Confidential" and should be treated in accordance with the agreement of the parties; and (ii) the name at the top of each e-mail, Elpidio Ortega, has no significance to this matter. Mr. Ortega merely printed out the e-mail communications in preparation of this response.

Should you have any questions in this regard, do not hesitate to contact me.

Sincerely yours,

Wolfgang Heimerl

WH/

Enclosures
cc: David Parker, Esq.
   Marc Rosen, Esq.

LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51st FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC
WILMINGTON, DE

JOB ITZKOWITZ
DIRECT DIAL: 215-864-8104
PERSONAL FAX: 215-864-9117
ITZKOWITZJ@BALLARDSPAHR.COM

November 28, 2006

Brian Long
c/o Jeffrey Connor
Reliable Copy
1818 Market Street
Concourse Level
Philadelphia, PA 19103

Re:     Wilkenfeld v. Knowles, et al

Dear Brian:

Please find enclosed two copies of two DVDs containing Metrologic's second production in the above-referenced matter. The production contains the following Bates ranges: MTLG10062789-10064764; MTRC10000001-10000009; MTJH10000001-10003736; MTJM10000001-10000024; METROP0000001-0000049; MTRC0000001-0000027; MTRM0000001-0000386.

Sincerely,

Job M. Itzkowitz

JMI/m
Enclosures

cc:     Caroline P. Pollard (w/out encl.)
         Adam Rosenthal (w/out encl.)

LAW OFFICES

**BALLARD SPAHR ANDREWS & INGERSOLL, LLP**

1735 MARKET STREET, 51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
BETHESDA, MD
DENVER, CO
LAS VEGAS, NV
PHOENIX, AZ
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC
WILMINGTON, DE

**JOB M. ITZKOWITZ**
DIRECT DIAL: (215) 864-8104
PERSONAL FAX: (215) 864-9117
E-MAIL: ITZKOWITZJ@BALLARDSPAHR.COM

November 24, 2006

**By Hand Delivery**

Brian Long
c/o Jeffrey Connor
Reliable Copy
1818 Market Street
Concourse Level
Philadelphia PA 19103

      Re:    <u>Wilkenfeld v. Knowles, et al.</u>

Dear Brian:

      Please find enclosed two copies of one DVD containing Metrologic's first production in the above-referenced matter. The production is Bates-stamped MTLG10000001-10062788.

Sincerely,

Job M. Itzkowitz

JMI/mah
Enclosures

cc:    Caroline P. Pollard (w/out encl.)
       Adam Rosenthal (w/out encl.)

DMEAST #9672644 v1

## CERTIFICATE OF SERVICE

I, Brian D. Long, hereby certify that on this 14th day of December, 2006, I caused a true

and correct copy of the Affidavit of Brian D. Long, Esquire in Support of Plaintiff's

Memorandum of Law in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. §

1404(a) to be filed with the Clerk of the Court via the CM/ECF system with copies be served

upon the following via e-mail:

Louis R. Moffa, Jr., Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

Kenneth M. Murray, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

Geoffrey A. Kahn, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Angelo A. Stio, III, Esquire
Pepper Hamilton, LLP
300 Alexander Park
Princeton, NJ 08543

Robert L. Hickok, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

David J. Berger, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

Elizabeth M. Saunders, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
One Market, Spear Tower, Suite 3300
San Francisco, CA 94105

Wolfgang Heimerl, Esquire
Heimerl Law Firm
1 Anderson Road, Suite 105
Bernardsville, NJ 07924

David Parker, Esquire
Marc Rosen, Esquire
Kleinberg, Kaplan, Wolff & Cohen, P.C.
551 Fifth Avenue
New York, NY 10176

Gregory B. Reilly, Esquire
John D. Schupper, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068-1791

Brian D. Long (ID #4347)